# 14-3872-cr

**United States Court of Appeal
for the Second Circuit**

_____

Docket No. 14-3872-cr

_____

UNITED STATES OF AMERICA,

Appellee,

-against-

ELVIN HILL,

Defendant-Appellant.

_____
APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT ELVIN HILL**

FEDERAL DEFENDERS OF NEW YORK, INC.
APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.:  (212) 417-8742

Attorney for Defendant-Appellant
**ELVIN HILL**

**YUANCHUNG LEE,**

  Of Counsel

## TABLE OF CONTENTS

**Page**

Table of Authorities. . . . . . . . . . . . . . . . . . . ii

Introduction and Summary of Argument. . . . . . . . . . . . 2

Statutes Involved . . . . . . . . . . . . . . . . . . . . 5

    1.  <u>18 U.S.C. § 1951</u>. . . . . . . . . . . . . . . 5

    2.  <u>18 U.S.C. § 924(c)</u>. . . . . . . . . . . . . . 6

    3.  <u>18 U.S.C. § 924(j)</u>. . . . . . . . . . . . . . 6

The Indictment and the Statutory Scheme.. . . . . . . . . . 7

Argument

This Court should vacate Mr. Hill's conviction
because the Government cannot prove that Hobbs
Act robbery is a "crime of violence" within the
meaning of § 924(c)(3), which is an essential
element of the offense of conviction... . . . . . . . . . . 9

    I.   Hobbs Act robbery cannot qualify as a
        "crime of violence" under the residual
        clause of § 924(c)(3)(B) because it is
        void for vagueness under <u>Johnson</u>... . . . . . . . . 10

        A.  <u>Johnson</u> expressly overruled the
           "ordinary case" approach to determining
           whether a felony qualifies as a "crime of
           violence."... . . . . . . . . . . . . . . . . 11

        B.  <u>Johnson</u> renders § 924(c)(3)(B)
           unconstitutionally vague.. . . . . . . . . . . 15

    II.  Hobbs Act robbery does not qualify as
        a "crime of violence" under the force
        clause of § 924(c)(3)(A) because it can
        be committed without violent physical
        force or the intentional deployment
        of the same.. . . . . . . . . . . . . . . . . . . 20

i

A.    The act of putting someone in fear
      of injury does not require the use,
      attempted use, or threatened use of
      "violent force.". . . . . . . . . . . . . . .  24

B.    The Hobbs Act can be committed by a
      threat to devalue intangible assets,
      which obviously does not require
      "violent force.".. . . . . . . . . . . . . . .  28

C.    Putting someone in fear of injury
      does not require an intentional threat
      of violent force. . . . . . . . . . . . . . . .  30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . .  32

## TABLE OF AUTHORITIES

### CASES

<u>Begay v. United States</u>, 553 U.S. 137
      (2008).. . . . . . . . . . . . . . . . . . . .  12, 14

<u>Chambers v. United States</u>, 555 U.S. 122
      (2009).. . . . . . . . . . . . . . . . . . . .  13, 15

<u>Chrzanoski v. Ashcroft,</u> 327 F.3d 188
      (2d Cir. 2003).. . . . . . . . . . . . . . . .  25, 26

<u>Descamps v. United States</u>, 133 S. Ct. 2276
      (2013).. . . . . . . . . . . . . . . . .  20, 21, 23

<u>Dimaya v. Lynch</u>, ___ F.3d ___,
      2015 WL 6123546 (9th Cir. Oct. 19, 2015) . . . . . .  3, 10

<u>Evans v. Zych</u>, 644 F.3d 447
      (6th Cir. 2011) . . . . . . . . . . . . . . . .  17

<u>Garcia v. Gonzalez</u>, 455 F.3d 465
      (4th Cir. 2006) . . . . . . . . . . . . .  3, 22, 30

<u>James v. United States</u>, 550 U.S. 192
      (2007).. . . . . . . . . . . . . . . . .  12, 17, 18

<u>Jimenez-Gonzales v. Mukasey</u>, 548 F.3d 557
    (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . 16

<u>Johnson v. United States</u> 135 S. Ct. 2551
    (2015). . . . . . . . . . . . . . . . . . . . . . <u>passim</u>

<u>Jobson v. Ashcroft</u>, 326 F.3d 367
    (2d Cir. 2003). . . . . . . . . . . . . . . . . 3, 22, 30

<u>Leocal v. Ashcroft</u>, 543 U.S. 1
    (2004), . . . . . . . . . . . . . . . . . . . . . . 3, 21

<u>Van Don Nguyen v. Holder</u>, 571 F.3d 524
    (6th Cir. 2009). . . . . . . . . . . . . . . . . . . 18

<u>Roberts v. Holder</u>, 745 F.3d 928
    (8th Cir. 2014) . . . . . . . . . . . . . . . . . . . 15

<u>Sykes v. United States</u>, 564 U.S. 1
    (2011). . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Taylor v. United States</u>, 495 U.S. 575
    (1990) . . . . . . . . . . . . . . . . . . . . . . . 11

<u>United States v. Acosta</u>, 470 F.3d 132
    (2d Cir. 2006) . . . . . . . . . . . . . . . . 17,20,21

<u>United States v. Amparo</u>, 68 F.3d 1222
    (9th Cir. 1995). . . . . . . . . . . . . . . . . . . 17

<u>United States v. Aragon</u>, 983 F.2d 1306
    (4th Cir. 1993).. . . . . . . . . . . . . . . . . . . 15

<u>United States v. Arena</u>, 180 F.3d 380
    (2d Cir. 1999).. . . . . . . . . . . . . . . . . . 4, 28

<u>United States v. Avila</u>, 770 F.3d 1100
    (4th Cir. 2014). . . . . . . . . . . . . . . . . . . 18

<u>United States v. Ayala</u>, 601 F.3d 256
    (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . 15

<u>United States v. Bauer</u>, 990 F.2d 373
    (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . 16

<u>United States v. Butler</u>, 496 F. App'x 158
      (3d Cir. 2012).. . . . . . . . . . . . . . . . . . . . 17

<u>United States v. Cruz-Rodriguez</u>, 625 F.3d 274
      (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . 27

<u>United States v. Coronado-Cervantes</u>, 154 F.3d 1242
      (10th Cir. 1998).. . . . . . . . . . . . . . . . . . . 16

<u>United States v. Foppe</u>, 993 F.2d 1444
      (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 32

<u>United States v. Gomez-Leon</u>, 545 F.3d 777
      (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . 16

<u>United States v. Green</u>, 521 F.3d 929
      (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . 17

<u>United States v. Higdon</u>, 832 F.2d 312
      (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . 31

<u>United States v. Iozzi</u>, 420 F.2d 512
      (4th Cir. 1970). . . . . . . . . . . . . . . . . . . . 29

<u>United States v. Keelan</u>, 786 F.3d 865
      (11th Cir. 2015) . . . . . . . . . . . . . . . . . 15, 18

<u>United States v. Kelly</u>, 412 F.3d 1240
      (11th Cir. 2005) . . . . . . . . . . . . . . . . 4, 31, 32

<u>United States v. Kirk</u>, 111 F.3d 390
      (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . 16

<u>United States v. Local 560 of the International
Brotherhood of Teamsters</u>, 780 F.2d 267
      (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . 29

<u>United States v. Perez-Vargas</u>, 414 F.3d 1282
      (10th Cir. 2005).. . . . . . . . . . . . . . . . . . . 27

<u>United States v. Pickar</u>, 616 F.3d 821
      (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . 31

<u>United States v. Portela</u>, 469 F.3d 496
      (6th Cir. 2006). . . . . . . . . . . . . . . . . . . 22

United States v. Ramos-Medina, 706 F.3d 932
        (9th Cir. 2012). . . . . . . . . . . . . . . . . . . 18

United States v. Royal, 731 F.3d 333
        (4th Cir. 2014). . . . . . . . . . . . . . . . . . . 20

United States v. Sanchez-Espinal, 762 F.3d 425
        (5th Cir. 2014) . . . . . . . . . . . . . . . . . . 15

United States v. Sanchez-Garcia, 501 F.3d 1208
        (10th Cir. 2007) . . . . . . . . . . . . . . . . . . 18

United States v. Serafin, 562 F.3d 1104
        (10th Cir. 2009).. . . . . . . . . . . . . . . . 17, 20

United States v. Torres-Miguel, 701 F.3d 165
        (4th Cir. 2012)... . . . . . . . . . . . . . 20, 26, 27

United States v. Winston, 55 F. App'x 289
        (6th Cir. 2003) . . . . . . . . . . . . . . . . . . 7

United States v. Woodrup, 86 F.3d 359
        (4th Cir. 1996) . . . . . . . . . . . . . . . . . . 31

United States v. Yockel, 320 F.3d 818
        (8th Cir. 2003) . . . . . . . . . . . . . . . . . . 31

United States v. Young, 561 F. App'x 85
        (2d Cir. 2014) . . . . . . . . . . . . . . . . . . 7, 8

**OTHER AUTHORITIES**

18 U.S.C. § 16(b).. . . . . . . . . . . . . . . . . 3, 10, 17

18 U.S.C. § 924(c). . . . . . . . . . . . . . . . . . <u>passim</u>

18 U.S.C. § 924(c)(1).. . . . . . . . . . . . . . . . . 5

18 U.S.C. § 924(c)(1)(A) . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 924(c)(3).. . . . . . . . . . . . . . . . <u>passim</u>

18 U.S.C. § 924(c)(3)(B). . . . . . . . . . . . . . . . <u>passim</u>

v

18 U.S.C. § 924(e) . . . . . . . . . . . . . . . . . . . . 1, 10

18 U.S.C. § 924(e)(2)(B)(ii) . . . . . . . . . . . . . . . 15

18 U.S.C. § 924(j) . . . . . . . . . . . . . . . . . . . 6, 7

18 U.S.C. § 924(j)(1) . . . . . . . . . . . . . . . . . _passim_

18 U.S.C. § 1111 . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . 5, 24

18 U.S.C. § 1951(a) . . . . . . . . . . . . . . . . . . . 8, 28

18 U.S.C. § 1951(b) . . . . . . . . . . . . . . . . . _passim_

18 U.S.C. § 2113(a) . . . . . . . . . . . . . . . . . . . 31

Leonard B. Sand <u>et al.</u>, <u>Modern Federal Jury Instructions -
Criminal</u> . . . . . . . . . . . . . . . . . . . . . . . 7, 29

<u>UNITED STATES SENTENCING GUIDELINES</u>

    § 4B1.1 . . . . . . . . . . . . . . . . . . . . . . 16

    § 2L1.2 . . . . . . . . . . . . . . . . . . . . . 26, 27

_____

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

Docket No. 14-3872-cr

_____

UNITED STATES OF AMERICA,

Appellee,

-against-

ELVIN HILL,

Defendant-Appellant.
_____

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT ELVIN HILL
_____

Appellant Elvin Hill submits this supplemental brief to raise an argument that undersigned counsel only recently discovered, an argument applying the Supreme Court's decision in Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551 (June 26, 2015) (invalidating the residual clause of 18 U.S.C. § 924(e) as void for vagueness), to the definition of "crime of violence" found in 18 U.S.C. § 924(c).

Specifically, this brief argues that after Johnson, the Hobbs

1

Act robbery underlying the sole count of the indictment no longer qualifies as a "crime of violence" under § 924(c). And because the commission of a crime of violence is an essential element of the offense of conviction, this Court must vacate Mr. Hill's conviction and dismiss the indictment.

## Introduction and Summary of Argument

Elvin Hill's conviction under 18 U.S.C. § 924(j)(1) cannot stand because an element of the offense cannot be met following the Supreme Court's decision in <u>Johnson v. United States</u>, ___ U.S. ___, 135 S. Ct. 2551 (June 26, 2015). Specifically, the Government can no longer prove that the Hobbs Act robbery underlying the § 924(j)(1) count qualifies as a "crime of violence" under either of the two definitional prongs in § 924(c)(3), as required for conviction.

Hobbs Act robbery cannot qualify as a crime of violence under the second prong, the "residual clause" of § 924(c)(3)(B), which defines a crime of violence as an offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." This clause is materially indistinguishable from the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e). <u>Johnson</u> of course invalidated that residual clause as void for vagueness in violation of the Due Process Clause. The residual

2

clause of § 924(c)(3)(B) shares the same fate. See Dimaya v. Lynch, ___ F.3d ___, 2015 WL 6123546 (9th Cir. Oct. 19, 2015) (holding that residual clause of 18 U.S.C. § 16(b), which is identical to § 924(c)(3)(B), is void for vagueness under Johnson).

Hobbs Act robbery also does not qualify as a crime of violence under the first prong, § 924(c)(3)(A). This section, called "the force clause," defines a crime of violence as a felony offense that "has as an element the use, attempted use or threatened use of physical force against the person or property of another."

As construed by the Supreme Court in 2010, "physical force" means "violent force," that is, "strong physical force" "capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) (emphasis in original). Moreover, as construed by the Supreme Court in Leocal v. Ashcroft, 543 U.S. 1 (2004), and this Court in Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir. 2003), "use[]" of physical force "contemplates only intentional conduct and refers only to those offenses in which . . . the perpetrator [] intentionally employ[s] physical force." Id. (emphases in original; internal quotations omitted); see Garcia v. Gonzalez, 455 F.3d 465, 468 (4th Cir. 2006) (holding that "intentional employment of physical force" is required under force clause of § 16(a), which is identical to § 924(c)(3)).

Therefore, to qualify as a crime of violence under §

3

924(c)(3)(A), an offense must have "as an element" the "[intentional] use of [violent] physical force."

Hobbs Act robbery does not require proof of "[intentional] use of [violent] physical force." On the contrary, it can be committed when a defendant "obtain[s] personal property . . . in the presence of another" person "by means of . . . fear of injury . . . to property in his custody or possession," 18 U.S.C. § 1951(b), where "property" includes "intangible assets," United States v. Arena, 180 F.3d 380, 392 (2d Cir. 1999).

Thus, one can commit Hobbs Act robbery by putting another person in fear of injury to her commercial assets, "such as rights to solicit customers and to conduct a lawful business." Id. And one can put another in fear -- i.e., one can "intimidate" another person -- without intending to do so. E.g., United States v. Kelly, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted [of federal bank robbery] even if he did not intend for an act to be intimidating.")

Hobbs Act robbery therefore does not require proof of either the presence of violent physical force or the intentional availment thereof. It thus does not constitute a "crime of violence" under the force prong of § 924(c)(3)(A).

Because Hobbs Act robbery does not qualify as a crime of

4

violence under either prong of § 924(c)(3), and because proof of a
"crime of violence" is an essential element of an offense under §
924(c)(1), which in turn is an essential element of § 924(j)(1),
this Court must vacate Mr. Hill's conviction and dismiss the
indictment.

**Statutes Involved**

This brief primarily concerns the following three federal
statutes, 18 U.S.C. §§ 1951, 924(c) & 924(j):

1.  **18 U.S.C.§ 1951**

Section 1951(a) states in relevant part,

(a) Whoever in any way or degree obstructs, delays, or
affects commerce . . . by robbery or extortion or
attempts or conspires to do so, or commits or threatens
physical violence to any person or property in
furtherance of a plan or purpose to do anything in
violation of this section shall be fined under this
title or imprisoned not more than twenty years, or
both.

Section 1951(b) states in relevant part,

(1) The term "robbery" means the unlawful taking
or obtaining of personal property from the person
or in the presence of another, against his will,
by means of actual or threatened force, or
violence, or fear of injury, immediate or future,
to his person or property, or property in his
custody or possession, or the person or property
of a relative or member of his family or of anyone
in his company at the time of the taking or
obtaining shall [be punished in accordance with
the remainder of the statute]

5

2.    **18 U.S.C. § 924(c)**

Section 924(c)(1)(A) states in relevant part,

. . . any person who, during and in relation to a crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, [] or who in furtherance of any such crime, possesses a firearm, [violates this section] . . .

Section § 924(c)(3) states in relevant part,

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and --

> (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B)   that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

3.    **18 U.S.C. § 924(j)**

Section 924(j) states in relevant part,

A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall --

> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

### The Indictment and the Statutory Scheme

The indictment charges Mr. Hill with a single count under 18 U.S.C. § 924(j)(1), which is violated when "[a] person, in the

6

course of a violation of subsection (c), causes the death of a person through the use of a firearm," where "the killing is murder (as defined in section 1111)." A violation of § 924(c) is therefore a prerequisite for violating § 924(j).[1]

Section 924(c), in turn, prohibits anyone from using or carrying a firearm during and in relation to "a crime of violence" or a "drug trafficking crime." Commission of a "crime of violence" or "drug trafficking crime" is therefore is an essential element of the § 924(c) offense -- and thus of the § 924(j) offense as well. E.g., United States v. Winston, 55 F. App'x 289, 300 (6th Cir. 2003) ("There are four elements that the Government must prove in order to sustain a violation of § 924(j): 1) the commission of a federal crime of violence or drug trafficking; 2) the use or carrying of a firearm during or in furtherance of such a crime; 3) the death of person by the use of the firearm; and 4) the death was caused by murder as defined in 18 U.S.C. § 1111 (2002)."); see also United States v. Young, 561 F. App'x 85, 93 (2d Cir. 2014) (noting that § 924(j)(1) "incorporates the entirety of" § 924(c)).[2]

---

[1] Section 924(j)(1) is in essence a felony-murder statute, where § 924(c) (using or carrying a firearm during a crime of violence or drug trafficking offense) plays the role of the predicate offense. See Leonard B. Sand et al., Modern Federal Jury Instructions - Criminal, Commentary to Instruction 41-7.

[2] The trial court's instruction to the jury in this case
(continued...)

Specifically, the indictment here accuses Mr. Hill of violating § 924(j)(1) by using a firearm, "in violation of Title 18, United States Code, Section 924(c)," "during and in relation to" "the robbery of Fredy Cuenca, in violation of Title 18, United States Code, Section 1951(a)," and "in the course of that offense did cause the death of [Cuenca] through the use of a firearm, which killing is murder . . . [under] Section 1111(a)." Appendix ("A.") 25. The alleged "crime of violence," an essential element of § 924(c) and thus the § 924(j)(1) offense charged in the indictment, is Hobbs Act robbery, in violation of § 1951(a).

---

[2](...continued)
tracks these requirements. As the court told the jury, in order to convict Mr. Hill of the offense charged in the indictment, it must first find both that he committed Hobbs Act robbery and that he used a firearm during that robbery. Jury Instructions at 36, ECF No. 130, United States v. Hill, 12 Cr. 214 (KAM).

**Argument**

**This Court should vacate Mr. Hill's conviction because the Government cannot prove that Hobbs Act robbery is a "crime of violence" within the meaning of § 924(c)(3), which is an essential element of the offense of conviction.**

Elvin Hill's conviction for violating 18 U.S.C. § 924(j)(1) can stand only if Hobbs Act robbery qualifies as a "crime of violence" within the meaning of § 924(c)(3). Because Hobbs Act robbery is not a crime of violence under § 924(c)(3), Mr. Hill's conviction must be vacated and the indictment dismissed.

First, in light of <u>Johnson</u>, the residual clause found in § 924(c)(3)(B) is unconstitutionally vague and therefore cannot sustain a conviction.

Second, Hobbs Act robbery categorically fails to constitute a crime of violence under the force clause, § 924(c)(3)(A), because it does not have as "an element the use, attempted use, or threatened use of physical force against the person or property of another." The Supreme Court and this Court have construed provisions indistinguishable from the force clause as requiring the <u>intentional</u> availment of <u>violent physical force</u>. Therefore, to qualify as a crime of violence under the force clause, an offense must have as "an element" the (1) intentional deployment of (2)

9

violent physical force.

Hobbs Act robbery categorically does not. By the statute's plain language, this crime can be accomplished by placing one in fear of injury to her property, including intangible assets. Therefore, it requires neither (1) the presence of <u>violent physical force</u> nor (2) the <u>intentional</u> deployment of the same. As a result, it does not qualify as a "crime of violence" under § 924(c)(3).

Because the Government cannot establish an essential element of the offense of conviction, this Court must vacate Mr. Hill's conviction and dismiss the indictment.

**I.  Hobbs Act robbery cannot qualify as a "crime of violence" under the residual clause of § 924(c)(3)(B) because it is void for vagueness under <u>Johnson</u>.**

Hobbs Act robbery cannot qualify as a "crime of violence" under § 924(c)(3)(B)'s residual clause because it is unconstitutionally vague, and thus void, under <u>Johnson</u>. <u>See</u> <u>Dimaya v. Lynch</u>, ___ F.3d ___, 2015 WL 6123546 (9th Cir. Oct. 19, 2015) (holding that residual clause of 18 U.S.C. § 16(b), which is identical to § 924(c)(3)(B), is void for vagueness under <u>Johnson</u>). There, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act ("ACCA"), § 924(e), is unconstitutionally vague. <u>Johnson</u> applies with the same force to the parallel "crime of violence" definition found in § 924(c)(3)'s residual clause.

10

Section 924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare the ACCA's residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process.

**A.** **<u>Johnson</u> expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

<u>Johnson</u> held that the ACCA residual clause is unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging" and "indeterminate." 135 S. Ct. at 2557. As a result, the ACCA "both denies fair notice to defendants and invites arbitrary enforcement by judges." <u>Id.</u> <u>Johnson</u> concluded that the Supreme Court's four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had failed. <u>Id.</u> at 2558-59.

The Court began its analysis by explaining that, under <u>Taylor v. United States</u>, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony.[3] <u>Id.</u> at 2557. Courts must assess

---

[3] The Court reaffirmed the vitality of the categorical approach, despite the government's and a dissenting justice's invitation to abandon it in residual clause cases. <u>Id.</u> at 2557, 2562.

11

whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." Id. (quoting Begay v. United States, 553 U.S. 137, 141 (2008)).

The Court further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." Id. (citation omitted). The Court linked the "ordinary case" framework to James v. United States, 550 U.S. 192 (2007), which explained that "[w]e do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." Id. at 208 (citations omitted). "As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause." Id. at 209 (emphasis added, brackets supplied).

Johnson concluded that the process of determining what is embodied in the "ordinary case" rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague.

12

"Grave uncertainty" surrounds the method of "determin[ing] the risk posed by the "judicially imagined 'ordinary case.'" 135 S. Ct. at 2557. "The residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." Id. at 2558.

Johnson considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." Id. at 2557. Although earlier ACCA cases tried to rely on statistical analysis and "common sense," Johnson concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." Id. at 2559 (referring to Chambers v. United States, 555 U.S. 122 (2009), and Sykes v. United States, 564 U.S. 1 (2011)).

This flaw alone establishes the residual clause's unconstitutional vagueness. The Court further explained, however, that a closely related flaw exacerbates the problem. The Court noted that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute a "serious potential

13

risk of physical injury." Id. at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), Johnson rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem. Id.

The enumerated offenses fail to save the ACCA residual clause because comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction." Id. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, Johnson emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses." Id. (quoting Begay v. United States, 553 U.S. 137, 143 (2008)).

Any attempt to figure out the "ordinary" enumerated offense, in sum, requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is more than the "Due Process Clause tolerates." Id.

Thus, Johnson not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory

14

provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

**B.** **Johnson renders § 924(c)(3)(B) unconstitutionally vague.**

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[4] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical.[5] But the differences have no impact on the constitutional analysis.

---

[4] Courts repeatedly have remarked upon the similarities between the residual clause of the ACCA and the clause at issue here (or, more frequently, its identical twin found at 18 U.S.C. § 16(b)). See, e.g., Chambers, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); United States v. Ayala, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); United States v. Aragon, 983 F.2d 1306, 1314 (4th Cir. 1993) (same); see also United States v. Keelan, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA residual clause and § 16(b) as "analogous"); Roberts v. Holder, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); United States v. Sanchez-Espinal, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[5] In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in § 924(c) is a risk that force will be used, this is distinction without a difference to the Due Process problem identified in Johnson.[6]

Johnson did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[7] That inquiry is the same under both the ACCA and § 924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony,[8] and

---

[6] See Jimenez-Gonzales v. Mukasey, 548 F.3d 557, 562 (7th Cir. 2008) (noting that "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b), which is identical to § 924(c)(3)(B), "perfectly mirrored" each other); see also United States v. Gomez-Leon, 545 F.3d 777 (9th Cir. 2008); United States v. Coronado-Cervantes, 154 F.3d 1242, 1244 (10th Cir. 1998); United States v. Kirk, 111 F.3d 390, 394 (5th Cir. 1997); United States v. Bauer, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and concluding that the interpretation of U.S.S.G. § 4B1.1, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

[7] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." And the Supreme Court in Johnson said it did not mean to call most of these into question. But, as Justice Scalia's majority opinion observed, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause, as well as its counterpart in § 924(c)(3)(B), require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability." Johnson, 135 S. Ct. at 2558.

[8] Both the ACCA and § 924(c)(3)(B) require courts to discern
(continued...)

16

then decide if it qualifies as a crime of violence by assessing the risk posed by the "ordinary case." This is the reasoning employed by the Ninth Circuit in invalidating § 16(b), the identical twin to § 924(c)(3)(B), as void for vagueness under <u>Johnson</u>. <u>Dimaya v. Lynch</u>, ___ F.3d ___, 2015 WL 6123546 (9th Cir. Oct. 19, 2015)

Even before <u>Johnson</u>, courts have ruled that the "ordinary case" analysis applies when construing 18 U.S.C. § 16(b). The Fourth Circuit explained, for instance, that

> every set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." <u>James</u>, 550 U.S. at 208, 127 S. Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C.

---

[8](...continued)
what the ordinary case of a crime is by examining the elements using a categorical approach. <u>United States v. Acosta</u>, 470 F.3d 132, 134 (2d Cir. 2006) ("Under this categorical approach, we focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime. Consequently, only the minimum criminal conduct necessary for conviction under a particular statute is relevant."); <u>see, e.g.</u>, <u>United States v. Butler</u>, 496 F. App'x 158, 161 n.4 (3d Cir. 2012); <u>Evans v. Zych</u>, 644 F.3d 447, 453 (6th Cir. 2011); <u>United States v. Serafin</u>, 562 F.3d 1104, 1108 (10th Cir. 2009); <u>United States v. Green</u>, 521 F.3d 929, 932 (8th Cir. 2008); <u>United States v. Amparo</u>, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

§ 16(b).

United States v. Avila, 770 F.3d 1100, 1107 (4th Cir. 2014). Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. See, e.g., Keelan, 786 F.3d at 871 (following the "uniform rule" of "all other circuits to have examined the issue" and adopting "ordinary case" analysis for § 16(b)); United States v. Ramos-Medina, 706 F.3d 932, 938 (9th Cir. 2012) (citing James as the source of the "ordinary case" analysis required by § 16(b)); Van Don Nguyen v. Holder, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute"); United States v. Sanchez-Garcia, 501 F.3d 1208, 1213 (10th Cir. 2007) (same).

Those cases control here because § 16(b) and § 924(c)(3)(B) are identical. Indeed, the Government has already admitted this. While litigating Johnson before the Supreme Court, the Government, through the Solicitor General, agreed that the phrases at issue in Johnson and here pose the same problem. After noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

Although Section 16 refers to the risk that force will be

18

> used rather than that injury will occur, it is equally
> susceptible to petitioner's central objection to the
> residual clause: Like the ACCA, Section 16 requires a
> court to identify the ordinary case of the commission of
> the offense and to make a commonsense judgment about the
> risk of confrontations and other violent encounters.

Johnson v. United States, Sup. Ct. Docket No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23).

The Solicitor General was right. The residual clauses of Section 924(c)(3)(B) and the ACCA contain the same constitutional infirmity. This Court should hold the Government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how risky that ordinary case is. Since this is the identical analytical step that brought down the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the Due Process principles reaffirmed in Johnson. As a consequence, the residual clause cannot be used to support a conviction under § 924(c).

**II.    Hobbs Act robbery does not qualify as a "crime of violence" under the force clause of § 924(c)(3)(A) because it can be committed without violent physical force or the intentional deployment of the same.**

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts use the categorical approach. See Descamps v. United States, 133 S. Ct. 2276, 2283 (2013); United States v. Acosta, 470 F.3d 132, 135 (2d Cir. 2006); United States v. Royal, 731 F.3d 333, 341-42 (4th Cir. 2014); see also United States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009). This approach requires that courts "look only to the statutory definitions -- i.e., the elements -- of a defendant's [] offense, and not to the particular facts underlying [the offense]," in determining whether the offense qualifies as a "crime of violence." Descamps, 133 S. Ct. at 2283 (quotation marks and citation omitted). In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute -- "including the most innocent conduct" -- matches or is narrower than the "crime of violence" definition. United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir. 2012).

As this Court puts it, "Under this categorical approach, we focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime. Consequently, only the

20

<u>minimum criminal conduct necessary for conviction under a particular statute is relevant</u>." <u>Acosta</u>, 470 F.3d at 135 (emphasis added). If the "most innocent" or "minimum criminal" conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, post-<u>Descamps</u>, for Hobbs Act robbery under § 1951(b) to qualify as a "crime of violence" under § 924(c)(3)'s force clause, the offense must have an element of "physical force." And "physical force" means "<u>violent</u> force" -- that is "strong physical force," which is "capable of causing physical pain or injury to another person." <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010) (emphasis in original).

Additionally, the defendant must <u>intentionally</u> employ that "violent" force. In <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), the Supreme Court considered the meaning 18 U.S.C. § 16(a), a "force clause" identical to that found in § 924(c)(3)(A), and concluded that "negligent or merely accidental conduct" involving the use of force does not fall within its reach. Although <u>Leocal</u> stated that the phrase "use . . . of physical force" "connotes the <u>intentional</u> availment of force," 543 U.S. at 9 (emphasis in original), the Court left open the question whether "reckless use of force against a person" falls within its coverage. <u>Id.</u> at 13. This Court

21

subsequently answered that question in <u>Jobson v. Ashcroft</u>, 326 F.3d 367, 373 (2d Cir. 2003), concluding that "use[]" of physical force under § 16(b) "contemplates only <u>intentional</u> conduct and refers only to those offenses in which . . . the perpetrator [] <u>intentionally</u> employ[s] physical force." (emphases in original; internal quotations omitted). The Fourth Circuit has reached the same conclusion regarding § 16(a), identical to the force clause of § 924(c)(3)(A). <u>Garcia v. Gonzalez</u>, 455 F.3d 465, 468-69 (4th Cir. 2006) (offense must have as an element the "intentional employment of physical force" to qualify under § 16(a)); <u>see also, e.g.</u>, <u>United States v. Portela</u>, 469 F.3d 496, 498-99 (6th Cir. 2006) (offense must involve intentional availment of force to qualify as "crime of violence").

To qualify as a "crime of violence" under the force clause of § 924(c)(3)(A), therefore, an offense must categorically -- <u>i.e.</u>, necessarily, in even its "most innocent" or "minimum" incarnation -- require (1) the presence of <u>violent physical force</u> and (2) the <u>intentional</u> availment thereof.

Hobbs Act robbery categorically fails to satisfy either requirement. By the plain language of § 1951(b), Hobbs Act robbery can be accomplished by putting someone in fear of future injury to her person or property, which does not require the use, attempted

22

use, or threatened use of "violent force."[9] Additionally, because

---

[9] Hobbs Act robbery is not a "divisible" offense within the meaning of Descamps. An offense is "divisible" -- and thus subject to the modified categorical approach -- only if it "consist[s] of alternative elements through which the offense may be proved." 133 S. Ct. at 2283; accord id. at 2281 ("divisible statute" is one that "sets out one or more elements of the offense in the alternative"); id. at 2284 (statute is "divisible" if it "comprises multiple, alternative versions of the crime"); id. at 2285 (divisible statute is one that "lists multiple, alternative elements, and so effectively creates several different crimes"). And by "elements," the Court meant factual circumstances of the offense that a jury must find "unanimously and beyond a reasonable doubt." Id. at 2288.

Even if the overall offense targeted by the Hobbs Act is divisible between "extortion" and "robbery," see 18 U.S.C. § 1951(a), the crime of Hobbs Act robbery under § 1951(b) is not divisible. Jurors are never asked to specify how the defendant's conduct met the "robbery" element. Critically, unanimity is not required regarding whether the defendant "robb[ed]" by means of actual or threatened force, or by means of fear of injury, for instance. Because the definition set forth in § 1951(b) simply set forth different means by which "robbery" can be committed, Hobbs Act robbery is not a divisible offense.

The jury instructions in this case are in accord. The trial court told the jury that Hobbs Act robbery had four elements:

First, that property of one or more individuals is taken or obtained;

Second, that property is taken or obtained against the will of this person or persons, by means of actual or threatened force, or violence, or fear of injury;

Third, that as a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in some way or degree; and

Fourth, that the defendant acted knowingly and intentionally."

(continued...)

23

the act of putting someone in fear of injury can accomplished without an <u>intentional</u> threat of physical force, it fails to satisfy the mens rea required under the § 924(c)(3)(A) force clause.

**A.** **The act of putting someone in fear of injury does not require the use, attempted use, or threatened use of "violent force."**

The plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides that the offense can be accomplished by the act of placing another in fear of injury. This action, at best, constitutes a threat of <u>injury</u> to another, which does not require

---

[9](...continued)
ECF No. 130 at 29 (emphasis added). And in further defining the second element of the offense, which the court labeled "robbery," the court simply told the jury:

**b.** **Second Element - Robbery**

The second element the government must prove beyond a reasonable doubt is that the defendant committed robbery. Robbery is the unlawful taking or obtaining of personal property from another, against his or her will. <u>This is done by threatening or actually using force, violence, or fear of injury, immediately or in the future, to person or property.</u> In considering whether the defendant used or threatened force, violence, or fear, you should give those words their common and ordinary meaning, and understand them as you would in your everyday lives. The use or threat of force, violence, or fear is unlawful if it is aimed at causing economic or physical injury. A threat may be made verbally, directly, or by implication. Whether a statement or physical gesture actually was a threat depends on the surrounding facts.

<u>Id.</u> at 30 (emphasis added).

24

the use or threatened use of "violent force."

This Court's decision in <u>Chrzanoski v. Ashcroft</u>, 327 F.3d 188, 194 (2d Cir. 2003), is squarely on point. The issue was whether a Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[s] the state to prove that the defendant had intentionally caused physical injury." <u>Id.</u> at 193. The Court held that the statute does not constitute a crime of violence because there is a difference between (1) causation of an injury (the only thing required by the Connecticut assault law) and (2) the use of physical force (as required by the force clause).

As <u>Chrzanoski</u> explained, "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. <u>Id.</u> at 195-56. Because the Connecticut statute "does not make use of force an explicit or implicit element of the crime," it does not qualify as a crime of violence under the force clause. <u>Id.</u> at 196.

The Fourth Circuit's decision in United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012), is also directly on point. Indeed, in that case, the Fourth Circuit unequivocally held that the threat of any physical injury, even "serious bodily injury or death," does not necessarily require the use of physical force -- let alone "violent force." The issue there was whether the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another" qualified as a conviction under a statute that had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2 -- a clause identical in relevant respects to § 924(c)(3)(A)'s force clause. Id. at 168. Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit concluded that the offense did not include a "violent force" element and, therefore, could not qualify as a "crime of violence" under the force clause. Id. at 168-69.

The court explained that "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." Id. at 168 (emphasis in original). Echoing Chrzanoski, the Fourth Circuit stated that, as a matter of common sense, "of course[] a crime may result in death or serious injury without

26

involving <u>use</u> of physical force." <u>Id.</u> (emphases in original).

The court canvassed decisions from other Circuits and pointed out that there are many ways in which physical injury (and even death) can result without the use of "violent force." <u>Id.</u> at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." <u>Torres-Miguel</u>, 701 F.3d at 168-69 (citing <u>United States v. Cruz-Rodriguez</u>, 625 F.3d 274, 276 (5th Cir. 2010)). The Fourth Circuit also embraced the Tenth Circuit's decision in <u>United States v. Perez-Vargas</u>, 414 F.3d 1282, 1287 (10th Cir. 2005), which "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury [by means of a dangerous weapon], imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under U.S.S.G. § 2L1.2." <u>Torres-Miguel</u>, 701 F.3d at 169 (citing <u>Perez-Vargas</u>, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." <u>Perez-Vargas</u>, 414 F.3d at 1286.

27

Hobbs Act robbery, which can be accomplished by putting another in fear of physical injury, therefore does not require "violent force." If threat of serious bodily injury or death do not equal violent force, then certainly, threat of "physical injury" does not. Indeed, as noted by this Court and others, a defendant can place another in fear of injury by threatening to poison that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, or to lock that person at an abandoned site without food or shelter. These are just some of the ways that one can threaten physical injury without "violent force."

**B.    The Hobbs Act can be committed by a threat to devalue intangible assets, which obviously does not require "violent force."**

Even more, Hobbs Act robbery can also plainly be accomplished by placing someone in fear of injury to her <u>property</u>. <u>See</u> 18 U.S.C. § 1951(b). This also does not require "violent force" under § 924(c)(3)(A) because it can be accomplished by many means short of "strong physical force."

"The concept of 'property' under the Hobbs Act is an expansive one" that includes "<u>intangible assets</u>, such as rights to solicit customers and to conduct a lawful business." <u>United States v. Arena</u>, 180 F.3d 380, 392 (2d Cir. 1999) (emphasis added) (citing 18 U.S.C. § 1951(a) and interpreting robbery definition that includes

threats against physical violence against "persons 'or property'"),
abrogated in part on other grounds by Scheidler v. Nat'l Org. for
Women, Inc., 537 U.S. 393, 401 n.8 (2003); see also United States
v. Iozzi, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction
under Hobbs Act when boss threatened "to slow down or stop
construction projects unless his demands were met"); United States
v. Local 560 of the International Brotherhood of Teamsters, 780
F.2d 267, 281 (3d Cir. 1986) (explaining that the Circuits "are
unanimous in extending Hobbs Act to protect intangible, as well as
tangible property."); Leonard B. Sand et al., Modern Federal Jury
Instructions - Criminal, Instruction 50-4 ("The term 'property'
includes money and other tangible and intangible things of value
which are capable of being transferred from one person to
another.").

Thus, Hobbs Act robbery can be committed via threats to cause
a devaluation of an economic interest such as a stock holding or a
contract right. Such threats to economic interests are certainly
not threats of "violent force." Nor do they otherwise require the
availment thereof.

Indeed, even injury to tangible property does not require the
threat of violent force. One can threaten to injure another's
property by throwing paint on his house, pouring chocolate syrup on
his passport, or spray painting his car. These actions obviously do

29

not require the "violent force" -- i.e., "strong physical force" "capable of causing physical pain or injury to another person" -- demanded by the earlier Johnson decision. 559 U.S. at 140.

Because "the full range of conduct" covered by the Hobbs Act robbery statute does not require "violent force" against persons or property, it does not qualify as a "crime of violence" under § 924(c)(3)'s force clause.

**C. Putting someone in fear of injury does not require an intentional threat of violent force.**

Hobbs Act robbery, as noted, can be committed by the act of putting someone in fear of injury. See 18 U.S.C. § 1951(b). This offense does not constitute a "crime of violence" under the force clause because it does not require an intentional threat of physical force. As discussed earlier, this Court has held that the defendant's employment of force must be intentional to constitute a crime of violence. Jobson, 326 F.3d at 373 (concluding that "crime of violence" under § 16(b), requiring that "physical force . . . be used," "contemplates only intentional conduct and refers only to those offenses in which . . . the perpetrator [] intentionally employ[s] physical force") (emphases in original); see Garcia v. Gonzalez, 455 F.3d at 468 (same regarding § 16(a), which is identical to § 924(c)(3)(A)).

The "fear of injury" element under the Hobbs Act robbery

30

statute does not require a defendant to intentionally place another in fear of injury. Therefore, it is missing the intentional mens rea necessary to a "crime of violence" under the force clause.

Federal cases interpreting the "intimidation" element in the federal bank robbery statute, 18 U.S.C. § 2113(a), are decisive. Federal bank robbery may plainly be accomplished by "intimidation," which means placing someone in fear of bodily harm -- the same action required under the Hobbs Act robbery statute. See United States v. Woodrup, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts"); see also United States v. Pickar, 616 F.3d 821, 825 (8th Cir. 2010) (same); United States v. Kelley, 412 F.3d 1240, 1241 (11th Cir. 2005) (same); United States v. Higdon, 832 F.3d 312, 315 (5th Cir. 1987) (same).

The "intimidation" element of federal bank robbery does not require an intentional mens rea. Rather, "intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." Woodrup, 86 F.3d at 36; see also United States v. Yockel, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though

31

there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); Kelley, 412 F.3d at 1244 ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); United States v. Foppe, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).

In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury. It is enough that the victim reasonably fears injury from the defendant's actions -- whether or not the defendant actually intended to create that fear. Because federal bank robbery criminalizes conduct that does not require an intentional threat of physical force, it squarely fails to qualify as a "crime of violence" under the force clause. And because the "intimidation" element of the federal bank robbery is the same as the "fear of injury" element of Hobbs Act robbery, the latter also fails to qualify as a "crime of violence" under § 924(c)(3)(A).

32

**CONCLUSION**

The commission of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3), is an essential element of the offense of conviction in this case, § 924(j)(1). As argued, the Hobbs Act robbery alleged in the indictment does not categorically qualify as a crime of violence under that provision.

First, it can no longer qualify under the "residual clause" of § 924(c)(3)(B) because that provision, like its materially indistinguishable counterpart in the Armed Career Criminal Act, is void for vagueness under <u>Johnson v. United States</u>, ___ F.3d ___, 135 S. Ct. 2551 (June 26, 2015). Second, it does not qualify under the "force clause" of § 924(c)(3)(A) because it does not necessarily involve "violent" "physical force" or the intentional employment of the same.

Because the Government cannot demonstrate an essential element of the offense of conviction, this Court should vacate Elvin Hill's conviction and dismiss the indictment.

<div style="margin-left:40%">

Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK,
 APPEALS BUREAU


By: ___/s/_____
 **YUANCHUNG LEE**
 Attorney for Appellant
  **ELVIN HILL**
 52 Duane Street, 10th Floor
 New York, New York 10007
 Tel.: (212) 417-8742

</div>

---

### CERTIFICATE OF SERVICE

I certify that a copy of this Brief has been served by cm/ecf and by first-class mail on the United States Attorney/E.D.N.Y.; Attention: **DANIEL SILVER, ESQ.,** Assistant U.S. Attorney, 271 Cadman Plaza East, Brooklyn, NY 11201.


Dated:  New York, New York
        November 10, 2015

                    _____/s/_____
                    **YUANCHUNG LEE**