# 14-3872-cr

United States Court of Appeals
for the Second Circuit

Docket No. 14-3872-cr

UNITED STATES OF AMERICA,

Appellee,

-against-

ELVIN HILL, a/k/a Elton,

Defendant-Appellant.

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**SUPPLEMENTAL REPLY BRIEF FOR DEFENDANT-APPELLANT ELVIN HILL**

FEDERAL DEFENDERS OF NEW YORK, INC.
 APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel. No.: (212) 417-8742

Attorney for Defendant-Appellant
**ELVIN HILL**

**YUANCHUNG LEE,**
 Of Counsel

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . ii

ARGUMENT

Hobbs Act Robbery Does Not Qualify as a "Crime
of Violence" under 18 U.S.C. § 924(c)(3) . . . . . . . . . . 2

Point I

*Johnson* Renders § 924(c)(3)(B)
Void for Vagueness. . . . . . . . . . . . . . . . . . . . . 6

    A.   The Government Misreads *Johnson*
        and Fails to Distinguish § 924(c)(3)(B)
        from the ACCA's Residual
        Clause . . . . . . . . . . . . . . . . . . . . 8

    B.   The List of Enumerated Offense Preceding
        the ACCA's Residual Clause Was Not Material
        to *Johnson*; If Anything, the Absence of Such
        a List in § 924(c)(3)(B) Only Exacerbates the
        Difficulty of Describing the "Idealized
        Ordinary Case." . . . . . . . . . . . . . . . . 10

    C.   Under § 924(c)(3)(B), Ordinary Case Analysis
        Is Neither Limited to the Elements Nor
        Otherwise "Narrower" than under the
        ACCA's Residual Clause . . . . . . . . . . . . 12

    D.   The Same Level of Confusion Surrounds
        Both Residual Clauses . . . . . . . . . . . . 15

    E.   *Johnson* Makes Clear that Mr. Hill May
        Raise a Facial Challenge . . . . . . . . . . . 16

Point II

Hobbs Act Robbery Does Not Require the Intentional
Availment of Strong and Violent Physical Force and
Therefore Does Not Qualify as a Crime of Violence
under § 924(c)(3)(A). . . . . . . . . . . . . . . . . . . . 17

    A.    <u>The Apparent Implausibility of Appellant's
           Argument Results from <i>Johnson</i>'s Elimination
           of the Residual Clause.</u> . . . . . . . . . . . . . 23

    B.    <u>"Plausible" Instances of Hobbs Act Robbery
           Do Not Qualify as a Crime of Violence under
           the Force Clause.</u> . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**CASES**

<u>Begay v. United States</u>,
    553 U.S. 137 (2008) . . . . . . . . . . . . . . . . . 7

<u>Chambers v. United States</u>,
    555 U.S. 122 (2009) . . . . . . . . . . . . . . . . . 7

<u>Chrzanoski v. Ashcroft</u>,
    327 F.3d 188 (2d Cir. 2003) . . . . . . . . . . . 5, 19

<u>Descamps v. United States</u>,
    133 S. Ct. 2276 (2013) . . . . . . . . . . . . . . . 3

<u>Dimaya v. Lynch</u>,
    803 F.3d 110 (9th Cir. Oct. 19, 2015) . . . . . . . . 9

<u>James v. United States</u>,
    550 U.S. 192 (2007) . . . . . . . . . . . . . . . 7, 14

<u>Jimenez-Gonzalez v. Mukasey</u>,
    548 F.3d 557 (7th Cir. 2008 . . . . . . . . . . . . . 7

<u>Jobson v. Ashcroft</u>,
    326 F.3d 367 (2d Cir. 2003) . . . . . . . . . . . . . 4

<u>Johnson v. United States</u>,
    135 S. Ct. 2551 (June 26, 2015) . . . . . . . . . <u>passim</u>

<u>Leocal v. Ashcroft</u>,
    543 U.S. 1 (2004) . . . . . . . . . . . . . . . . <u>passim</u>

<u>People v. Safon</u>,
    560 N.Y.S.2d 552 (App. Div. 1990) . . . . . . . . . 21

<u>Sykes v. United States</u>,
    131 S. Ct. 2267 (2011) . . . . . . . . . . . . . . . 13, 14

<u>Van Nguyen v. Holder</u>,
    571 F.3d 524 (6th Cir. 2009) . . . . . . . . . . . . . 8

<u>United States v. Acosta</u>,
    470 F.3d 132 (2d Cir. 2006) . . . . . . . . . . . . . 3

<u>United States v. Alsop</u>,
    479 F.2d 65 (9th Cir. 1973) . . . . . . . . . . . . . 18

<u>United States v. Brown</u>,
    629 F.3d 290 (2d Cir. 2011) . . . . . . . . . . . . . 7

<u>United States v. Castleman</u>,
    134 S. Ct. 1405 (2014) . . . . . . . . . . . . . . 4, 25

<u>United States v. DiSomma</u>,
    951 F.2d 494 (2d Cir. 1991) . . . . . . . . . . . . . 24

<u>United States v. Daye</u>,
    571 F.3d 225 (2d Cir. 2009) . . . . . . . . . . . . . 7

<u>United States v. Gonzalez-Ruiz</u>,
    794 F.3d 832 (7th Cir. July 25, 2015) . . . . . . . . 25

<u>United States v. Kelly</u>,
    412 F.3d 1240 (11th Cir. 2005) . . . . . . . . . . . 5, 18

<u>United States v. Reynolds</u>,
    20 M.J. 118 (C.M.A. 1985) . . . . . . . . . . . . . 21

<u>United States v. Rodriguez</u>,
    925 F.2d 1049 (7th Cir. 1991) . . . . . . . . . 5, 20, 26

<u>United States v. Stout</u>,
    706 F.3d 704 (6th Cir. 2013) . . . . . . . . . . . . . 8

<u>United States v. Woodrup</u>,
    86 F.3d 359 (4th Cir. 1996) . . . . . . . . . 18, 19, 26

<u>United States v. Yockel</u>,
    320 F.3d 818 (8th Cir. 2003) . . . . . . . . . . . . . 18

<u>United States v. Zhou</u>,
    428 F.3d 361 (2d Cir. 2005) . . . . . . . . . . . . . . 27

**STATUES**

18 U.S.C. § 16(b) . . . . . . . . . . . . . . . . . . . . 7, 15

18 U.S.C. § 924(c)(3) . . . . . . . . . . . . . . . . . 1, 2

18 U.S.C. § 1951(a) . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1951(b)(1) . . . . . . . . . . . . . . . . 2, 3

18 U.S.C. § 1951(b)(2) . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 924(c)(3) . . . . . . . . . . . . . . . . <u>passim</u>

18 U.S.C. § 924(c)(3)(A) . . . . . . . . . . . . . . <u>passim</u>

18 U.S.C. § 924(c)(3)(B) . . . . . . . . . . . . . . <u>passim</u>

18 U.S.C. § 924(j) . . . . . . . . . . . . . . . . . . 1, 2

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Docket No. 14-3872-cr

UNITED STATES OF AMERICA,

Appellee,

-against-

ELVIN HILL,

Defendant-Appellant.

APPEAL FROM A FINAL JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

SUPPLEMENTAL REPLY BRIEF FOR DEFENDANT-APPELLANT ELVIN HILL

This supplemental reply brief is submitted on behalf of defendant-appellant Elvin Hill in response to the Government's supplemental brief ("Gov. Supp."), which was filed in answer to Mr. Hill's opening supplemental brief ("Hill Supp.").

The Court should reject the Government's arguments and rule that Hobbs Act robbery no longer qualifies as a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3) after Johnson v. United States, 135 S. Ct. 2551 (June 26, 2015). And because the commission of a crime of violence is an essential element of § 924(j), the offense of conviction here, the Court should vacate Mr. Hill's conviction and dismiss the indictment.

1

## ARGUMENT

### Hobbs Act Robbery Does Not Qualify as a "Crime of Violence" under 18 U.S.C. § 924(c)(3)

In his supplemental brief, Mr. Hill explained that the Government had to demonstrate that the "predicate offense" in this case -- Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) & (b)(1)[1] -- qualified as a "crime of violence" within the meaning of § 924(c)(3) to sustain his conviction under § 924(j). Hill Supp. 6-8. The Government agrees. Gov. Supp. 2-4.

Mr. Hill further explained that to determine whether Hobbs Act robbery qualifies as a crime of violence, the Court must

---

[1] Section 1951(a) states in relevant part,

(a) Whoever in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

Section 1951(b) states in relevant part,

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute]

2

employ the formal categorical approach. This approach (1) "look[s] only to the statutory definitions -- *i.e.*, the elements -- of a defendant's [] offense, and <u>not</u> to [its] particular facts," <u>Descamps v. United States</u>, 133 S. Ct. 2276, 2283 (2013); and (2) approves a potential predicate as a qualifying one only if the "minimum [] conduct necessary" to commit the potential predicate matches (or exceeds) the elements of the listed offense, <u>United States v. Acosta</u>, 470 F.3d 132, 135 (2d Cir. 2006). Hill Supp. 20-24.

The Government again concurs. Gov. Supp. 7-8.

The decisive question is therefore whether the "minimum criminal conduct necessary for conviction" of Hobbs Act robbery -- for instance, robbery performed by placing someone in "fear of injury . . . to his person or property," 18 U.S.C. § 1951(b)(1) -- qualifies as a "crime of violence" under either § 924(c)(3)'s residual clause, § 924(c)(3)(B), or its force clause, § 924(c)(3)(A)?[2]

_____

[2] Section 924(c)(3) states in relevant part:

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and --

    (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(continued...)

3

The answer is no, in <u>Johnson</u>'s aftermath.

Hobbs Act robbery cannot qualify under § 924(c)(3)(B), first, because this residual clause is materially indistinguishable from the one <u>Johnson</u> invalidated and suffers the same fate. <u>See</u> Hill Supp. 10-19 and <u>infra</u> Point I.

Second, Hobbs Act robbery does not qualify under the force clause of § 924(c)(3)(A) because this crime does not necessarily involve (1) the <u>intentional</u> use[3] of (2) <u>strong, great, and violent</u> physical force[4]. <u>See</u> Hill Supp. 20-32 and <u>infra</u> Point II. This is so because one can commit Hobbs Act robbery by, for

---

[2](...continued)
> (B) that by its nature involves a substantial risk that physical force against he person or property of another may be used in the course of committing the offense.

[3] <u>See</u> <u>Leocal v. Ashcroft</u>, 543 U.S. 1, 9 (2004) (holding that "use . . . of physical force" "connotes the <u>intentional</u> availment of force") (emphasis in original); and <u>Jobson v. Ashcroft</u>, 326 F.3d 367, 373 (2d Cir. 2003) (holding that use of physical force "contemplates only <u>intentional conduct</u> and refers only to those offenses in which . . . the perpetrator [] <u>intentionally</u> employ[s] physical force") (emphases in original).

[4] <u>See</u> <u>Johnson v. United States</u>, 559 U.S. 133, 140 (2010) (holding that use of "physical force" means use of "<u>violent</u> force" -- that is, "great physical force" or "strong physical force . . . capable of causing physical pain or injury to another person") (emphasis in original); <u>United States v. Castleman</u>, 134 S. Ct. 1405, 1412 (2014) (explaining that the amount of force involved in "'a squeeze of the arm [that] causes a bruise'" falls short of the "strong" and "violent" force required under the ACCA's force clause).

instance, taking property from someone through intimidation --
i.e., by placing the victim in fear of injury to his person or
property -- an act that does not require either the intentional
availment of force, see, e.g., United States v. Kelly, 412 F.3d
1240, 1241 (11ᵗʰ Cir. 2005) ("Whether a particular act
constitutes intimidation is viewed objectively, . . . and a
defendant can be convicted [of federal bank robbery] even if he
did not intend for an act to be intimidating."), or the use of
great, strong, and violent physical force, see, e.g., Chrzanoski
v. Ashcroft, 327 F.3d 188, 195 (2d Cir. 2003) (noting that even
"the intentional causation of injury" -- a greater act than
threatening injury -- "does not necessarily involve the use of
force."). Hobbs Act robbery can also be committed by taking
property from someone while using a minimal amount of physical
force, a quantum short of the "strong" and "violent" force
required under the force clause. See, e.g., United States v.
Rodriguez, 925 F.2d 1049, 1052 (7ᵗʰ Cir. 1991) (taking a keychain
"attached to [the victim's] clothing, which required the
defendant "to pull the chain once or perhaps twice to snatch the
keys" away from the victim, involved enough force to constitute
robbery of a postal carrier).

Because Hobbs Act robbery does not qualify as a crime of
violence under § 924(c)(3), the Court should vacate Mr. Hill's

conviction and dismiss the indictment.

## Point I

### *Johnson* Renders § 924(c)(3)(B) Void for Vagueness.

The Government concedes that courts must use the same "ordinary case" analysis in determining whether a felony qualifies as a crime of violence under § 924(c)(3)(B) as under the residual clause of the ACCA. Gov. Supp. 23-24. That is, it agrees that a court categorizing a predicate felony under this clause must first determine what the "ordinary case" of the felony entails in the abstract, without examining real-world facts -- as it does when it categorizes felonies under the ACCA's residual clause.

The Government soft-pedals this concession by characterizing the ordinary case analysis as but one of several problematic features of the ACCA. Id. 17. But this is wrong. The ordinary case analysis, central to both residual clauses, is the core source of the "grave uncertainty" that doomed the ACCA in Johnson. Just as the ordinary case inquiry brought down the ACCA's residual clause, so too it invalidates § 924(c)(3)(B).

Before discussing the details of the Government's (failed) attempt to save § 924(c)'s residual clause from the fate of its ACCA twin, a broader vantage is illuminating: Prior to Johnson, the two residual clauses were considered equivalent regarding the

6

applicability of the categorical approach and the nature of the requisite analysis. Thus, the Supreme Court repeatedly treated 18 U.S.C. § 16(b), identical to § 924(c)(3)(B), as the functional equivalent of the ACCA's residual clause. In performing or describing ordinary case analysis under the ACCA, the Court cited Leocal v. Ashcroft, 543 U.S. 1 (2004), in which the Court conducted a similar analysis under § 16(b).[5] See Begay v. United States, 553 U.S. 137, 143, 145 (2008); James v. United States, 550 U.S. 192, 216, 219, 224 (2007) (Scalia, Stevens & Ginsburg, JJ., dissenting); see also Chambers v. United States, 555 U.S. 122, 133 n.2 (2009) (Alito & Thomas, JJ., concurring) (citing cases under § 16(b) because it "closely resembles ACCA's residual clause"). This Court and other courts of appeals did the same. See, e.g., United States v. Daye, 571 F.3d 225, 234 n.8 (2d Cir. 2009) ("[W]e find examination of our previous analysis of § 16(b) to be helpful in applying § 924(e)(2)(B)(ii), particularly in light of the similar standards articulated by the Supreme Court in Leocal and Begay."); United States v. Brown, 629 F.3d 290, 295 (2d Cir. 2011) (same); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 562 (7th Cir. 2008) ("Despite the slightly different definitions"

---

[5] Leocal, in turn, invoked ACCA precedent in determining whether the predicate offense there was a "crime of violence" under § 16(b)'s residual clause. 543 U.S. at 10.

7

in the residual clauses of the ACCA and § 16(B), "the Supreme Court's holding in Begay perfectly mirrored the analysis in Leocal regarding whether drunk driving was a crime of violence."); United States v. Stout, 706 F.3d 704, 708-09 (6th Cir. 2013); Van Nguyen v. Holder, 571 F.3d 524, 529-30 (6th Cir. 2009).

Thus, it was no surprise that the Solicitor General in its brief to the Supreme Court in Johnson expressly acknowledged that § 16(b) "is equally susceptible to petitioner's central objection to the residual clause," that it was unconstitutionally vague, because, "[l]ike the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense . . . ." Supp. Br. of the United States, Johnson v. United States, 2015 WL 1284964 at **22-23 (Mar. 20, 2015).

## A. The Government Misreads *Johnson* and Fails to Distinguish § 924(c)(3)(B) from the ACCA's Residual Clause.

Despite recognizing that courts must use the same doomed "ordinary case" inquiry under § 924(c)(3)(B) as under the ACCA, the Government contends that the former is not void for vagueness, for three principal reasons. First, it notes that § 924(c)(3)(B) does not include the ACCA's prefatory list of enumerated offenses and therefore does not require comparing the ordinary predicate felony. Gov. Supp. 18-20. Second, it claims

8

that this residual clause is "narrower" than the ACCA's, in that it (1) does not go beyond the elements of the offense to consider potential extra-offense conduct and (2) ponders the risk that physical force might be used rather than (the allegedly broader and more nebulous) risk that physical injury might result. Id. 20-22 & 23-25. Third, the Government claims that there has not been the same degree of confusion in the courts concerning this residual clause as opposed to the ACCA's. Id. 22-23.

These arguments fail. See Dimaya v. Lynch, 803 F.3d 110, 117-19 (9th Cir. Oct. 19, 2015) (rejecting same arguments and holding that § 16(b), identical to § 924(c)(3)(B), is void for vagueness under Johnson). Johnson held that courts cannot discern the "ordinary case" of the predicate offense with any certainty, let alone predictability. Neither Google, common sense, statistics, nor experts can identify with sufficient precision what the ordinary case of a crime entails. 135 S. Ct. at 2557. Most offenses involve a broad variety of factual scenarios, and a court simply is not equipped to "discern where the 'ordinary case' . . . lies along this spectrum. Id. This is true for both residual clauses. And Johnson's conclusion that it is an impossible task for a court to picture the ordinary case of the predicate crime applies to both clauses.

Nothing cures this fundamental, core defect. If a court

9

cannot determine the ordinary case of the predicate offense in
the first place, it can not even progress to the next step of
categorizing the offense. Thus, it makes no difference that
enumerated offenses in the statute may serve as a point of
comparison in subsequently determining whether the ordinary case
of the predicate offense is sufficiently risky.

Indeed, a court cannot even reach the stage of figuring the
type or degree of risk entailed in the ordinary case of a
predicate offense -- whether it be the risk of injury (as under
the ACCA) or the risk that force will be used -- if it cannot
picture the ordinary case in the first place. Thus, the alleged
"narrowness" of the risk inquiry in § 924(c)(3)(B) is irrelevant.

Finally, because courts have applied precedent on the ACCA's
residual clause to cases involving § 924(c)(3)(B) (and its twin,
§ 16(b)), confusion about those laws is subsumed within confusion
about the ACCA's residual clause.

B.    **The List of Enumerated Offense Preceding the ACCA's Residual**
      **Clause Was Not Material to _Johnson_; If Anything, the Absence**
      **of Such a List in § 924(c)(3)(B) Only Exacerbates the**
      **Difficulty of Describing the "Idealized Ordinary Case."**

_Johnson_ did not hinge on the list of enumerated offenses
that precedes the residual clause in the ACCA. The ordinary case
problem exists in any event. As the Court recognized, the list
bears only on the determination of "how much risk it takes for a

10

crime to qualify as a violent felony." 135 S. Ct. at 2558. But a lower court must <u>first</u> determine the "idealized ordinary case" of the predicate offense before it can even begin to evaluate the type and level of risk presented by that offense. <u>Id.</u> at 2557. And because a court cannot answer the threshold question with any certainty, a court also cannot proceed with the rest of the analysis. This is true of both residual clauses.

While <u>Johnson</u> noted the existence of the enumerated offense in parrying Justice Alito's dissent, the Court made clear that the ordinary case problem is the central distinguishing feature: "<u>More importantly</u>, almost all of the cited laws require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion . . . . The residual clause, however, requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime." <u>Id.</u> at 2561 (emphasis added).

Indeed, the absence of enumerated offenses in § 924(c)(3)(B) actually cuts against the Government. Their presence in the ACCA at least offered some benchmark for quantifying risk, though it did not suffice to rescue the residual clause. Section 924(c)(3)'s residual clause, on the other hand, provides no benchmark whatsoever. Thus, quantifying risk here is even more abstract, lacking any point of comparison.

11

C.  **Under § 924(c)(3)(B), Ordinary Case Analysis Is Neither Limited to the Elements Nor Otherwise "Narrower" than under the ACCA's Residual Clause.**

The Government errs in asserting that ordinary case analysis under § 924(c)(3)(B) "does not go beyond the elements of the offense" and thus is "narrower" than under the ACCA's residual clause. A different provision, the force clause of § 924(c)(3)(A), qualifies a predicate felony as a crime of violence based solely on its legal elements. This mirrors the ACCA, in which the residual clause is also paired with a force clause that turns exclusively on the elements of the predicate crime. Under both statutes, once the inquiry extends beyond the force clause and the strictly legal elements of the predicate offense, and into what constitutes the "ordinary case" of its commission, as required in both residual clauses, the inquiry becomes hopelessly and unconstitutionally indeterminate.

The Government also claims that § 924(c)(3)(B) is temporally narrower than the ACCA's residual clause because it looks to the risk of force only in the course of committing the offense. But, like the absence of enumerated offenses, this has no bearing on the threshold inquiry that the Supreme Court determined is impossibly arbitrary, the determination of what the "ordinary case" of the predicate crime looks like at the outset of its commission. <u>Johnson</u>, 135 S. Ct. at 2557. Federal courts have no

12

reliable standard for deciding whether, for example, "the
ordinary instance of witness tampering involve[s] offering a
witness a bribe . . . . [o]r threatening a witness with
violence." Or whether "the ordinary burglar invade[s] an occupied
home by night or an unoccupied home by day." Or whether "the
typical extortionist threaten[s] his victim in person with the
use of force, or . . . by mail with the revelation of
embarrassing personal information." Id. at 2557-58. Or whether
the "ordinary case of vehicular flight" is "the person trying to
escape from police by speeding or driving recklessly" or "the
person driving normally who, for whatever reason, fails to
respond immediately to a police officer's signal." Sykes v.
United States, 131 S. Ct. 2267, 2291 (2011) (Kagan & Ginsburg,
JJ., dissenting). If a court cannot hypothesize the "idealized"
"typical" category in which an offender embarks on a predicate
crime, it cannot proceed to determine how an offense is likely to
"play[] out," and thus cannot gauge the riskiness of the probable
ensuing conduct. Johnson, 135 S. Ct. at 2558.

In any event, by focusing on the risk during the predicate
offense, § 924(c)(3)(B) does not call for any narrower inquiry
than does the ACCA's residual clause. The Supreme Court's
determination of whether certain crimes were sufficiently risky
under the ACCA also focused on the risk during the commission of

13

the offense, rather than at some time later after it had ended.
See, e.g., James, 550 U.S. at 203-04 & 210 (looking to conduct
that typically occurs while the crime [attempted burglary] is in
progress," "while the break-in is occurring," and "during
attempted burglaries"); Sykes, 131 S. Ct. at 2273-74 (same).

Likewise, the supposedly "typical" conduct that the Court
found sufficiently risky in the ACCA cases now repudiated by
Johnson involved the kind that occurs during the predicate crime,
rather than some time later. See, e.g., James, 550 U.S. at 211-12
("An armed would-be burglary may be spotted by a police officer,
a private security guard, or a participant in a neighborhood
watch program. Or a homeowner . . . may give chase); Sykes, 131
S. Ct. at 2274 (driver's knowingly fleeing from law enforcement
officer held a violent felony given risk that, during the
pursuit, driver might cause accident or commit another crime to
avoid capture).

In no case did the Supreme Court actually rely on "post-
offense conduct" to find a predicate offense sufficiently risky
under the ACCA's residual clause. And it expressed doubt about
whether that would ever be a statutorily permissible basis to
qualify an offense as a 'crime of violence.'" Chambers, 555 U.S.
at 128 (questioning, though assuming for argument's sake, "the
relevance of violence that may occur long after" crime of failing

14

to report to penal confinement is complete").

The Government relies on the Supreme Court's description of the ACCA inquiry as one that goes "beyond evaluating the chances that the physical acts that make up the crime will injure someone," and the Court's citation of burglary as an example, where the "risk of injury arises . . . because the burglar might confront a resident in the home after breaking and entering." Johnson, 135 S. Ct. at 2557. But in assessing riskiness, § 924(c)(3)(B) and its twin, § 16(b), just like the ACCA, look not just at the initiation of the predicate crime (e.g., the burglar's climbing through the window), but beyond that, through the entire "course" of the offense to its completion (e.g., while the burglary is in the house, until he successfully flees). See Leocal, 543 U.S. at 10 ("A burglary would be covered under § 16(b) . . . because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.").

D.   **The Same Level of Confusion Surrounds Both Residual Clauses.**

The Government claims that unlike the ACCA's residual clause, § 924(c)(3)(B) is not mired in confusion. This claim is based on the assertion that while several dissenting opinions before Johnson criticized the ACCA's residual clause, no such opinion exists regarding § 924(c)(3)(B) (or § 16(b)).

15

The flaw in this argument is that cases addressing the latter residual clause(s) regularly relied on ACCA cases, and vice-versa. <u>See</u> <u>supra.</u> Courts use the same body of precedent. Thus, controversy surrounding the ACCA necessarily reflects difficulties with § 924(c)(3)(B) as well, even absent the same explicit chorus of criticism. Thus, confusion about the meaning of this residual clause is subsumed in the confusion surrounding the ACCA's.

**E.** ***Johnson* Makes Clear that Mr. Hill May Raise a Facial Challenge.**

Finally, the Government suggests that Mr. Hill's challenge cannot succeed unless he can show that § 924(c)(3)(B) is vague "as applied" to the particular predicate offense in his case. Gov. Supp. 25-28. But <u>Johnson</u> itself rejected this argument.

There, the Court held the residual clause void for vagueness on its face, without first determining if it was vague as applied to that defendant. And in response to Justice Alito's dissenting criticism that the Court should have used an "as applied" approach -- the same argument the Government makes here -- the Court explained that such a hopelessly indeterminate statute is unconstitutional even if "there is some conduct that clearly falls within the provision's grasp." 135 S. Ct. at 2561.

**Point II**

16

**Hobbs Act Robbery Does Not Require the Intentional Availment of Strong and Violent Physical Force and Therefore Does Not Qualify as a Crime of Violence under § 924(c)(3)(A).**

As noted, under the formal categorical approach, a potential predicate offense qualifies as a listed offense -- here, an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A) -- only if the minimum (or "most innocent") conduct necessary to commit the predicate offense meets or exceeds the elements of the listed offense. And in light of earlier Supreme Court decisions construing the force clause, this "listed offense" has as additional elements the (1) intentional use of force,[6] (2) where the amount of physical force employed must be significant -- only the use of "strong," "great," and "violent" physical force[7] suffices.

Because Hobbs Act robbery can be committed without either

_____

[6] Leocal, 543 U.S. at 9 ("use . . . of physical force" "connotes the _intentional_ availment of force") (emphasis in original).

[7] E.g., Johnson, 559 U.S. at 140 (use of "physical force" means use of "violent force" -- that is, "great physical force" or "strong physical force . . . capable of causing physical pain or injury to another person") (emphases added); see also id. ("When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer. See [Black's Law Dictionary] at 1188 (defining 'violent felony' as '[a] crime characterized by extreme physical force . . . .'") (emphasis added).

17

the intentional use of physical force or the use of "strong," "great," and "violent" physical force, it does not categorically qualify as a crime of violence under the force clause. Two examples should suffice.

<u>First</u>, for instance, one can commit Hobbs Act robbery by taking property from another person, without his consent, through "fear of injury" -- or simply "intimidation." Federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm -- the same action required for Hobbs Act robbery. <u>See</u> <u>United States v. Woodrup</u>, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" means "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts"). And in <u>United States v. Kelley</u>, 412 F.3d 1240, 1244 (11th Cir. 2005), the Eleventh Circuit upheld a bank robbery conviction based on intimidation even though neither defendant said anything or displayed a weapon during the robbery[8] because "an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts."

---

[8] As the Court put it, "the evidence at trial showed that Kelly and his accomplice jumped and slammed onto a bank counter, frightened two bank tellers [by this act], and grabbed money out of a cash drawer within arm's length of one of those tellers" before fleeing the bank. 412 F.3d at 1242.

Courts agree that the intimidation element of the bank robbery statute is satisfied whether or not the defendant intended to intimidate, so long as the defendant's actions would place "an ordinary, reasonable person in fear of bodily harm." United States v. Alsop, 479 F.2d 65, 67 n.4 (9th Cir. 1973); accord Kelly, 412 F.3d at 1244; United States v. Yockel, 320 F.3d 818, 821 (8th Cir. 2003); Woodrup, 86 F.3d at 364. And because bank robbery, and thus Hobbs Act robbery, can be committed without the intentional use of force, neither qualifies categorically as a crime of violence under § 924(c)(3)(A)'s force clause.

Additionally, intimidation does not require the use, attempted use, or threatened use of strong and violent physical force. Simply put, placing another person in fear of bodily injury -- like causing bodily injury -- does not necessarily involve the deployment of strong and violent physical force. As discussed at length in Mr. Hill's earlier brief, bodily injury can be threatened or accomplished by deception, poisoning, starvation, or exposure to hazardous chemicals -- none of which requires the use of strong and violent physical force. Hill Supp. 24-28; see, e.g., Chrzanoski v. Ashcroft, 327 F.3d 188, 195-96 (2d Cir. 2003) (holding that "just as risk of injury does not necessarily involve the risk of the use of force, the intentional

19

causation of injury does not necessarily involve the use of force," and explaining that (1) bodily "injury [may be] caused not by physical force, but by guile, deception, or even deliberate omission" and that (2) "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink).

Second, federal robbery, whether under § 1951(b) (the Hobbs Act) or § 2114(a) (robbery of a postal carrier), can be accomplished with a degree of physical force short of the strong, great, and violent force required by § 924(c)(3)(A). In United States v. Rodriguez, 925 F.2d 1049 (7th Cir. 1991), the court affirmed the defendant's conviction for robbery of a postal carrier after rejecting his argument that he did not employ a sufficient amount of force while taking property from a letter carrier. The evidence showed that the victim "carried his keys inside his pocket, attached to a chain that in turn was attached to his belt by a leather loop." Rodriguez "grabbed the key chain, pulled it once or twice, and 'popped the loop on the holder.'" He then fled. Id. at 1051.

The Seventh Circuit upheld Rodriguez's conviction on these

20

facts, rejecting his argument that "the amount of force or violence used to take the keys . . . was [too] minimal" to constitute robbery. The court explained that the force element of robbery is satisfied when the item taken is "so attached to the person or his clothes as to require <u>some</u> force to effect its removal." <u>Id.</u> at 1052 (emphasis added).

Courts and commentators agree. <u>See, e.g.</u>, 3 W. LaFave & A. Scott, <u>Substantive Criminal Law</u> § 20.3(d) (2d ed. 2003) ("To remove an article of value, attached to the owner's person or clothing, by a sudden snatching or by stealth is not robbery unless the article in question (e.g., an earring, pin or watch) is so attached to the person or his clothes as to require some force to effect its removal."). Thus, if "an article is merely snatched from the hand of another . . . and no other force is used, . . . the offense is not robbery." But if the victim resists the snatching, or if force is required to separate the item from the victim -- "as when the earring of a woman is torn from her ear or <u>a hair ornament entangled in her hair is snatched away</u>" -- then there is sufficient force to constitute robbery. <u>United States v. Reynolds</u>, 20 M.J. 118, 120 (C.M.A. 1985) (quoting Manual for Courts-Martial ¶ 201) (emphasis added). New York law is the same: A person commits robbery if he takes property and engages in a brief tug-of-war over it. <u>See</u> <u>People v.</u>

21

Safon, 560 N.Y.S.2d 552, 552 (App. Div. 1990) ("Proof that the
store clerk grabbed the hand in which defendant was holding the
money and the two tugged at each other until defendant's hand
slipped out of the glove holding the money was sufficient to
prove that defendant used physical force for the purpose of
overcoming the victim's resistance to the taking.").

Only a small amount of physical force is thus required to
commit robbery, including Hobbs Act robbery. This quantum of
force falls short of the "strong," "great," and "violent"
physical force required under the force clause as held in the
Supreme Court's 2010 Johnson decision. 559 U.S. at 140. If "'a
squeez[ing] of the arm [that] causes a bruise'" falls short of
the "strong" and "violent" force demanded by the force clause,
Castleman, 134 S. Ct. at 1412, then so does the act of pulling
"once or twice" on a keychain in order to "pop[] the loop on the
holder" or the act of removing "a hair ornament entangled in
[someone's] hair." Because Hobbs Act robbery can be committed
with a degree of physical force less than that required by the
force clause, it does not categorically qualify as a crime of
violence under § 924(c)(3)(A).

## A. The Apparent Implausibility of Appellant's Argument Results from *Johnson*'s Elimination of the Residual Clause.

The Government attempts to resist this conclusion in several

22

ways, but its most prominent attack is rhetorical: The Court should reject Mr. Hill's argument because it yields a "bizarre result," "strains credulity," and "leads to absurdities" and "absurd result[s]." Gov. Supp. 2, 8, 9 & 15.

The Government's rhetoric has surface resonance. It is admittedly unusual to say that Mr. Hill has not committed a "crime of violence" when he has been convicted of using a gun to murder someone during an armed robbery.[9]

The oddity of appellant's argument flows not from its internal logic or its support by binding precedent, however. Rather, it results from Johnson's invalidation of the residual clause, combined with an application of the categorical approach.

The residual clause in both the ACCA and § 924(c)(3) was intended to do (and previously did) meaningful work in expanding the definition of a "crime of violence" (or "violent felony") beyond the limited reach of the strict, elements-based force clause. See Johnson, 559 U.S. at 142 (acknowledging that a predicate may qualify as a violent felony under the residual clause, but not under the force clause). Indeed, Congress designed the two clauses to work together in defining the

---

[9] Of course that conviction is still on appeal and, as asserted in his original briefs, Mr. Hill contends that his conviction must be vacated and the case remanded for a new trial based on arguments unrelated to the instant one.

totality of crimes constituting crimes of violence. And given the wide sweep of the broadly worded residual clause, nearly all of offenses mentioned in the supplemental briefing here -- robbery in its myriad forms, murder, and assault, for instance -- qualified as crimes of violence under that clause.

After <u>Johnson</u> eliminated the residual clause, therefore, the universe of crimes of violence became much smaller. What remains of the definition of crime of violence, in both the ACCA and § 924(c)(3), is a fraction of what Congress intended. <u>Cf.</u> <u>Johnson</u>, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.").

The Government's intuition-based attack -- that Mr. Hill's argument must be rejected because it just seems wrong to say that using a gun during a robbery to kill someone is not a crime of violence -- ignores the seismic event that is <u>Johnson</u>.[10] The

---

[10] As does its citation to cases decided before <u>Johnson</u> to support the claim that Hobbs Act robbery qualifies as a crime of violence for § 924(c) purposes. <u>See</u> Gov. Supp. 6-7. Of course Hobbs Act robbery previously served as a predicate offense in § 924(c) prosecutions -- rarely did anyone even question the point. But that was all before <u>Johnson</u> eliminated the residual clause.

For instance, the Government found only one case from this Court concluding that conspiracy to commit Hobbs Act robbery is a crime of violence. <u>Id.</u> 6 (citing <u>United States v. DiSomma</u>, 951 F.2d 494 (2d Cir. 1991)). But the Government omits the fact that "the
                                                              (continued...)

24

seeming implausibility of his argument is not a symptom of unsoundness but results from the fact that only a portion of the governing statute still stands.

The Government may not like the post-<u>Johnson</u> world. But its desired remedy lies not with the courts but with Congress. And until Congress rewrites § 924(c)(3) to encompass crimes like Hobbs Act robbery, this Court's role is to interpret the statute as it is written (but without the portion excised by <u>Johnson</u>) in light of binding precedent, including <u>Taylor</u> (requiring the formal categorical approach), <u>Leocal</u> (requiring proof of intentional use of force), and the 2010 <u>Johnson</u> decision (requiring the use of strong, great, and violent force).[11] As

---

[10](...continued)
parties agreed that the conspiracy for which DiSomma was convicted falls into the violent crime classification." <u>Id.</u> at 496-97. The defendant's concession there, in an era long before the Supreme Court decided either of its two <u>Johnson</u> cases, renders that decision irrelevant to this appeal.

[11] The Government acknowledges that the Supreme Court's 2010 <u>Johnson</u> decision, holding that the phrase "use of physical force," defining the ACCA term "violent felony," means the use of "strong," "great," "violent" physical force, governs the identical phrase used in § 924(c)(3) to define the term "[felony] crime of violence." Gov. Supp. 11. But grasping at straw, the Government inconsistently suggests that the dramatically different definition of "use of physical force" adopted by the Supreme Court in <u>Castleman</u>, 134 S. Ct. 1405, 1410 (2014) (holding that this phrase, used to define the term "<u>misdemeanor</u> crime of <u>domestic violence</u>" in § 922(g)(9), "incorporate[s] the common-law meaning of 'force' -- namely, offensive touching"), also applies. <u>Id.</u>

(continued...)

25

explained above, that analysis yields the outcome that Hobbs Act robbery is not a crime of violence under § 924(c)(3). Cf. United States v. Gonzalez-Ruiz, 794 F.3d 832, 836 (7th Cir. July 25, 2015) (concluding in light of Johnson that conspiracy to commit armed robbery under Massachusetts law was no longer a violent felony).

**B.**   **"Plausible" Instances of Hobbs Act Robbery Do Not Qualify as a Crime of Violence under the Force Clause.**

Relatedly, the Government assails appellant's examples showing that Hobbs Act robbery can be committed without the intentional use of strong, violent force as figments of imagination, claiming that "there are no plausible violations of the Hobbs Act robbery statute" that did not satisfy § 924(c)(3)(A)'s force clause. Gov. Supp. 10.[12]

---

[11] (...continued)

The suggestion is groundless and must be rejected. Johnson's definition governs § 924(c)(3)(A) because, like the ACCA provision interpreted there, the phrase "use of physical force" is employed to define a "violen[t] [felony]." Compare 18 U.S.C. § 924(e)(2)(B)(ii) (term defined is "violent felony") with § 924(c)(3)(B) (term defined is "crime of violence . . . that is a felony"). In contrast, Castleman specifically explained that it was adopting the common-law definition of "use of physical force," which encompasses "even the slightest offensive touching," in lieu of Johnson's definition, because the phrase at issue was used to define a misdemeanor crime of "domestic violence" (rather than a "violent [felony]"). 134 S. Ct. at 1410-12.

[12] In his supplemental brief, Mr. Hill pointed out that the term "property" as used in the Hobbs Act -- for instance, § 1951's definition of robbery as "the unlawful taking or obtaining of (continued...)

26

Not so. As discussed above, Hobbs Act robbery, like bank robbery, can be committed by the act of taking property through "fear of injury," or intimidation. There are real-world examples:

---

[12] (...continued)
personal <u>property</u> . . . by means of . . . fear of injury . . . to his person or <u>property</u>" -- encompassed both tangible and intangible assets, such as stock holdings or contract rights. Hill Supp. 28-30. The Government does not dispute this well-settled law, but quibbles at length that the cases cited by Mr. Hill arise under the extortion provision (rather than the robbery provision) of the Hobbs Act. Gov. Supp. 12-14.

This misses the point. The same term "property" is found in § 1951(b)(1)'s definition of robbery and § 1951(b)(2)'s definition of extortion. The obvious conclusion is that they mean the same thing. And, to repeat, there is no serious dispute that one can commit Hobbs Act robbery by "unlawful[ly] taking . . . [the victim's] property . . . by means of . . . fear of injury . . . to his . . . or property," where the "property" at issue -- either as the object of the robbery ("taking . . . property") or as an aspect of its "means" ("fear of injury to . . . property") -- is an intangible asset. <u>See, e.g.</u>, 3 Leonard B. Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instr. 50-4 (defining "first element" of Hobbs Act robbery -- "that the defendant knowingly obtained or took . . . the personal property of another" -- and stating that "[t]he term 'property' includes money and other tangible and intangible things of value"), and <u>id.</u> Instr. 50-5 (defining "second element" of Hobbs Act robbery -- "[u]nlawful taking by force, violence or fear of injury" -- and stating that "[t]he use or threat of force or violence might be aimed at a third person, or at causing economic rather than physical injury").

In any event, the difference between robbery and extortion has nothing to do with whether the "property" at issue (whether as a means or an object) is tangible or intangible. Rather, the "razor's edge that distinguishes extortion from robbery" is "th[e] element of consent." <u>United States v. Zhou</u>, 428 F.3d 361, 371 (2d Cir. 2005). While the victim of extortion "always retains some degree of choice in whether to comply with the extortionate threat, however much of a Hobson's choice that may be," the victim of robbery does not. <u>Id.</u>

In Kelly, for instance, the defendants robbed a bank by jumping suddenly onto a bank counter and removing money out of a cash drawer, without saying anything, looking at anyone, or displaying a weapon before fleeing. 412 F.3d at 1242. They thus robbed the bank by intimidation, which is proved if "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts." Woodrup, 86 F.3d at 364.

Had the Kelly defendants targeted a Walmart or a gas station instead of an FDIC-insured bank, they would have been prosecuted for Hobbs Act robbery. There is nothing implausible about this scenario.

Similarly, the robbery at issue in Rodriguez, in which the amount of force that the defendant used to remove the postal carrier's keychain from his belt was less than the strong, great, and violent force demanded by the force clause, 925 F.2d at 1051-52, could readily and plausibly occur in a Hobbs Act prosecution. Had the victim been a private courier charged with delivering parcels across state lines, for instance, the defendant could have been charged with Hobbs Act robbery.

Under either example, the conduct would have constituted Hobbs Act robbery -- but would not have qualified as a "crime of violence" within the meaning of § 924(c)(3) under the governing categorical approach in Johnson's aftermath.

28

## CONCLUSION

For the foregoing reasons and for those set forth in appellant's supplemental brief, this Court should vacate Mr. Hill's conviction and dismiss the indictment.

Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK,
APPEALS BUREAU

By:     /s/

**YUANCHUNG LEE**
Attorney for Appellant
  **ELVIN HILL**
52 Duane Street, 10th Floor
New York, New York 10007
Tel.:  (212) 417-8742

## CERTIFICATE OF SERVICE

I certify that a copy of this Supplemental Reply Brief has been served by ECF on the United States Attorney/E.D.N.Y.; Attention: **DANIEL SILVER, ESQ.,** Assistant United States Attorney, 271 Cadman Plaza East, Brooklyn, NY 11201.

Dated:   New York, New York
         December 21, 2015

                              ____/s/_____
                              **YUANCHUNG LEE**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.   This reply brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

        this reply brief contains 6,673 words,
        excluding the parts of the brief exempted by
        Fed. R. App. P. 32(a)(7)(B)(iii); and

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a monospaced
        typeface using **Corel WordPerfect 9** with **10
        characters per inch in courier new** type
        style.

Attorney for Appellant **ELVIN HILL**

Dated:   New York, New York
         December 21, 2015

                              ____/s/_____
                              **YUANCHUNG LEE**

30