# Federal Defenders
## OF NEW YORK, INC.

Appeals Bureau
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392
www.federaldefendersny.org

David E. Patton
*Executive Director
and Attorney-in-Chief*

*Appeals Bureau*
Barry D. Leiwant
*Attorney-in-Charge*

February 11, 2016

**BY ECF**

Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
   for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Centre Street
New York, New York 10007

> Re:  **United States v. Elvin Hill**, Docket No. 14-3872-cr
>      Citation of Supplemental Authority under Rule 28(j)

Dear Ms. O'Hagan Wolfe:

I represent Elvin Hill on this appeal, which was argued before a Panel of this Court (Jacobs, Livingston, and Droney, C.JJ.) on November 12, 2015. Pursuant to Fed. R. App. P. 28(j), I submit this letter to bring to the Court's attention a decision rendered yesterday by the U.S. Court of Appeals for the Fifth Circuit relevant to an issue on appeal -- whether 18 U.S.C. § 924(c)(3)(B) is void for vagueness in light of <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). <u>See</u> Appellant's Supplemental 10-19; Government's Supplemental Brief 16-28; and Appellant's Supplemental Reply Brief 6-16.

The decision is <u>United States v. Gonzalez-Longoria</u>, ___ F.3d ___ (5th Cir. Feb. 10, 2016), a copy of which is enclosed with this letter. Please distribute this letter and the attached opinion to the members of the Panel.

In <u>Gonzalez-Longoria</u>, the Fifth Circuit ruled that the residual clause of 18 U.S.C. § 16(b), identical to that found in

§ 924(c)(3)(B), is void for vagueness in <u>Johnson</u>'s aftermath.[1] The decision thus supports the arguments made by Mr. Hill in his supplemental briefing.

Respectfully submitted,

/s/

**YUANCHUNG LEE**
Assistant Federal Defender
Tel.: 212-418-8742
Email: yuanchung_lee@fd.org

YCL/jl
enclosure

cc:  DANIEL SILVER, Esq.
     Assistant U.S. Attorney
     (BY ECF)

---

[1] The Fifth Circuit joins the Seventh and Ninth Circuits in so holding. <u>United States v. Vivas-Ceja</u>, 808 F.3d 719 (7th Cir. 2015); <u>Dimaya v. Lynch</u>, 803 F.3d 1110 (9th Cir. 2015). No other circuit has reached the issue.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-40041

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

GREGORIO GONZALEZ-LONGORIA,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, HIGGINSON and COSTA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, we address for the first time whether 18 U.S.C. § 16's statutory definition of "crime of violence" is unconstitutionally vague. We consider this question in the light of the Supreme Court's recent holding that a similar provision of the Armed Career Criminal Act (ACCA) is unconstitutionally vague. *Johnson v. United States*, 135 S.Ct. 2551 (2015). In *Johnson*, the Court held that the ACCA violated the constitutional prohibition against vague criminal statutes by defining "violent felony" as any crime that "is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" 18 U.S.C. § 924(e)(2)(B). Section 16 contains a similar definition: a

No. 15-40041

"crime of violence" is "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The Seventh and Ninth Circuits have both held that this language is sufficiently similar to the ACCA's language to suffer the same unconstitutional fate. *United States v. Vivas-Ceja*, 808 F.3d 719, 720 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). We agree, and accordingly hold § 16 unconstitutional.

I.

Gonzalez-Longoria pled guilty to and was sentenced for being illegally present in the United States in violation of 8 U.S.C. § 1326. During sentencing, the court determined that Gonzalez-Longoria had previously committed an "aggravated felony" under USSG § 2L1.2(b)(1)(C) and applied an eight-level sentencing enhancement. "'[A]ggravated felony' has the meaning given that term in 8 U.S.C. [§] 1101(a)(43)." Section 1101(a)(43), in turn, defines an "aggravated felony" as any of a list of offenses, including "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment is at least one year." Section 16 defines "crime of violence" as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The government does not contend that Gonzalez-Longoria's 2008 conviction qualified under § 16(a). Thus, Gonzalez-Longoria's past offense

No. 15-40041

qualifies as an "aggravated felony" only if it qualifies as a § 16(b) "crime of violence," as the district court found.[1]

Gonzalez-Longoria argued that the § 16 definition of "crime of violence" is unconstitutionally vague. The district court disagreed and sentenced Gonzalez-Longoria to twenty-seven months of imprisonment and three years of supervised release. Gonzalez-Longoria appealed, challenging the facial constitutionality of § 16.

II.

As an initial matter, we consider whether Gonzalez-Longoria can validly challenge the constitutionality of § 16. Gonzalez-Longoria received a sentencing enhancement under USSG § 2L1.2(b)(1)(C). If Gonzalez-Longoria had challenged § 2L1.2 as unconstitutionally vague, we would have to determine whether guideline provisions are immune from vagueness challenges, as the Eleventh Circuit recently held.[2] We have not previously decided this issue in a published case, though unpublished cases have agreed with the approach adopted by the Eleventh Circuit. *See, e.g., United States v. Velasquez*, 2007 WL 2437961 (5th Cir. 2007) ("[The defendant]'s unconstitutional vagueness argument is unfounded because it challenges a [s]entencing [g]uideline, not a criminal statute.").[3]

---

[1] USSG § 2L1.2 separately defines "crime of violence." Gonzalez-Longoria's offense undisputedly did not satisfy the *§ 2L1.2* definition of "crime of violence"; the doubt is about the *§ 16* definition of "crime of violence," which is relevant to the § 2L1.2 definition of "aggravated felony."

[2] *United States v. Matchett*, 802 F.3d 1185, 1195 (11th Cir. 2015) ("Because there is no constitutional right to sentencing guidelines—or, more generally, to a less discretionary application of sentences than that permitted prior to the Guidelines—the limitations the Guidelines place on a judge's discretion cannot violate a defendant's right to due process by reason of being vague.") (quoting *United States v. Wivell*, 893 F.2d 156, 160 (8th Cir.1990)).

[3] *Velasquez* cites *United States v. Pearson*, 910 F.2d 221 (5th Cir.1990). *Pearson*, however, does not address whether the guidelines are subject to a vagueness challenge. It holds only that "[d]ue process does not mandate[] either notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall." *Id.* at 223. As Gonzalez-Longoria points out, notice is only one concern underlying the vagueness

No. 15-40041

Gonzalez-Longoria, however, does not challenge the constitutionality of § 2L1.2(b) but instead challenges § 16. Thus, we need not address the question of whether guideline provisions are subject to vagueness challenges, as both Gonzalez-Longoria and the government contend them to be. Instead, we limit our analysis to the situation before us: If § 16 is unconstitutional, it becomes a legal nullity, and can have no further effect. Accordingly, § 2L1.2(b) would not be able to incorporate that nullity by reference and Gonzalez-Longoria's sentence should not have been enhanced.

The government urges that focusing on § 16's incorporation by reference risks creating "an untenable distinction because it would treat differently a [g]uideline that reprints statutory language from a [g]uideline that, rather than copy the text, simply refers to a statute by number." Gov't letter br. at 2. This is true. One consequence of our holding is § 2L1.2 (which incorporates § 16 by reference) could be treated differently from § 4B1.2 (which mirrors the language held invalid in *Johnson*). To avoid this difficulty, the government argues that we should subject all guideline provisions to vagueness challenges. Perhaps this argument is correct. On the other hand, some reasons exist to treat incorporation by reference differently from copying the text: when the sentencing commission incorporates a statutory provision by reference, it ties the guideline to any future legislative or judicial changes to that statute, ensuring uniformity. Conversely, when the sentencing commission copies the text of a statute without incorporating the statute by reference, it fixes the meaning of the guideline to that text—future amendments of the statute would be irrelevant to the guideline. Arguably, this decision to incorporate by reference or to copy text should determine the availability of a vagueness

---

analysis; the vagueness doctrine also seeks to prevent arbitrary enforcement. *See Johnson*, 135 S.Ct. at 2558.

No. 15-40041

challenge. In any event, however, we leave these questions for another day and hold only that, when a guideline incorporates a statute by reference, a defendant sentenced under that guideline may permissibly challenge the statute's constitutionality.[4] We turn, therefore, to the question of whether § 16 is unconstitutionally vague.

## III.

*Johnson* sets the background for this inquiry:

> The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." . . . [T]he [g]overnment violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357–358, (1983). . . . These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences. *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

*Johnson*, 135 S.Ct. at 2556. A facial vagueness challenge "presents a pure question of law" and we therefore review it *de novo*. *United States v. Clark*, 582 F.3d 607, 612 (5th Cir. 2009).

## A.

The government argues that we should not reach the merits of Gonzalez-Longoria's facial vagueness challenge because § 16 is not vague as applied to him in the circumstances of his sentence. The government correctly points out that a defendant cannot raise a vagueness challenge to a statute simply

---

[4] We therefore do not reach Gonzalez-Longoria's alternative argument that he may challenge § 16 because it raised the statutory maximum for his sentence from ten years to twenty years (Gonzalez-Longoria was sentenced to twenty-seven months of imprisonment). *See Vivas-Ceja*, 808 F.3d at 720 (reaching the constitutionality of § 16 because it increased the statutory maximum when the defendant was sentenced below any relevant statutory maximum).

No. 15-40041

because some hypothetical *other* defendant's conduct might create a "vague application" of the statute. Gov't Supp. Br. 9. This restriction, however, does not mean that every defendant must first show that a statute is vague as applied to him as a predicate to any further argument of facial vagueness. Instead, the government's argument is best taken as illustrating the high bar for facial vagueness challenges. As the government acknowledges, a statute can be "void for vagueness because of its inherent inability to produce 'evenhanded, predictable, or consistent' applications." Gov't Supp. Br. at 9 (quoting *Johnson*, 135 S.Ct. at 2563). Gonzalez-Longoria argues that exactly this sort of "inherent inability" infects § 16. To determine whether he is correct, we turn to the Supreme Court's recent decision in *Johnson v. United States*.

B.

In 2007, Samuel Johnson was convicted of unlawfully possessing a short-barreled shotgun; in Johnson's subsequent prosecution for being a felon in possession of a firearm, the government argued that the 2007 crime met the ACCA's definition of "violent felony." The ACCA defined "violent felony" as any crime that "is burglary, arson, or extortion, involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*"; the Court struck down this final clause, the residual clause, as unconstitutionally vague.

The Court held that the residual clause is vague because it contained "[t]wo features." It required (1) that courts imagine an "ordinary case" and (2) that courts then adjudicate that "ordinary case" under an "imprecise standard." Neither of these "features" is self-explanatory; we address each in turn.

First, however, a note concerning terms: the Court uses the term "ordinary case." As explained below, by "ordinary case" the Court refers to a hypothetical case based upon hypothetical facts, standard to the crime, instead

6

of the defendant's actual criminal conduct. In other words, we understand the Court's use of "ordinary case" to refer to the *archetypical* conduct associated with the crime. Consequently, we will sometimes use the term "archetypical case" interchangeably with "ordinary case."

### 1. Archetypical-case analysis

Before we can turn to the question of what archetypical-case analysis is, we must start with a more basic question: What is usually the judge's role in applying a typical criminal statute to the defendant who committed the crime? That is, what does a judge do when a statute *does not* require archetypical-case analysis? The judge applies the law to the facts in the case before him. For example, if a law criminalizes "manufacturing a controlled substance" in a way that creates "substantial risk of harm to human life,"[5] the judge determines whether the facts in this case showed that the defendant before him created a "substantial risk of harm to human life." This might be a hard question on factual grounds (which testimony is most credible?) or on legal grounds (what, exactly, is "substantial risk?"). But this question is exactly the sort of question that judges and juries ask and answer routinely.

And this question is exactly the sort of question that judges are *forbidden* from asking when they are called upon to apply an archetypical-case analysis. When charged with undertaking archetypical-case analysis, a judge must ignore the facts of the case before him; likewise, he must disregard the defendant's specific conduct.

This task raises an initial question: Why would a statute ever instruct a court to ignore the facts of the crime before it? In *Johnson*, the ACCA was written to avoid requiring a factual inquiry so that courts can sentence career offenders without delving into the specific conduct of their past offenses.

---

[5] *See* 21 U.S.C. § 858.

No. 15-40041

Specifically, the district judge in *Johnson* did not need to inquire into the details of Johnson's 2007 state-court conviction for possessing a short-barreled shotgun. Instead, the sentencing judge applied the archetypical-case analysis.

So, finally, what exactly is archetypical-case analysis? This analysis asks the judge to examine the crime that the defendant was charged with (here, possessing a short-barreled shotgun). The judge is then to ignore facts of the defendant's conduct and imagine the hypothetical facts archetypically associated with that crime. In the Court's words, a judge must create "a judicially imagined 'ordinary case' of a crime" that is not tied "to real-world facts or statutory elements." *Id.* at 2557. The judge must then adjudicate that archetypical case by the standard provided in the same statute. In *Johnson*, the trial judge was required to ask whether the *archetypical* case of possessing a short-barreled shotgun "involves conduct that presents a serious potential risk of physical injury to another." This hypothetical application of this standard to the hypothetical facts of the imagined case forms the heart of the archetypical-case (or ordinary case) analysis.

### 2. Imprecise standard

Analyzing an archetypical case does not by itself render a statute unconstitutionally vague under *Johnson*. Only when the required archetypical-case analysis is paired with the second "feature" does the statute become impermissibly vague. That second feature is whether the statute judges the archetypical case against an "imprecise standard."

Under the ACCA, courts were asked to determine if the archetypical case of a crime met the following standard: does the archetypical crime "involve[] conduct that presents a serious potential risk of physical injury to another"? The Court noted that a "serious potential risk" standard is textually imprecise. After examining the textual imprecision, the Court identified three factors that could add or subtract precision from the text. First, the residual clause was

No. 15-40041

not clarified by example, as the government argued; instead, a "confusing list of examples" made an already-imprecise standard worse. *Id.* at 2561. Second, the residual clause did not apply to a narrow scope of conduct; instead, it applied broadly to subsequent effects of a criminal act.[6] *Id.* at 2551. Third and finally, federal courts had not agreed about how to interpret the residual clause; instead, they had experienced "pervasive disagreement" about the clause's proper meaning. *Id.* at 2560. Each of these factors reduced the precision of the ACCA's standard.

Based on the ACCA's text and these three factors, the Court held that the residual clause contained an impermissibly imprecise standard. The Court did not determine whether the textual imprecision alone or any combination of the factors, without the others, would have doomed the ACCA. "Each of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'" *Id.* (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948)). Given that sum, the ACCA contained an imprecise standard; applying that imprecise standard with archetypical-case analysis rendered the ACCA unconstitutionally vague.

### 3. The *Johnson* test for vagueness

Thus, the *Johnson* test for vagueness requires that we ask two questions today, in our consideration of § 16. First, whether the statute requires the analysis of an imaginary, archetypical case to determine whether a crime is a "crime of violence." That is, whether applying the statute requires a court to set aside the actual facts before it, and to imagine the conduct that would be committed in an archetypical case of the crime under consideration. If not—if

---

[6] "[A] crime may qualify under the residual clause even if the physical injury is remote from the criminal act. But how remote is too remote? Once again, the residual clause yields no answers." *Id.* at 2551.

No. 15-40041

the court is free to look at the facts of the case before it—then *Johnson* does not apply.

If the statute *does* require that we perform an analysis of the archetypical case, we then turn to a second question: whether the archetypical case must be adjudicated under an "imprecise standard." To answer this question, we will look to the text of the statute and three non-exclusive factors: presence or absence of clarifying examples, whether the scope is limited or expansive, and judicial agreement or disagreement.

If the statute both calls for an analysis of the archetypical case *and* provides an "imprecise standard" by which the archetypical case must be judged, it follows that the statute is unconstitutionally vague.

IV.

We first raise the threshold question: whether interpreting § 16 requires an analysis of an archetypical case. The parties do not dispute that such an analysis is required,[7] and we agree. The only disputed question is whether § 16 includes an imprecise standard by which the archetypical case must be judged. Thus, accepting the first prong of *Johnson* as satisfied, we turn our full attention to the second consideration in the vagueness analysis.

A.

We begin with the text. Section 16 defines a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16. This text closely resembles the ACCA's definition of "violent felony" as any crime that "is [one

_____

[7] Compare Gov't Supp. Br. at 3 ("[L]ike [interpreting the] ACCA, [interpreting] § 16(b) involves a risk-based analysis of the 'ordinary case' of a predicate offense.") with Gonzalez-Longoria Supp. Br. at 4 ("[Interpreting § 16(b)] requires a categorical inquiry that asks the sentencing court first to imagine the type of conduct constituting the 'ordinary case' of the crime . . . .").

No. 15-40041

of the examples] or otherwise involves conduct that presents a serious potential
risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The ACCA's
standard, however, is arguably less precise, since the ACCA's *risk* is modified
by both "serious" and "potential," while § 16's *risk* is modified only by
"substantial." Further, "physical force" may be marginally clearer than
"physical injury." These differences are slight, however, and the two statutes'
text provide similarly imprecise guidance. We therefore turn to the factors
identified in *Johnson*.

B.

The first factor that affects the precision of a standard is the presence or
absence of clarifying examples. In *Johnson*, the government argued that the
presence of examples clarified the meaning of the ACCA. *Johnson*, 135 S.Ct.
at 2560–62. The Court rejected this argument, holding that the list of
examples was "confusing." The Court focused specifically on "burglary" and
"extortion":

> These offenses are far from clear in respect to the
> degree of risk each poses. Does the ordinary burglar
> invade an occupied home by night or an unoccupied
> home by day? Does the typical extortionist threaten
> his victim in person with the use of force, or does he
> threaten them by mail with the revelation of
> embarrassing personal information?

*Johnson*, 135 S. Ct. at 2558.

Today, the government argues that § 16 is clearer than the ACCA
because "it does not contain an introductory list of enumerated crimes followed
by an 'otherwise' provision." Gov't Supp. Br. at 3. True enough. Section 16,
however, also lacks *clarifying* examples. Arguably, having no examples is
worse than having unclear examples. The confusing examples in *Johnson*
"provide at least some guidance as to the sort of offenses Congress intended for
the provision to cover. Section 16(b), by contrast, provide no such guidance at

11

all." *Dimaya*, 803 F.3d at 1118 n.13. *See also Vivas-Ceja, 808 F.3d at 723* (holding that, without examples, the ACCA's standard would have been objectionably imprecise, and that "the enumeration of specific crimes did nothing to clarify" the ACCA's imprecise standard).

We could look beyond the text of § 16 for potentially clarifying examples in an attempt to save the statute. This search, however, leads to examples that, like the ACCA's examples, confuse rather than clarify. As the government notes, "In *Leocal* [*v. Ashcroft*, 543 U.S. 1 (2004)], a unanimous Court . . . identified one offense (burglary) as the 'classic example' of a § 16 qualifying offense." Gov't Supp. Br. at 6. Thus, § 16 arguably contains a judicially imposed example—the very one that proved most problematic in the ACCA. Just as the ACCA's "residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' attempted burglary involves," § 16 offers no principled way to determine how much physical force, if any, is risked in an ordinary burglary. *Johnson*, 135 S. Ct. at 2558. "Does the ordinary burglar invade an occupied home by night or an unoccupied home by day?" *Id.* The answer is no clearer when interpreting § 16 than when interpreting the ACCA.

"Burglary" is not the only arguable § 16 example. Section 16 only impacts Gonzalez-Longoria because it is incorporated into the definition of "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, *but not including a purely political offense*)." 8 U.S.C. § 1101(a)(43)(F) (emphasis added). This qualifier suggests that at least some "purely political offense[s]" would *otherwise* be § 16 crimes of violence. Like burglary, however, the "purely political offense" example is confusing. Though we have never interpreted the meaning of "purely political offense," the Second Circuit contrasted "'purely' political offenses against a government, such as treason, sedition[,] and espionage, [with] 'relative' political offenses, to wit, crimes

12

No. 15-40041

against persons or property which are incidental to a war, revolution, rebellion or political uprising." *Matter of Mackin*, 668 F.2d 122, 124 (2d Cir. 1981). If we were to adopt this view, it would be hard to conceive of a "purely" political offense that would otherwise qualify as a § 16 crime of violence. This factor adds further imprecision.

Section § 16 lacks a clarifying list of examples. It either contains no examples and thus lacks any source of clarification, or it contains a confusing list of examples. Neither alternative reduces the statute's imprecision.

C.

The second factor contributing to the ACCA's imprecision was the potential breadth of its scope. The Court noted that, to interpret the residual clause, courts must go beyond "evaluating the chances that the *physical acts that make up the crime* will injure someone" to consider injuries that might occur after those physical acts had been completed. *Johnson*, 135 S.Ct. at 2557 (emphasis added).

The government contends that, because § 16 "applies only when the risk of force occurs 'in the course of committing the offense,'" it is "significantly narrower" than the ACCA's residual clause. Gov't Supp. Br. at 5. This assertion, however, fails to contend with *Leocal*'s observation: Burglary is a "classic example" of a § 16 crime of violence. *Leocal*, 543 U.S. at 2.[8] In the ACCA:

> the inclusion of burglary [as an example] confirms that the court's task also goes beyond evaluating the chances that the *physical acts that make up the crime* will injure someone. The act of . . . breaking and

---

[8] *Leocal*'s strict holding was only that driving under the influence is not a crime of violence, and thus the discussion of burglary is arguably dicta. Nonetheless, the Court was emphatic—not only is burglary included under § 16, it is "the classic example" of a crime of violence under § 16; we would need strong reason to depart from such clear guidance from the Court.

No. 15-40041

> entering into someone's home does not, in and of itself,
> normally cause physical injury. Rather, risk of injury
> arises because . . . the burglar might confront a
> resident in the home after breaking and entering.

*Johnson*, 135 S.Ct. at 2557. Just as the risk of injury in burglary frequently occurs after the breaking and entering, so too does the risk of physical force. Thus, at least some extra-offense conduct must be part of our analysis, and we cannot accept the government's interpretation that § 16 "does not go beyond 'the physical acts that make up the crime.'" *Id.*[9]

The government further argues that *Leocal* limits § 16. *Leocal* states that "§ 16 relates not to the [defendant's] general conduct or to the possibility that harm will result from a [defendant]'s conduct, but to the risk that the use of physical force against another might be *required* in committing a crime. The classic example is burglary." *Leocal*, 543 U.S. at 10 (emphasis added). What it means for the use of force to be "required" is not clear. It must mean something more than being part of "the physical acts that make up the crime" (or burglary would not count) but less than "the possibility that harm will result." In many ways, the Court's statement about the residual clause applies equally to § 16: "The inclusion of burglary . . . suggests that a crime may qualify under [§ 16] even if the physical [force] is remote from the criminal act." *Johnson*, 135 S.Ct. at 2559. The Court goes on to ask, "[b]ut how remote is too remote?" *Id.* For § 16, we have a partial, unsatisfying answer—only so remote as to be "required" by the crime and definitely not so remote as the mere "possibility that harm will result." This provides little guidance.

---

[9] One way to save the government's reading of the statute would be to interpret "in the course of committing the offense" strictly but to read "physical force against the person or property of another" so broadly that it includes picking a lock or opening a door. However, this would not decrease the imprecision of the statute but merely shift it—courts would then confront the question of what meaning "physical force" could possibly have.

No. 15-40041

D.

Lastly, we examine the degree of judicial agreement or disagreement about § 16. We begin by noting that this factor is the least important: Unlike the other factors, judicial disagreement does not *cause* imprecision. If a new law were passed, it would be exactly as imprecise before any courts had disagreed about it as it would be afterwards. Nonetheless, judicial disagreement provides evidence of imprecision, even if it does not create it.

At least at the Supreme Court level, § 16 has occasioned much less disagreement than did the ACCA—§ 16 has been to the Court only once, in *Leocal*, a unanimous decision. The Supreme Court, however, has discretion over its docket and thus the absence of § 16 cases may speak minimally to the inherent imprecision of the statute. The evidence of disagreement from district and circuit courts is more mixed. Gonzalez-Longoria points out multiple cases that disagree about how to interpret § 16. *See* Gonzalez-Longoria Br. at 22–24. The government responds that much of this confusion was cleared up by *Leocal* and more by *Johnson*; of the remaining disagreements, many seem like the sort of "marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls" that do not provide much evidence of imprecision. Gov't Supp. Br. at 7 (quoting *Johnson*, 135 S.Ct. at 2560). Judicial disagreement provides some evidence of imprecision but less evidence than was present in *Johnson*.

V.

Having now examined the *Johnson* factors, we return to the central question: Whether the standard in § 16 is so imprecise that, in combination with the ordinary-case inquiry, § 16 becomes unconstitutionally vague. Section 16's standard is imprecise in all the ways that the ACCA's standard was imprecise; in each case, however, it is arguably at least slightly less imprecise. The ACCA's standard referenced a confusing list of examples; § 16's

15

text references no examples at all. The ACCA's standard encompasses a broad scope, as it considers post-offense conduct; so does § 16's standard, though its scope may be at least slightly limited by *Leocal*. The ACCA had occasioned judicial disagreement; so has § 16, though less. Comparing § 16's standard to the ACCA's standard, all we can say with confidence is that § 16's standard is imprecise, although not quite as imprecise as the ACCA's standard.

Our course forward is clear, however, upon considering that *Johnson* was not a case at the very margins of vagueness and non-vagueness. *Johnson* did not hold that the ACCA's standard represents a minimum bar for precision; that is, *Johnson* did not hold that any standard slightly more precise than the ACCA's is acceptably precise. To the contrary, *Johnson* held that the ACCA's standard was so imprecise that the Court was justified in departing from *stare decisis*. Presumably, therefore, a marginally more precise standard could be problematically vague. Section 16's standard is that marginally more precise—yet still imprecise—standard.

Thus, considering each of the arguments and nuances brought to our attention, we hold that § 16 is unconstitutionally vague because, at bottom, § 16 requires courts both to imagine an ordinary/archetypical case and then to judge that imagined case against imprecise standard. Under *Johnson*, this means that § 16 is unconstitutionally vague, and we so hold.

We therefore VACATE Gonzalez-Longoria's sentence and REMAND to the district court for resentencing in a manner not inconsistent with this opinion.

VACATED and REMANDED.

No. 15-40041

STEPHEN A. HIGGINSON, dissenting:

"*It is the uncertainty that charms one. A mist makes things wonderful.*" Oscar Wilde, *The Picture of Dorian Gray.* Perhaps true for Oscar Wilde, but not in the criminal law, where too much uncertainty denies defendants fair notice and permits arbitrary enforcement of the laws. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983).

As defined by 18 U.S.C. § 16(b), a "crime of violence" includes any offense that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The question presented here is whether this formulation put Gonzalez-Longoria, a felon, on sufficient notice that his prior Texas felony conviction of Assault Causing Bodily Injury with Prior Conviction of Family Violence, in violation of Tex. Penal Code § 22.01, would trigger[1] an enhanced sentence upon conviction of his latest offense, Illegal Reentry after Deportation, in violation of 8 U.S.C. §§ 1326(a) & (b). The similarities—at least at first glance—between 18 U.S.C. § 16(b)'s definition of a "crime of violence" and the definition of an "aggravated felony" provided by the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), which the Supreme Court recently invalidated as unconstitutionally vague, *see Johnson v. United States*, 135 S. Ct. 2551,

---

[1] Section 2L1.2(b)(1)(C) of the United States Sentencing Guidelines provides for an eight-level enhancement to a defendant's base offense level if the defendant was deported following a conviction for an "aggravated felony." The application note to that provision of the guidelines provides that "aggravated felony" has "the meaning given that term in 8 U.S.C. 1101(a)(43)." U.S.S.G. § 2L1.2, cmt. n.3(A). That statutory provision, in turn, defines aggravated felonies to include, among other things, "crime[s] of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year." And that definition points us, at last, to the definition provided by 18 U.S.C. § 16(b), which is the one challenged here.

17

No. 15-40041

2557 (2015), raise the question whether Section 16(b), too, must be struck as unconstitutionally vague.

ACCA defines "violent felonies" to include, among other things, "burglary, arson, or extortion, [offenses] involv[ing] use of explosives, *or [offenses] otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii). The italicized portion is known as the "residual clause." *Johnson*, 135 S. Ct. at 2556. In *Johnson*, the Court highlighted "two features" of the residual clause that "conspire" to make the clause unconstitutionally vague. *Id.* at 2557. First, the Court observed that "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" in a "judicially imagined 'ordinary case.'" *Id.* Second, it "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony" because of ACCA's "imprecise 'serious potential risk' standard." *Id.* at 2558.

The Court's first concern can be read broadly, as a rejection of the categorical approach whenever it is combined with any degree of risk assessment, or narrowly, as a long-considered ill-ease and eventual repudiation in *Johnson* of the categorical approach in the specific context of ACCA's residual clause. The narrower reading is more sound. Even though some mystery inheres in all language, it particularly does when we ask if a prior crime *is*—not *was*—violent. Thus, with the categorical approach, we talk a bit like the Sphynx, asking whether a crime *is* violent, ordinarily (or "archetypically"), but not whether it *was* violent, factually.[2] All agree this first

---

[2] As the Court summarized in *Johnson*, "good reasons" supported the adoption of the categorical approach with respect to ACCA:

> *Taylor* [*v. United States*, 495 U.S. 575 (1990),] explained that the relevant part of the Armed Career Criminal Act "refers to 'a person who ... has three previous convictions' for—not a person who has committed—three

No. 15-40041

level of indeterminacy exists in Section 16(b), just as it was identified in *Johnson* pertaining to the ACCA's residual clause. In *Johnson*, however, the Court perceived vagueness rising to a due process violation not because of the categorical approach alone, but because ACCA's residual clause further mystifies the mystery by requiring courts, in imagining the ordinary case, to further imagine whether the ordinary case would present a "serious *potential risk* of physical *injury*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).

Although district courts applying either enhancement must first, similarly, classify a prior offense into a crime category, "judicially imagining" (often counterfactually) the ordinary case, ACCA's residual clause compounds the vaguery of crime classification with yet another vaguery, asking whether the crime category has the "potential risk" of resulting in "injury." Merriam-Webster's Collegiate Dictionary defines "potential" as "[e]xisting in possibility" or "capable of development into actuality." It defines "risk" as "possibility of loss or injury." Thus, to talk about "potential risk" is to talk about the possibility of a possibility—the chance of a chance. Adding one more dot to connect, ACCA's residual clause requires a guess about the potential risk of (necessarily *future*) injury, *cf. Paroline v. United States*, 134 S. Ct. 1710, 1717, 1721 (2014) ("The full extent of this victim's suffering is hard to grasp."), rather than about the risk that "physical force . . . may be used *in the course* of committing [an] offense." 18 U.S.C. § 16(b) (emphasis added).

---

previous violent felonies or drug offenses." 495 U.S. at 600. This emphasis on convictions indicates that "Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." *Ibid.* *Taylor* also pointed out the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction.
135 S. Ct. at 2562.

19

No. 15-40041

As the *Johnson* majority observed, the ACCA's residual clause's focus on potential injury requires courts to "imagine how the idealized ordinary case of the crime subsequently plays out." *Johnson*, 135 S. Ct. at 2557-58. In contrast, the analysis under 18 U.S.C. § 16(b) is more bounded; it requires courts to apply the well-settled test from *Leocal* and determine whether the offense category "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004). While enhancement under ACCA requires a guess about the *future and potential risk of injury*—indeterminate for the myriad reasons described in *Johnson*—enhancement under Section 16(b) requires a straightforward assessment about the risk of use of force during commission of crimes. *Compare Paroline*, 134 S. Ct. at 1717-1722 (discussing proximate cause problems inherent in injury inquiry), *with United States v. Ramos*, 537 F.3d 439, 465 (5th Cir. 2008) (assessment about the use of force as applied to victims who resort to self-defense), *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (assessment about the use of force as applied to police officers who resort to force), 18 U.S.C. § 111 (use of force element of offense), *and* 18 U.S.C. § 1951(a) (use or threat of physical violence element of offense).[3]

The Court's second concern—uncertainty about *how much risk* it takes for a crime to qualify—is also less pressing in the context of 18 U.S.C. § 16(b) for another textual reason. As the Court highlighted in *Johnson*, ACCA's residual clause "force[d] courts to interpret 'serious potential risk' in light of . . .

---

[3] Classifying crimes, as well as assessing risk of force and violence, is built into the criminal justice system. For example, 18 U.S.C. § 924(c), which provides for enhanced penalties for the use of a firearm in connection with a crime, contains the same definition of "crime of violence" as 18 U.S.C. § 16(b). *See* 18 U.S.C. § 924(c)(3)(B). Likewise, the Bail Reform Act contemplates presumptive imprisonment when a defendant is even charged with a "crime of violence." *See* 18 U.S.C. § 3142(f)(1)(A), (g)(1).

20

No. 15-40041

four enumerated crimes," the rhyme or reason of which no one could make out. *Johnson*, 135 S. Ct. at 2558 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The Court went on to note that, unlike ACCA, most similar laws did not "link[] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. In 18 U.S.C. § 16(b), the amount of risk required—"substantial risk"—is not linked to any examples.

These two statutory distinctions mean that the concerns raised by the Court in *Johnson* with respect to ACCA's residual clause are less concerning in the context of 18 U.S.C. § 16(b). Thus, with *Leocal* as precedent, we should not get ahead of the Supreme Court, invalidating duly enacted and longstanding legislation by implication. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) (a "strong presumptive validity . . . attaches to an Act of Congress" and, when possible, courts should seek an interpretation that supports the constitutionality of legislation and avoid, when possible, invalidating a statute as vague). This is especially true because the Court in *Johnson* specifically identified the precedent it was overruling, *see Johnson*, 135 S. Ct. at 2563, yet intimated nothing negative about its earlier, unanimous *Leocal* decision. *See Dimaya v. Lynch*, No. 11-71307, 2015 WL 6123546, at *13-14 (9th Cir. Oct. 19, 2015) (Callahan, J., dissenting) ("The Supreme Court will be surprised to learn that its opinion in *Johnson* rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention *Leocal* and specifically concluded with the statement limiting its potential scope.").

Gonzalez-Longoria's most recent crime is Illegal Reentry after Deportation, and his relevant earlier crime was Assault Causing Bodily Injury with Prior Conviction of Family Violence. Due process requires that he be able to apprehend that he could face enhanced punishment because his prior offense

No. 15-40041

naturally involves physical force. That is predictively straightforward and sensible, telling lawbreakers they face longer prison terms because society condemns physical force in criminality more, even as it also commiserates with potential injury and pain and suffering. Section 16(b)'s task, both as to notice (to felons) and in application (by judges), asks whether a perpetrator's commission of a crime involves a substantial risk of physical force, which is predictively more sound than imputing clairvoyance as to a victim's potential risk of injury, which the Court, after years of consideration, held to be unknowable in *Johnson*. Again, the Supreme Court invalidated ACCA's residual clause only after "[n]ine years' experience trying to derive meaning from the . . . clause," "repeated attempts and repeated failures to craft a principled and objective standard," and years of "pervasive disagreement" in the lower courts about how to conduct the categorical approach inquiry with respect to the clause, *Johnson*, 135 S. Ct. at 2558-60—a record of unworkability not present here.

In summary, we should not strike Congressional law, 18 U.S.C. § 16(b), because, first, the concerns raised by the Court in *Johnson* with respect to ACCA's residual clause are less implicated by Section 16(b); second, because *Leocal* is precedent only the Supreme Court should adjust; and, third, because Section 16(b) does not involve the interplay of interpretative method and statutory text causing the double indeterminacy that was the due process muddle rejected in *Johnson*. Gonzalez-Longoria was on sufficient notice that his prior crime of Assault Causing Bodily Injury with Prior Conviction of Family Violence is one society condemns as violent because it involves a substantial risk that, in the course of its commission, force will be used against another. I dissent.

22