# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392
www.federaldefendersny.org

David E. Patton
*Executive Director*
*and Attorney-in-Chief*

*Appeals Bureau*
Barry D. Leiwant
*Attorney-in-Charge*

May 25, 2016

**BY ECF**

Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
   for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Centre Street
New York, New York 10007

Re:  **United States v. Elvin Hill**, Docket No. 14-3872-cr
     **Citation of Supplemental Authority under Rule 28(j)**

Dear Ms. O'Hagan Wolfe:

I represent Elvin Hill on this appeal, which was argued before Judges Jacobs, Livingston, and Droney on November 12, 2015. Pursuant to Fed. R. App. P. 28(j), I submit this letter to bring to the Court's attention two decisions rendered recently by the Fourth and Ninth Circuits relevant to an issue on appeal -- whether the Hobbs Act robbery necessary to Mr. Hill's § 924(j) conviction qualifies as a "crime of violence" under the force clause of § 924(c)(3)(A). See Supp. Br. 20-32; Supp. Reply Br. 17-22. Among other things, Mr. Hill argues that Hobbs Act robbery does not qualify as a crime of violence because it can be committed using a degree of force less than the "violent force" required under Johnson v. United States, 559 U.S. 133, 140 (2010) (emphasis in original). See, e.g., Supp. Reply Br. at 20-22 (discussing United States v. Rodriguez, 925 F.2d 1049 (7th Cir. 1991)).

The first decision (both are enclosed) is United States v. Gonzalez-Longoria, ___ F.3d ___, 2016 WL 2893881 (4th Cir. May 18, 2016). There, the Fourth Circuit held that North Carolina robbery does not require the use of "violent force" -- and thus does not categorically qualify as a violent felony or crime of violence under the force clause -- because it can be committed by

Honorable Catherine O'Hagan Wolfe          May 25, 2016
Clerk of the Court                         Page 2
United States Court of Appeals
   for the Second Circuit

    Re:  **United States v. Elvin Hill**, Docket No. 14-3872-cr
          **Citation of Supplemental Authority under Rule 28(j)**

"a defendant's act of pushing the victim's hand off of a carton
of cigarettes" or by "a defendant push[ing] the shoulder of an
electronics store clerk, causing her to fall onto shelves." ___
F.3d at ___, 2016 WL 2893881 at *7. Such force, though
"'sufficient to compel the victim to part with his property,'"
id. (quoting state's robbery definition), "does not necessarily
include the use, attempted use, or threatened use of 'force
capable of causing physical pain or injury to another person.'"
Id. (quoting Johnson, 559 U.S. at 140).

    The Fourth Circuit's decision echoes a recent decision by
the Ninth Circuit, which held that Massachusetts robbery is not a
"violent felony" because the force it requires is "insufficient
under Johnson." United States v. Parnell, ___ F.3d ___, 2016 WL
1633167 at *2 (9th Cir. April 12, 2016).

                 Respectfully submitted,

                 /s/

                 **YUANCHUNG LEE**
                 Assistant Federal Defender
                 Tel.: 212-418-8742
                 Email: yuanchung_lee@fd.org

YCL/jl
Enclosure

cc:  Daniel Silver, Esq.
     Assistant United States Attorney
     Southern District of New York
     (BY ECF)

# *Exhibit A*

U.S. v. Gardner, --- F.3d ---- (2016)

2016 WL 2893881

2016 WL 2893881
Only the Westlaw citation is currently available.
United States Court of Appeals,
Fourth Circuit.

UNITED STATES of America, Plaintiff–Appellee,
v.
Ezekiel Donja GARDNER, Defendant–Appellant.

No. 14–4533.
|
Argued March 24, 2016.
|
Decided May 18, 2016.

**Synopsis**
**Background:** Following denial of his motion to suppress
evidence, 2013 WL 4017883, defendant was convicted in the
United States District Court for the Eastern District of North
Carolina, James C. Fox, Senior District Judge, of possession
of a firearm by a felon. The District Court, 2013 WL 6859280,
denied defendant's motion for new trial, and defendant was
sentenced as an armed career criminal to a term of 262
months' imprisonment. Defendant appealed.

**Holdings:** The Court of Appeals, Barbara Milano Keenan,
Circuit Judge, held that:

[1] known informant's tip, which was partially corroborated
by officers, provided reasonable suspicion justifying stop of
defendant's car;

[2] defendant's interaction with officers during stop did not
evolve into a de facto arrest, and thus *Miranda* warnings were
not required;

[3] probable cause justified officers' search of defendant's
vehicle; and

[4] defendant's prior conviction for North Carolina common
law robbery did not qualify as "violent felony" under Armed
Career Criminal Act (ACCA).

Affirmed in part, vacated in part, and remanded.

West Headnotes (24)

[1] **Criminal Law**
⚬ Review De Novo

**Criminal Law**
⚬ Evidence Wrongfully Obtained

Court of Appeals reviews a district court's factual
findings in deciding a motion to suppress for
clear error, and the court's legal conclusions de
novo.

Cases that cite this headnote

[2] **Criminal Law**
⚬ Reception of Evidence

In reviewing district court's denial of a motion
to suppress, the Court of Appeals construes
the evidence in the light most favorable to the
government, the prevailing party in the district
court.

Cases that cite this headnote

[3] **Arrest**
⚬ Reasonableness; Reason or Founded
Suspicion, Etc

An officer must have reasonable suspicion of
criminal activity to perform an investigative stop
under *Terry*. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[4] **Arrest**
⚬ Reasonableness; Reason or Founded
Suspicion, Etc

Under reasonable suspicion standard for an
investigatory stop, the officer must have a
particularized and objective basis for suspecting
the particular person stopped of criminal activity.
U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[5] **Arrest**

U.S. v. Gardner, --- F.3d ---- (2016)
2016 WL 2893881

Reasonableness; Reason or Founded Suspicion, Etc

Reasonable suspicion standard for an investigatory stop is less demanding than the probable cause standard, and can be based on information that is less reliable than that required to show probable cause. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[6] **Arrest**
Reasonableness; Reason or Founded Suspicion, Etc

When police obtain information corroborating a tip from a known informant, this circumstance adds significant support for a finding of reasonable suspicion justifying an investigatory stop. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[7] **Arrest**
Particular Cases

Tip provided by a known informant that a certain convicted felon was driving a white car of a particular model, and that the car could be found at a particular location with a gun in the felon's possession, supported reasonable suspicion for stop of defendant's car, though officers did not confirm that defendant was a convicted felon before initiating the stop, where some of information provided by informant was corroborated, such as the presence of the identified car at the described location and verification that defendant was owner of that vehicle. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[8] **Arrest**
Reasonableness; Reason or Founded Suspicion, Etc

Every detail provided by a tipster need not be independently verified to support a finding of reasonable suspicion justifying an investigatory stop. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[9] **Criminal Law**
Particular Cases or Issues

Defendant's interaction with officers during stop of defendant's vehicle did not evolve into a de facto arrest, and thus *Miranda* warnings were not required, although officers asked defendant to step out of vehicle and detained him at the rear of the vehicle; officers asked defendant questions directly related to their reasonable suspicion that he had a firearm, which was basis for the stop, and fact that defendant did not feel free to leave did not convert this brief period of questioning into the functional equivalent of custodial interrogation. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[10] **Searches and Seizures**
Probable or Reasonable Cause

Following stop of defendant's vehicle based on reasonable suspicion that defendant was convicted felon in possession of firearm, defendant's acknowledgement of gun in his car, together with defendant's furtive behavior, and informant's tip that convicted felon possessed firearm in the car, provided officers probable cause to search defendant's car. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

[11] **Searches and Seizures**
Vehicle Searches

During stop of defendant's vehicle based on reasonable suspicion that defendant was convicted felon in possession of firearm, officers were justified in searching defendant's vehicle based solely on their reasonable belief that defendant was dangerous and might gain immediate control of a firearm in passenger compartment of his car, though defendant was detained at rear of vehicle; known informant had provided tip that indicated a convicted felon possessed firearm in the identified vehicle, and

**U.S. v. Gardner, --- F.3d ---- (2016)**

2016 WL 2893881

officer observed defendant reach down below his seat and nervously look in the direction of the car floor. U.S.C.A. Const.Amend. 4.

Cases that cite this headnote

**[12]    Criminal Law**
  <span>⟜</span> Review De Novo

Court of Appeals reviews de novo the question whether defendant's prior state convictions qualified as predicate felony convictions for purposes of a federal sentence enhancement for being an armed career criminal. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

**[13]    Sentencing and Punishment**
  <span>⟜</span> Particular Offenses

Defendant's North Carolina conviction for common law robbery did not categorically match the crime of extortion, which was an enumerated felony in statute defining "violent felony" for purposes of sentencing as armed career criminal; North Carolina common law robbery involved the non-consensual taking of money or property from another, while the generic crime of extortion was defined as obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats. 18 U.S.C.A. §§ 924(e)(2)(B)(ii), 1951(b)(2).

Cases that cite this headnote

**[14]    Sentencing and Punishment**
  <span>⟜</span> Violent or Nonviolent Character of Offense

Typically, when determining whether a previous conviction qualifies as a "violent felony" under the Armed Career Criminal Act (ACCA), court applies the "categorical approach," considering only the conviction itself and the elements of the offense, not the particular facts of the crime. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

**[15]    Sentencing and Punishment**
  <span>⟜</span> Violent or Nonviolent Character of Offense

Only in a narrow range of cases, when a crime is divisible, does the court employ the "modified categorical approach," in which a court may consider a limited set of documents to determine the basis of a defendant's conviction, for purposes of determining whether the conviction qualifies as a "violent felony" supporting enhanced sentence as an armed career criminal. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

**[16]    Sentencing and Punishment**
  <span>⟜</span> Violent or Nonviolent Character of Offense

A crime is divisible, for purposes of applying modified categorical approach for determining whether the crime constitutes a "violent felony" supporting sentence as armed career criminal, when it includes multiple alternative elements that create different versions of the crime, at least one of which would qualify under the federal definition and at least one of which would not. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

**[17]    Sentencing and Punishment**
  <span>⟜</span> Violent or Nonviolent Character of Offense

A crime is not divisible, for purposes of applying modified categorical approach for determining whether the crime constitutes a "violent felony" supporting sentence as armed career criminal, simply because it may be accomplished through alternative means, but only when alternative elements create distinct crimes; alternative elements of a crime, as opposed to alternative means of committing a crime, are factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

**[18]    Sentencing and Punishment**
  <span>⟜</span> Violent or Nonviolent Character of Offense

When determining the divisibility of a crime, for purposes of applying modified categorical approach for determining whether the crime

U.S. v. Gardner, --- F.3d ---- (2016)
2016 WL 2893881

constitutes a "violent felony" supporting sentence as armed career criminal, the court may consider how courts generally instruct juries with respect to that offense. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

[19] **Sentencing and Punishment**
◄— Particular Offenses

North Carolina common law robbery was an indivisible offense, and thus categorical approach, rather than modified categorical approach, applied to analysis of whether the offense was a "violent felony" supporting sentence as an armed career criminal, meaning court could consider only the conviction itself and the elements of the offense, but not the particular facts of the crime; North Carolina common law robbery could be committed by the alternate means of violence or fear that did not constitute different elements of distinct crimes. 18 U.S.C.A. § 924(e)(2)(B).

Cases that cite this headnote

[20] **Sentencing and Punishment**
◄— Particular Offenses

Minimal conduct necessary to sustain a conviction for North Carolina common law robbery did not necessarily include the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person, as required by the force clause of the Armed Career Criminal Act (ACCA), and thus the offense did not qualify categorically as a "violent felony" under ACCA; North Carolina courts had concluded that even minimal contact could be sufficient to sustain a robbery conviction if the victim forfeited his or her property in response. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

[21] **Sentencing and Punishment**
◄— Violent or Nonviolent Character of Offense

"Physical force," for purposes of the force clause in statutory definition of "violent felony" under Armed Career Criminal Act (ACCA), does not include the slightest offensive touching that might sustain a misdemeanor battery conviction under some state laws; instead, "physical force" within the context of the ACCA means violent force, which is force capable of causing physical pain or injury to another person. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

[22] **Sentencing and Punishment**
◄— Violent or Nonviolent Character of Offense

In determining whether state crime necessarily requires the use, attempted use, or threatened use of "physical force," within the meaning of the Armed Career Criminal Act (ACCA), so as to constitute a "violent felony" under the ACCA, the court focuses on the minimum conduct necessary for a violation under state law; such minimum culpable conduct includes any conduct to which there is a realistic probability, not a theoretical possibility, that a state would apply the law. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

[23] **Sentencing and Punishment**
◄— Violent or Nonviolent Character of Offense

When considering whether a North Carolina common law crime necessarily required the use, attempted use, or threatened use of "physical force," within the meaning of the Armed Career Criminal Act (ACCA), so as to constitute a "violent felony" under the ACCA, the Court of Appeals' analysis of minimum culpable conduct was informed by decisions of the Supreme Court of North Carolina, while decisions of North Carolina's intermediate appellate court constituted the next best indicia of what state law was. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

[24] **Criminal Law**
◄— States

U.S. v. Gardner, --- F.3d ---- (2016)

2016 WL 2893881

A state is entitled to define its crimes as it sees fit.

Cases that cite this headnote

**West Codenotes**

**Recognized as Unconstitutional**
18 U.S.C.A. § 924(e)(2)(B)(ii)

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville. James C. Fox, Senior District Judge. (4:11–cr–00065–F–1).

**Attorneys and Law Firms**

**ARGUED:** William Michael Dowling, Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Raleigh, North Carolina, for Appellant. Phillip Anthony Rubin, Office of the United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Thomas G. Walker, United States Attorney, Jennifer P. May–Parker, Assistant United States Attorney, Office of the United States Attorney, Raleigh, North Carolina, for Appellee.

Before MOTZ, GREGORY, and KEENAN, Circuit Judges.

**Opinion**

Affirmed in part, vacated in part, and remanded by published opinion. Judge KEENAN wrote the opinion, in which Judge MOTZ and Judge GREGORY joined.

BARBARA MILANO KEENAN, Circuit Judge:

**\*1** Ezekiel Gardner was tried by a jury and found guilty of possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924. The conviction was based on police officers' recovery of a handgun from Gardner's vehicle during a traffic stop, after receiving a tip from a confidential informant that Gardner, a felon, possessed a firearm. At sentencing, the district court determined that Gardner was an armed career criminal based on his three prior convictions for felony common law robbery in North Carolina (North Carolina common law robbery), and sentenced him to serve a term of 262 months' imprisonment.

On appeal, Gardner challenges: (1) the district court's denial of his motion to suppress the search of his vehicle and certain statements he made to the police; (2) the court's denial of his motion for a new trial; and (3) the court's determination at sentencing that he is an armed career criminal. Upon our review, we affirm the district court's denial of Gardner's motion to suppress and his motion for a new trial. However, because we conclude that North Carolina common law robbery is not categorically a violent felony, we hold that the district court erred in sentencing Gardner as an armed career criminal. Accordingly, we vacate Gardner's sentence and remand for resentencing.

I.

A.

The government's evidence regarding the traffic stop showed that on January 13, 2011, Detective Kenneth Adams of the police department in Farmville, North Carolina, received a telephone call from a reliable, confidential informant. The woman stated that Gardner was a convicted felon who possessed a firearm, that he was driving a white Lincoln Town Car, and that he presently was located at a particular house on Thorne Street in Farmville. Detective Adams already had a working relationship with this informant, who had completed at least five controlled drug purchases for a regional drug enforcement task force, and consistently had provided accurate information.

Based on the informant's telephone call, Detective Adams, Lieutenant Paul McLawhorn, and Chief Donnie Greene proceeded in a squad car to the identified house on Thorne Street and saw a white Lincoln Town Car parked near the house. The officers drove around the block, taking time to confirm that Gardner was the registered owner of the vehicle. When the officers approached the house again, they saw that Gardner had entered the Lincoln and was driving toward a nearby intersection. The officers observed Gardner make a three-point turn in the intersection and begin driving in the opposite direction. The officers turned to follow Gardner's vehicle and initiated a traffic stop.

Detective Adams observed that "as soon as the blue lights come on, I saw [Gardner] dip down in the car, and I saw his right shoulder disappear as if he was—he was either reaching for something or putting something under the seat." After Gardner stopped his car, Adams and McLawhorn approached the car. Adams held his gun at his side as he walked toward the driver-side door. Chief Greene remained in the squad car to request assistance.

**\*2** Adams confirmed Gardner's identity by examining his driver's license, and asked Gardner to step out of the vehicle. Adams observed that Gardner appeared nervous and kept looking in the direction of the vehicle's floor. When Adams asked Gardner if he had any weapons on his person, Gardner replied that he did not. Upon conducting a patdown search of Gardner, Adams did not find a weapon. Adams ordered Gardner to walk to the rear of the vehicle, but did not place handcuffs on him at this time.

Adams informed Gardner that Adams had received information that Gardner had a firearm in his possession. When Adams asked Gardner if he had "anything illegal in his car," Gardner responded by hanging his head. Continuing, Adams asked, "What is it that is illegal in your car[?]." Gardner replied, "I have a gun." When asked if he was allowed to possess a firearm, Gardner stated that he was not and that he was a convicted felon.

McLawhorn searched the passenger compartment of the car, and found a handgun underneath the driver's seat. At that point, Gardner was placed in handcuffs and was taken to the police station.

After arriving at the station, Adams and Detective Rose Edmonds advised Gardner of his *Miranda* rights, which Gardner waived by signing a written waiver form. Gardner told the officers that he had purchased the gun from "Cobe," that Gardner later loaned the gun to "Pudgy," and that Gardner had received the firearm back from "Pudgy" that day.

### B.

Before trial, Gardner moved to suppress both the evidence recovered from his car during the stop and the statements he made at the police station following his arrest. The district court denied the motion, concluding that the search was justified by the "automobile exception" to the warrant requirement of the Fourth Amendment, and that, therefore, any post-arrest statements were lawfully obtained.

At trial, Gardner renewed his suppression motion. In addition to restating his earlier arguments, he also sought suppression of the statements he made to the police during the traffic stop on the ground that he was not advised of his *Miranda* rights. The district court again denied Gardner's motion, as well as his motion for judgment of acquittal. The jury found Gardner guilty of the offense charged, and the district court later denied Gardner's motion for a new trial.

At sentencing, Gardner challenged his classification as an armed career criminal. He argued that his predicate convictions for North Carolina common law robbery did not qualify categorically as violent felonies. The district court disagreed, concluding that the convictions qualified as violent felonies under the residual clause of the Armed Career Criminal Act (the ACCA). *See* 18 U.S.C. § 924(e)(2)(B). The court sentenced Gardner to serve a term of 262 months' imprisonment, which sentence fell at the bottom of the Sentencing Guidelines range. This appeal followed.

### II.

Gardner raises several issues on appeal, but primarily challenges the legality of the search of his vehicle and his classification as an armed career criminal. We first address the legality of the search.

### A.

**\*3** Gardner argues that the police officers lacked reasonable suspicion to initiate a stop of his vehicle. He contends that the confidential informant was not a reliable source of information, and that she did not provide sufficient detail about Gardner such as predictive information regarding his criminal behavior. Alternatively, Gardner asserts that even if the initial stop was lawful, the stop evolved into an unlawful arrest, and he should have been given *Miranda* warnings before any questioning occurred. Thus, Gardner challenges as inadmissible the statements he made after the stop and also seeks to suppress the gun uncovered from his vehicle. We disagree with Gardner's arguments.

**[1]** **[2]** We review a district court's factual findings in deciding a motion to suppress for clear error, and the court's legal conclusions de novo. *United States v. Black,* 707 F.3d 531, 537 (4th Cir.2013). We construe the evidence in the light most favorable to the government, the prevailing party in the district court. *United States v. Farrior,* 535 F.3d 210, 217 (4th Cir.2008), *abrogated on other grounds by United States v. Williams,* 808 F.3d 238 (4th Cir.2015).

**[3]** **[4]** **[5]** An officer must have reasonable suspicion of criminal activity to perform an investigative stop authorized

U.S. v. Gardner, --- F.3d ---- (2016)
2016 WL 2893881

by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *United States v. Branch,* 537 F.3d 328, 336 (4th Cir.2008). Under this standard, the officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California,* — U.S. —, —, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014) (citation omitted). This standard is less demanding than the probable cause standard, and can be based on "information that is less reliable than that required to show probable cause." *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

[6]  We have stated that when an investigative stop is based on unverified information provided by a known informant, a tip of this nature "may alone justify a reasonable suspicion of criminal activity." *United States v. Singh,* 363 F.3d 347, 355 (4th Cir.2004). And when police obtain information corroborating such a tip, this circumstance adds significant support for a finding of reasonable suspicion. *See generally id.*; *United States v. Harris,* 39 F.3d 1262 (4th Cir.1994).

In *Singh,* a confidential informant had reported that a tractor-trailer, bearing Canadian license plates and being driven by two men of Indian descent, contained a large amount of marijuana and had become disabled on a highway in Greensboro, North Carolina. 363 F.3d at 350. After police initially could not find the truck at the described location, the informant provided more precise information. *Id.* When officers arrived at the specified location, they observed the tractor-trailer being towed. *Id.* at 351. The officers halted the towing operation, and ultimately found marijuana in the disabled tractor-trailer. *Id.* at 351–52. The district court granted the defendants' motion to suppress, holding that the seizure of the defendants was not supported by a reasonable suspicion of criminal activity. *Id.* at 353.

*4  In reviewing this decision on appeal, we observed that before stopping the tractor-trailer, the officers had verified its location, the source of its license plates, and the description of the vehicle's occupants. *Id.* at 355. Based on this record, we concluded that the district court erred in holding that the officers lacked reasonable suspicion to execute the vehicle stop. *Id.* at 355–56.

[7]  [8]  The present case is governed by our decision in *Singh.* As in *Singh,* the officers here received a tip from a known informant that a certain convicted felon driving a white Lincoln Town Car could be found at a particular location with a gun in his possession. This tip alone may

have supported a finding of reasonable suspicion.[1] *See id.* at 355. But the officers in the present case also had corroborated some of the information provided by the informant, namely, the presence of a white Lincoln Town Car at the described location and verification that Gardner was the owner of that vehicle. While the officers did not confirm that Gardner was a convicted felon before initiating the stop, every detail provided by a tipster need not be independently verified to support a finding of reasonable suspicion. *See White,* 496 U.S. at 331–32. Accordingly, we hold that the district court did not err in concluding that the traffic stop was supported by reasonable suspicion.[2]

[9]  We also disagree with Gardner's alternative argument that the encounter matured into a de facto arrest, requiring that rights be given pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when the officers detained Gardner at the rear of his vehicle. The Supreme Court has held that an individual is not "in custody" for purposes of *Miranda* when an officer detains him to ask "a moderate number of questions ... to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty,* 468 U.S. 420, 439–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In the present case, the officers asked Gardner questions directly related to their reasonable suspicion that he had a firearm in his possession. The fact that Gardner did not feel free to leave did not convert this brief period of questioning into the functional equivalent of a "stationhouse interrogation" that would require *Miranda* warnings. *Id.* at 438–39. We therefore conclude that because Gardner's interaction with the police during the traffic stop did not evolve into a de facto arrest, his statement concerning the gun was not obtained in violation of his Fifth Amendment rights.

[10]  [11]  Gardner's acknowledgement of the gun, together with the informant's tip and Gardner's furtive behavior, provided the officers probable cause to search Gardner's car. We therefore conclude that the officers lawfully searched Gardner's automobile.[3] *See United States v. Kelly,* 592 F.3d 586, 589–90 (4th Cir.2010). Accordingly, we hold that the district court did not err in denying Gardner's motion to suppress his statements and the weapon found in his car.[4]

B.

**\*5** Gardner also challenges his designation as an armed career criminal under the ACCA. He argues that his three predicate convictions for North Carolina common law robbery do not qualify as "violent felonies" because: (1) the definition of a violent felony under the ACCA's "residual clause" is unconstitutional; and (2) his robbery convictions do not qualify as violent felonies under the "force clause" of the ACCA. The government counters that Gardner's convictions categorically are violent felonies under the force clause because North Carolina common law robbery, which requires the taking of property by means of "violence" or "fear," necessarily involves the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We disagree with the government's argument.

1.

**[12]** **[13]** Gardner preserved this issue in the district court and, therefore, we review de novo the question whether his prior state convictions qualified as "predicate felony conviction[s] for purposes of a federal sentence enhancement." *United States v. Valdovinos,* 760 F.3d 322, 325 (4th Cir.2014). A "violent felony" is defined under the ACCA as any crime "punishable by imprisonment for a term exceeding one year" that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the force clause), or "is burglary, arson, or extortion, [or] involves use of explosives" (the enumerated language), or "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause). 18 U.S.C. § 924(e)(2)(B)(i), (ii). Because the Supreme Court recently held in *Johnson v. United States,* ——U.S. ——, ——, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015), that the language of the residual clause is unconstitutional, North Carolina common law robbery can qualify as a "violent felony" only if it matches the definition of a violent felony under the force clause.[5]

**[14]** North Carolina common law robbery is the "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *North Carolina v. Smith,* 305 N.C. 691, 292 S.E.2d 264, 270 (N.C.1982). Typically, when determining whether a previous conviction qualifies as a violent felony under the ACCA, we apply the "categorical approach," considering only the conviction itself and the elements of the offense, not

the particular facts of the crime. *United States v. Baxter,* 642 F.3d 475, 476 (4th Cir.2011).

**[15]** **[16]** Only in a "narrow range of cases," when a crime is divisible, do we employ the "modified categorical approach," in which a court may consider a limited set of documents to determine the basis of a defendant's conviction. *See Descamps v. United States,* —— U.S. ——, ——— – ———, 133 S.Ct. 2276, 2283–85, 186 L.Ed.2d 438 (2013). A crime is divisible when it includes multiple "alternative elements" that create different versions of the crime, at least one of which would qualify under the federal definition and at least one of which would not. *See id.*; *Omargharib v. Holder,* 775 F.3d 192, 197–98 (4th Cir.2014).

**\*6** **[17]** **[18]** A crime is not divisible simply because it may be accomplished through alternative means, but only when alternative elements create distinct crimes. *Omargharib,* 775 F.3d at 198. Alternative elements of a crime, as opposed to alternative means of committing a crime, are "factual circumstances of the offense that the jury must find unanimously and beyond a reasonable doubt." *Id.* (citation and internal quotations omitted). Therefore, when determining the divisibility of a crime, we may consider how "courts generally instruct juries with respect to that offense." *See United States v. Royal,* 731 F.3d 333, 341 (4th Cir.2013).

**[19]** Under North Carolina's pattern jury instructions, the final element of common law robbery requires "that the taking was by violence or by putting the person in fear." N.C. Pattern Instructions—Crim. 217.10. Thus, the jury need not agree unanimously that the felonious taking was committed by the use of violence or by instilling fear, only that one of the two means was employed. Accordingly, North Carolina common law robbery may be committed by the alternate *means* of violence or fear that do not constitute different elements of distinct crimes. The crime, therefore, is an indivisible offense, in which the modified categorical approach "has no role to play." *Descamps,* 133 S.Ct. at 2285.

2.

**[20]** **[21]** We turn now to apply the categorical approach. To qualify as a categorical match with the force clause, North Carolina common law robbery necessarily must have as an element the "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "Physical force" for purposes of the force clause does not

U.S. v. Gardner, --- F.3d ---- (2016)

2016 WL 2893881

include the "slightest offensive touching" that might sustain a misdemeanor battery conviction under some state laws. *See Johnson v. United States,* 559 U.S. 133, 139, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). Instead, "physical force" within the context of the ACCA means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140 (emphasis in original).

**[22]   [23]**   In determining whether North Carolina common law robbery necessarily requires the use, attempted use, or threatened use of "physical force," within the meaning of the ACCA, we focus on "the minimum conduct necessary for a violation" under state law. *Castillo v. Holder,* 776 F.3d 262, 267 (4th Cir.2015). Such minimum culpable conduct includes any conduct to which there is a "realistic probability, not a theoretical possibility," that a state would apply the law. *Moncrieffe v. Holder,* —— U.S. ——, —— – ——, 133 S.Ct. 1678, 1684–85, 185 L.Ed.2d 727 (2013) (citation omitted). When considering a North Carolina common law crime, our analysis of minimum culpable conduct is informed by decisions of the Supreme Court of North Carolina, while decisions of North Carolina's intermediate appellate court "constitute the next best indicia of what state law is." *See Castillo,* 776 F.3d at 268 & n. 3 (citation omitted).

**\*7**   As we noted above, North Carolina common law robbery may be committed by the alternative means of violence or fear. Accordingly, if either means of committing this crime does not require the "use, attempted use, or threatened use" of "physical force," then North Carolina common law robbery does not categorically match the force clause of the ACCA. *See Omargharib,* 775 F.3d at 197. We first address North Carolina common law robbery by means of "violence."

With respect to the commission of robbery by means of "violence," the Supreme Court of North Carolina has explained: "Although actual force implies personal violence, the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property." *State v. Sawyer,* 224 N.C. 61, 29 S.E.2d 34, 37 (N.C.1944). This definition, therefore, suggests that even *de minimis* contact can constitute the "violence" necessary for a common law robbery conviction under North Carolina law.

Later decisions by North Carolina's intermediate appellate court support the conclusion that even minimal contact may be sufficient to sustain a robbery conviction if the victim forfeits his or her property in response. For example, the North Carolina Court of Appeals has held that a defendant's

act of pushing the victim's hand off of a carton of cigarettes was sufficient "actual force" to uphold a common law robbery conviction. *See State v. Chance,* 662 S.E.2d 405, at \*3–4 (N.C.Ct.App. June 17, 2008) (unpublished). Also, the Court of Appeals upheld a conviction when a defendant pushed the shoulder of an electronics store clerk, causing her to fall onto shelves while the defendant took possession of a television. *State v. Eldridge,* 677 S.E.2d 14 (N.C.Ct.App. June 2, 2009) (unpublished).

Based on these decisions from North Carolina's appellate courts, we conclude that the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person," as required by the force clause of the ACCA. *Johnson,* 559 U.S. at 140. Therefore, we hold that North Carolina common law robbery does not qualify categorically as a "violent felony" under the ACCA.[6]

Our analysis is not altered by decisions of this Court interpreting the crime of robbery in other jurisdictions. *See United States v. Presley,* 52 F.3d 64, 69 (4th Cir.1995) (concluding that Virginia common law robbery, which requires the taking of property "by violence or intimidation," is a violent felony under the force clause); *United States v. Wilson,* 951 F.2d 586, 588 (4th Cir.1991) (explaining that Maryland common law robbery is a "crime of violence" under the force clause of the career offender guidelines). The decisions in *Presley* and *Wilson* do not inform our decision today, because they pre-date the Supreme Court's decision in *Moncrieffe,* and do not evaluate the minimum conduct to which there is a realistic probability that a state would apply the law.

**\*8   [24]**   Moreover, the definitions of common law robbery in Maryland and Virginia have little or no relevance to North Carolina appellate courts' interpretation of North Carolina law. As this Court recently has explained, "a State is entitled to define its crimes as it sees fit."[7] *United States v. McNeal,* —— F.3d ——, 2016 WL 1178823, at \*10 (4th Cir. Mar.28, 2016). And North Carolina has defined common law robbery to encompass cases involving the use of minimal force, which does not satisfy the condition of "violent force" required by federal law for application of the ACCA enhancement. Accordingly, we hold that the district court erred in applying the ACCA enhancement based on Gardner's convictions for North Carolina common law robbery, and we vacate Gardner's sentence and remand the case for resentencing.[8]

III.

For these reasons, we affirm Gardner's conviction. We vacate Gardner's sentence based on the district court's erroneous application of the ACCA enhancement and remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

**All Citations**

--- F.3d ----, 2016 WL 2893881

---

Footnotes

1     We find no merit in Gardner's argument that the informant, his former girlfriend, was unreliable given their prior relationship and the fact that police had paid her for providing the tip in question.

2     We are not persuaded by Gardner's reliance on the Fifth Circuit's decision in *United States v. Roch,* 5 F.3d 894 (5th Cir.1993). In the present case, the informant provided many of the details that were lacking in *Roch,* such as the make and model of the car, as well as the suspect's full name. Moreover, the Fifth Circuit relied heavily in its analysis on cases regarding the need to corroborate information obtained from *anonymous* informants. *See id.* at 898–99 (citing *White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301). In contrast, the officers here relied on information supplied by a known, reliable informant, which both this Court and the Supreme Court have acknowledged may be sufficient, even absent any corroboration, to support a finding of reasonable suspicion. *See Singh,* 363 F.3d at 355; *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

3     The officers also could have searched Gardner's automobile lawfully based solely on their reasonable belief that Gardner was dangerous and might "gain immediate control" of a firearm in the passenger compartment of his car. *See Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). The informant's tip, along with Adams's observation that Gardner reached down below his seat and nervously looked in the direction of the car floor, independently justified the search of the car. Under this analysis, the validity of the search is not affected by Gardner's detention at the rear of the vehicle during the traffic stop. *See id.* at 1051–52.

4     We likewise affirm the district court's denial of Gardner's motion for a new trial, which was based on the same argument that the district court improperly admitted illegally obtained evidence.

5     Contrary to the government's suggestion, North Carolina common law robbery does not categorically match the crime of extortion listed in the enumerated language of 18 U.S.C. § 924(e)(2)(B)(ii). North Carolina common law robbery involves the *non-consensual* taking of money or property from another, while the generic crime of extortion is defined as "obtaining something of value from another *with his consent* induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.,* 537 U.S. 393, 409, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003) (citation omitted); *see also* 18 U.S.C. § 1951(b)(2) (defining Hobbs Act extortion). The element of consent "is the razor's edge that distinguishes extortion from robbery." *United States v. Zhou,* 428 F.3d 361, 371 (2d Cir.2005). Notably, both North Carolina and the federal government have codified extortion as a crime distinct from robbery. *See* N.C. Gen. Stat. § 14–118.4 (2015); 18 U.S.C. § 1951(b)(1), (2).

6     Because we conclude that North Carolina common law robbery committed by means of "violence" does not require the use, attempted use, or threatened use of "physical force," within the meaning of the ACCA, we need not consider whether robbery committed by means of "fear" otherwise would require the use, attempted use, or threatened use of "physical force."

7     Likewise, this Court's decision in *McNeal* does not impact our decision, because that case addressed the federal crime of armed bank robbery.

8     Because we vacate Gardner's sentence, we do not address his other arguments challenging his sentence.

---

**End of Document**       © 2016 Thomson Reuters. No claim to original U.S. Government Works.

U.S. v. Parnell, --- F.3d ---- (2016)

2016 WL 1633167, 2016 Daily Journal D.A.R. 3489

2016 WL 1633167
United States Court of Appeals,
Ninth Circuit.

UNITED STATES of America, Plaintiff–Appellee,

v.

Paul Edward PARNELL, Defendant–Appellant.

No. 14–30208.
|
Argued and Submitted March 10, 2016.
|
Filed April 12, 2016.

**Synopsis**
**Background:** Defendant was found guilty in the United States District Court for the District of Idaho, B. Lynn Winmill, Chief Judge, of unlawful possession of firearm, and he was given enhanced penalty based in part on determination that prior conviction for armed robbery under Massachusetts law constituted a "violent felony" under the Armed Career Criminal Act (ACCA). Defendant appealed.

**[Holding:]** The Court of Appeals, Fisher, Circuit Judge, held that under the categorical approach, an armed robbery conviction under the Massachusetts statute does not qualify as a violent felony under ACCA's force clause.

Sentence vacated; remanded for resentencing.

Watford, Circuit Judge, filed concurring opinion.

See also —— Fed.Appx. ——, 2016 WL 1425781.

West Headnotes (22)

**[1]** **Sentencing and Punishment**
    Violent or Nonviolent Character of Offense
Under the force clause of the Armed Career Criminal Act (ACCA), which defines a "violent felony" as any crime punishable by imprisonment for a term exceeding one year that has as an element the use, attempted use, or threatened use of physical force against the person of another, the phrase "physical force" means violent force, that is, force capable of causing physical pain or injury to another person. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

**[2]** **Criminal Law**
    Review De Novo
Court of Appeals reviews de novo a district court's conclusion that a prior conviction is a predicate offense under the Armed Career Criminal Act (ACCA). 18 U.S.C.A. § 924(e).

Cases that cite this headnote

**[3]** **Sentencing and Punishment**
    Violent or Nonviolent Character of Offense
To determine whether a prior conviction qualifies as a violent felony under the Armed Career Criminal Act (ACCA), courts apply the "categorical approach" outlined by the Supreme Court in *Taylor v. United States,* under which courts initially evaluate whether a defendant's prior conviction corresponds to an offense enumerated as a violent felony in the ACCA by examining only the fact of conviction and the statutory definition of the prior offense. 18 U.S.C.A. § 924(e), (e)(2).

Cases that cite this headnote

**[4]** **Sentencing and Punishment**
    Violent or Nonviolent Character of Offense
To determine whether a prior conviction qualifies as a violent felony under the Armed Career Criminal Act (ACCA), when the statute of conviction is overinclusive, criminalizing some conduct that would qualify as a predicate offense and other conduct that would not, *Taylor* authorizes courts to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of the enumerated offense; in such cases, courts employ the "modified categorical approach" and examine the charging paper and jury instructions to determine whether the defendant was necessarily convicted of an

U.S. v. Parnell, --- F.3d ---- (2016)

2016 WL 1633167, 2016 Daily Journal D.A.R. 3489

offense corresponding to one listed in the ACCA. 18 U.S.C.A. § 924(e), (e)(2).

Cases that cite this headnote

**[5]    Sentencing and Punishment**
    Violent or Nonviolent Character of Offense

Only in the case of a divisible statute does the "modified categorical approach" apply to determine whether a prior conviction qualifies as a violent felony under the Armed Career Criminal Act (ACCA). 18 U.S.C.A. § 924(e).

Cases that cite this headnote

**[6]    Sentencing and Punishment**
    Particular offenses

Under the categorical approach, the offense of armed robbery under Massachusetts law does not have as an element the use, attempted use, or threatened use of physical force against the person of another, and so does not constitute a "violent felony" under the Armed Career Criminal Act (ACCA); the degree of force is immaterial in Massachusetts, as any force will satisfy the "actual force" prong of robbery so long as the victim is aware of it, and this is insufficient to satisfy the physical force required under the ACCA, that is, force capable of causing physical pain or injury. 18 U.S.C.A. § 924(e), (e)(2); M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[7]    Robbery**
    Degrees; armed robbery

For an individual to be convicted of armed robbery under Massachusetts law, the jury must find the defendant (1) committed a robbery (2) while in possession of a weapon. M.G.L.A. c. 265, § 17.

Cases that cite this headnote

**[8]    Robbery**
    Force
**Robbery**

    Putting in fear

Under Massachusetts law, to satisfy the first element of armed robbery, namely, that the defendant committed a robbery, a robbery can be committed in one of two ways: (1) by force and violence, that is, the actual force prong, or (2) by assault and putting in fear, that is, the constructive force prong. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[9]    Robbery**
    Force
**Robbery**
    Putting in fear

Under Massachusetts law, under either the actual force or constructive force prong of the statute setting forth how a robbery can be committed, the degree of force is immaterial so long as it is sufficient to obtain the victim's property against his will. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[10]    Robbery**
    Force
**Robbery**
    Putting in fear

Under Massachusetts law, so long as the victim is aware of the application of force which relieves him of his property, the requisite degree of force is present to make the crime robbery. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[11]    Robbery**
    Nature and elements in general

To constitute robbery under Massachusetts law, the offense need not involve resistance by the victim. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[12]    Robbery**
    Force

**Robbery**

👉 Putting in fear

Under Massachusetts law, under the actual force prong of the statute setting forth how a robbery can be committed, it is not necessary that the victim be placed in fear. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[13]** **Robbery**

👉 Degrees; armed robbery

Under Massachusetts law, to satisfy the second element of armed robbery, namely, that the defendant was in possession of a weapon, the defendant must possess a dangerous weapon during the commission of the offense, though the weapon need not be fired, employed to effectuate the robbery, used in a threatening manner, or even generally or openly displayed, and the victim need not be aware of the weapon's presence. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[14]** **Robbery**

👉 Force

**Robbery**

👉 Taking from person or presence of another

Massachusetts robbery statute applies to the use of minimal, nonviolent force, such as that involved with purse snatching. M.G.L.A. c. 265, §§ 17, 19(b).

Cases that cite this headnote

**[15]** **Sentencing and Punishment**

👉 Violent or Nonviolent Character of Offense

Force clause of the Armed Career Criminal Act (ACCA) requires the actual, attempted, or threatened use of physical force, not a mere uncommunicated willingness or readiness to use such force; a willingness to use violent force is not the same as a "threat" to do so, as the latter requires some outward expression or indication of an intention to inflict pain, harm, or punishment, while the former does not. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

**[16]** **Sentencing and Punishment**

👉 Violent or Nonviolent Character of Offense

Mere fact an individual is armed does not mean he or she has used the weapon, or threatened to use it, in any way, for purposes of determining whether the force clause of the Armed Career Criminal Act (ACCA), requiring the actual, attempted, or threatened use of physical force, has been satisfied. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

**[17]** **Sentencing and Punishment**

👉 Violent or Nonviolent Character of Offense

There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force; only the latter falls within Armed Career Criminal Act's (ACCA) force clause. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

**[18]** **Sentencing and Punishment**

👉 Violent or Nonviolent Character of Offense

Offenses presenting only a risk of violence fall within the Armed Career Criminal Act's (ACCA) residual clause, which defines a violent felony to include an offense that otherwise involves conduct that presents a serious potential risk of physical injury to another. 18 U.S.C.A. § 924(e) (2)(B)(ii).

Cases that cite this headnote

**[19]** **Sentencing and Punishment**

👉 Presumptions

Courts may not presume an implied threat to use a weapon from a defendant's mere possession of it, for purposes of determining whether the force clause of the Armed Career Criminal Act (ACCA), requiring the actual, attempted, or threatened use of physical force, has been satisfied. 18 U.S.C.A. § 924(e)(2)(B)(i).

Cases that cite this headnote

**[20]** **Sentencing and Punishment**

    Particular offenses

Although a defendant could be convicted of felony riot if there was a knife in his pocket or a gun within his reach but he did not use or threaten to use physical force, this would not qualify as a crime of violence under the Armed Career Criminal Act (ACCA). 18 U.S.C.A. § 924(e).

Cases that cite this headnote

**[21]** **Sentencing and Punishment**

    Particular offenses

Defendant's conviction under Massachusetts law for assault and battery by dangerous weapon does not qualify as a violent felony under the Armed Career Criminal Act's (ACCA) force clause. 18 U.S.C.A. § 924(e); M.G.L.A. c. 265, § 15A.

Cases that cite this headnote

**[22]** **Assault and Battery**

    Assault with dangerous or deadly weapon

Under Massachusetts law, a conviction for assault and battery by dangerous weapon may be predicated on a reckless act causing physical or bodily injury to another. M.G.L.A. c. 265, § 15A.

Cases that cite this headnote

**Attorneys and Law Firms**

Robert K. Schwarz (argued) and Melissa Winberg, Federal Defender Services of Idaho, Boise, ID, for Defendant–Appellant.

Wendy J. Olson, United States Attorney, Christian S. Nafzger, Assistant United States Attorney, and Joshua D. Hurwit (argued), District of Idaho, Boise, ID, for Plaintiff–Appellee.

Appeal from the United States District Court for the District of Idaho, B. Lynn Winmill, Chief District Judge, Presiding. D.C. No. 1:13–cr–00030–BLW–1.

Before: RAYMOND C. FISHER, MARSHA S. BERZON and PAUL J. WATFORD, Circuit Judges.

Opinion by Judge FISHER; Concurrence by Judge WATFORD.

## OPINION

FISHER, Circuit Judge:

**\*1** **[1]** Paul Edward Parnell was found guilty of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g) (1).[1] The government sought an enhanced penalty under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which provides that a person who violates § 922(g) and who "has three previous convictions" for a "violent felony" shall be imprisoned for a minimum of 15 years and a maximum of life. 18 U.S.C. § 924(e). A "violent felony" is defined as "any crime punishable by imprisonment for a term exceeding one year" that "(i) *has as an element the use, attempted use, or threatened use of physical force against the person of another*; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B) (emphasis added). Under § 924(e)(2)(B)(i), known as the force clause, "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010).

The district court concluded Parnell qualifies as an armed career criminal based in part on his 1990 conviction for armed robbery. *See* Mass. Gen. Laws Ann. ch. 265, § 17. Parnell argues this offense does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." We agree.

## DISCUSSION

**[2]** **[3]** **[4]** **[5]** **[6]** We review de novo a district court's conclusion that a prior conviction is a predicate offense under ACCA. *See United States v. Snyder,* 643 F.3d 694, 696

U.S. v. Parnell, --- F.3d ---- (2016)

2016 WL 1633167, 2016 Daily Journal D.A.R. 3489

(9th Cir.2011). "To determine whether a prior conviction qualifies as a violent felony under 18 U.S.C. § 924(e), we apply the 'categorical approach' outlined by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)." *United States v. Jennings*, 515 F.3d 980, 987 (9th Cir.2008). "Under that approach, we initially evaluate whether a defendant's prior conviction corresponds to an offense enumerated as a violent felony in § 924(e)(2) by examining only 'the fact of conviction and the statutory definition of the prior offense.' " *Id.* (quoting *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143). "Where the statute of conviction is overinclusive, criminalizing some conduct that would qualify as a predicate offense and other conduct that would not, *Taylor* authorizes courts to 'go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of the enumerated offense.' " *Id.* (alteration omitted) (quoting *Taylor*, 495 U.S. at 602, 110 S.Ct. 2143). "In such cases, we employ the 'modified categorical approach' and examine the charging paper and jury instructions to determine whether the defendant was necessarily convicted of an offense corresponding to one listed in § 924(e)(2)." *Id.* Only in the case of a divisible statute, however, does the modified categorical approach apply. *See Ramirez v. Lynch*, 810 F.3d 1127, 1131 (9th Cir.2016) (citing *Descamps v. United States*, —— U.S. ——, 133 S.Ct. 2276, 2283–85, 186 L.Ed.2d 438 (2013)). Here, we hold Parnell's conviction for armed robbery does not qualify as a violent felony under the categorical approach.

**\*2** **[7]** For an individual to be convicted of armed robbery under Massachusetts law, Mass. Gen. Laws Ann. ch. 265, § 17, the jury must find the defendant (1) committed a robbery (2) while in possession of a weapon. *See King v. MacEachern*, 665 F.3d 247, 253 (1st Cir.2011) (citing *Commonwealth v. Tevlin*, 433 Mass. 305, 741 N.E.2d 827, 833 (2001)). [2]

**[8]** **[9]** **[10]** **[11]** **[12]** To satisfy the first element, a robbery can be committed in one of two ways: (1) "by force and violence" (i.e., the actual force prong) or (2) "by assault and putting in fear" (i.e., the constructive force prong). Mass. Gen. Laws Ann. ch. 265, § 19(b). [3] Under either prong, "the degree of force is immaterial so long as it is sufficient to obtain the victim's property 'against his will.' " *Commonwealth v. Jones*, 362 Mass. 83, 283 N.E.2d 840, 843 (1972) (quoting Mass. Gen. Laws Ann. ch. 277, § 39). "[S]o long as the victim is aware of the application of force which relieves him of his property ..., the requisite degree of force is present to make the crime robbery." *Id.*

at 844–45. The offense need not involve resistance by the victim. *See id.* at 844 (recognizing but declining to follow the majority rule, under which "snatching does not involve sufficient force to constitute robbery, unless the victim resists the taking or sustains physical injury, or unless the article taken is so attached to the victim's clothing as to afford resistance"). Under the actual force prong, moreover, it is not necessary that the victim be placed in fear. *See id.* at 843; *Commonwealth v. Brown*, 2 Mass.App.Ct. 883, 318 N.E.2d 486, 487 (1974).

**[13]** To satisfy the second element of armed robbery, the defendant must possess a dangerous weapon during the commission of the offense. The weapon, however, need not be "fired, employed to effectuate the robbery, used in a threatening manner, or even generally or openly displayed." *King*, 665 F.3d at 253. Nor need the victim be aware of the weapon's presence. *See Commonwealth v. Goldman*, 5 Mass.App.Ct. 635, 367 N.E.2d 1181, 1182 (1977).

We agree with Parnell that the force required by the actual force prong of robbery under Massachusetts law does not satisfy the requirement of physical force under § 924(e)(2) (B)(i)—"force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140, 130 S.Ct. 1265. Because the "*degree* of force is immaterial," *Jones*, 283 N.E.2d at 843 (emphasis added), *accord Commonwealth v. Joyner*, 467 Mass. 176, 4 N.E.3d 282, 293 (2014), any force, however slight, will satisfy this prong so long as the victim is aware of it. Such force is insufficient under *Johnson*.

**[14]** Purse snatching cases upon which Parnell relies demonstrate the Massachusetts statute does apply to minimal, nonviolent force. In *Jones*, 283 N.E.2d at 842, for example, the defendant simply grabbed the victim's pocketbook from her arm. The victim explained: "I really couldn't tell you what he did. All I knew he was standing there. Next thing I knew, I felt something off my arm. I realized my bag was gone." *Id.* The court held this testimony proved sufficient force to satisfy the statute, because "[s]natching necessarily involves the exercise of *some* actual force." *Id.* at 845 (emphasis added). The court held "where, as here, the actual force used is *sufficient to produce awareness*, although the action may be so swift as to leave the victim momentarily in a dazed condition, the requisite degree of force is present to make the crime robbery." *Id.* (emphasis added). Similarly, in *Brown*, 318 N.E.2d at 487, the defendant was convicted of robbery where he merely snatched a small purse the victim was holding in her hand, touching neither her hand nor her

U.S. v. Parnell, --- F.3d ---- (2016)
2016 WL 1633167, 2016 Daily Journal D.A.R. 3489

body. The court held "the pulling of a purse from a victim's hand constituted sufficient force to satisfy the 'by force and violence' alternative of the statutory definition" of robbery. *Id.*[4]

**\*3** Under our case law applying *Johnson,* this level of force —the snatching of a purse from a victim's hand—does not constitute force "capable of causing physical pain or injury to another person." *Johnson,* 559 U.S. at 140, 130 S.Ct. 1265. In *United States v. Dominguez–Maroyoqui,* 748 F.3d 918, 921 (9th Cir.2014), for example, we held the crime of assaulting a federal officer was not a crime of violence under *Johnson* because it reached conduct such as chasing a prosecutor down the street and bumping into him, walking up to a prosecutor and jolting her arm and shoulder, grabbing a wildlife agent's jacket or spitting in a mail carrier's face. Similarly, in *United States v. Flores–Cordero,* 723 F.3d 1085, 1087–88 (9th Cir.2013) (as amended), we held Arizona's crime of resisting arrest was not a crime of violence under *Johnson* because it reached conduct such as a "minor scuffle" in which a defendant kicked at officers who were attempting to place her in handcuffs. If the level of force in *Dominguez– Maroyoqui* and *Flores–Cordero* was not capable of causing physical pain or injury, then neither is the snatching of a purse from a victim's hand.

**[15]** At oral argument, the government contended the armed robbery offense nonetheless satisfies the force clause because it encompasses a willingness to inflict bodily injury on a resisting victim if necessary. *See Jones,* 283 N.E.2d at 844. The Massachusetts cases do not require proof of a willingness to use such force. But even if they did, the force clause requires the actual, attempted or *threatened* use of physical force, *see* 18 U.S.C. § 924(e)(2)(B)(i), not a mere uncommunicated willingness or readiness to use such force. A willingness to use violent force is not the same as a threat to do so. The latter requires some outward expression or indication of an intention to inflict pain, harm or punishment. *See Threat* and *Threaten, Webster's Third New International Dictionary* 2382 (2002); *Threat* and *Threaten, Am. Heritage Dictionary of the English Language* 1813 (5th ed. 2011); *Threat, Black's Law Dictionary* (10th ed. 2014). The former does not.

For similar reasons, we are not persuaded a simple snatching necessarily entails an implied threat to use violent force to overcome a victim's potential resistance. Although some snatchers are prepared to use violent force to overcome resistance, others are not. Notably, a defendant can be

convicted of robbery in Massachusetts even if the victim is not placed in fear. *See Jones,* 283 N.E.2d at 843; *Brown,* 318 N.E.2d at 487; 14A *Mass. Prac., Summary of Basic Law* § 7:217 (5th ed. 2015). If every robbery involved an implied threat of violent force, every victim would be placed in fear. This, obviously, is not the case under Massachusetts law.

**[16]** **[17]** **[18]** **[19]** **[20]** By its very nature, of course, armed robbery is a serious and dangerous crime. The possession of a dangerous weapon may indicate a robber's willingness to use that weapon if necessary to accomplish the criminal undertaking. *See Goldman,* 367 N.E.2d at 1182. The mere fact an individual is armed, however, does not mean he or she has used the weapon, or threatened to use it, in any way. *See United States v. Werle,* 815 F.3d 614, 621–22 (9th Cir.2016). As noted, the Massachusetts statute does not require a weapon be used or displayed, or even that the victim be aware of it. *See King,* 665 F.3d at 253; *Goldman,* 367 N.E.2d at 1182. There is a material difference between the presence of a weapon, which produces a *risk* of violent force, and the actual or threatened use of such force. Only the latter falls within ACCA's force clause. Offenses presenting only a risk of violence fall within ACCA's residual clause, *see* 18 U.S.C. § 924(e)(2)(B)(ii) (defining a violent felony to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another"), which, as the government concedes, does not apply here. *See Johnson v. United States,* —— U.S. ——, 135 S.Ct. 2551, 2563, 192 L.Ed.2d 569 (2015) (holding the residual clause is unconstitutionally vague and, hence, imposing an increased sentence under the residual clause violates the Constitution's guarantee of due process). Nor can we presume an implied threat to use a weapon from a defendant's mere possession of it. As we explained in *Werle,* 815 F.3d at 622, "a defendant could be convicted of felony riot if there was a knife in his pocket or a gun within his reach but he did not use or threaten to use physical force. This would not qualify as a crime of violence under the ACCA." The mere possession of a weapon, therefore, does not bring Massachusetts' armed robbery statute within ACCA's force clause.

**\*4** We acknowledge the First Circuit's holding in *United States v. Luna,* 649 F.3d 91 (1st Cir.2011). Addressing the same Massachusetts armed robbery statute at issue here, *Luna* held the statute satisfied the force clause because the defendant had "provided no reason for us to conclude that the type of force involved in armed robbery is not 'violent force— that is, force capable of causing physical pain or injury,' and we see no reason to do so." *Id.* at 108–09 (citation omitted)

U.S. v. Parnell, --- F.3d ---- (2016)

2016 WL 1633167, 2016 Daily Journal D.A.R. 3489

(quoting *Johnson,* 559 U.S. at 140, 130 S.Ct. 1265). *Luna,* however, does not carry significant persuasive weight. The court's discussion of the *Johnson* issue consists of only a single sentence, provides no reasoning and makes no mention of the Massachusetts case law deeming the degree of force immaterial to a conviction for armed robbery.

We are instead persuaded by the First Circuit's more thorough and well-reasoned analysis in *United States v. Castro–Vazquez,* 802 F.3d 28 (1st Cir.2015). The defendant there had a prior conviction under Puerto Rico's robbery statute, which criminalizes a person's "unlawfully taking personal property belonging to another in the immediate presence of said person and against his/her will by means of violence or intimidation." *Id.* at 37 (alteration omitted) (quoting P.R. Laws Ann. tit. 33, § 4826) (internal quotation marks omitted). Assuming "violence is defined under Puerto Rico law to include the slightest use of force," the First Circuit held "the prior offense would fall short of the ... requirement that the offense include an element of 'physical force,' which is defined as '*violent* force—that is, force capable of causing physical pain or injury to another person.' " *Id. Castro–Vazquez* is analogous to this case and persuasive. *See also United States v. Dunlap,* No. 1:14–CR–00406–AA, 2016 WL 591757, at *5, —— F.Supp.3d ——, —— (D.Or. Feb. 12, 2016) (holding a conviction for robbery under Oregon Revised Statutes § 164.395(1), which "requires only minimal force," does not satisfy *Johnson,* 559 U.S. 133, 130 S.Ct. 1265).

In sum, because the degree of force required to commit armed robbery in Massachusetts is immaterial so long as the victim is aware of it, Massachusetts' armed robbery statute does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Under the categorical approach, therefore, a conviction under the Massachusetts statute does not qualify as a violent felony under ACCA's force clause. The government does not argue Parnell's conviction falls under § 924(e)(2)(B)(ii) or that the modified categorical approach applies. Accordingly, we hold Parnell's 1990 armed robbery conviction does not qualify as a predicate conviction for purposes of a sentencing enhancement under ACCA.

**[21]** **[22]** Given that neither this conviction nor Parnell's 1989 conviction for assault and battery by dangerous weapon qualifies as a violent felony, the district court erred by sentencing Parnell as an armed career offender under § 924(e).[5] We therefore vacate Parnell's sentence and remand

for resentencing. Because we vacate Parnell's sentence on this ground, we need not address his contention regarding the government's improper argument at sentencing.

### CONCLUSION

**\*5** For the reasons stated in a concurrently filed memorandum disposition, we affirm Parnell's conviction. For the reasons stated here, we vacate Parnell's sentence and remand for resentencing.

**AFFIRMED IN PART; VACATED IN PART; REMANDED.**

WATFORD, Circuit Judge, concurring:

I join the court's opinion in full, although I confess I was initially inclined to affirm the sentence. The notion that robbery is not a "violent felony," as that term is defined in the Armed Career Criminal Act (ACCA), strikes me as counterintuitive to say the least. Holding that *armed* robbery doesn't qualify as a violent felony seems even more absurd. But, as the court's opinion persuasively explains, that conclusion is compelled by two oddities of Massachusetts law.

The first is that Massachusetts has abandoned the traditional common-law definition of robbery. To distinguish robbery from larceny, the common law required more than just stealing property from the person of another. To commit robbery, the defendant also had to use violence or intimidation to coerce the victim into parting with his property. *See* 3 Wayne R. LaFave, Substantive Criminal Law § 20.3, at 173, 181–89 (2d ed. 2003). In Massachusetts, however, a defendant may be convicted of robbery without using violence or intimidation of any sort. *See Commonwealth v. Jones,* 362 Mass. 83, 283 N.E.2d 840, 843–45 (1972). It's enough, for example, if the defendant sneaks up behind the victim and snatches a purse from her hand without so much as touching the victim or doing anything to put her in fear beforehand. *Commonwealth v. Brown,* 2 Mass.App.Ct. 883, 318 N.E.2d 486, 487 (1974).

The second oddity is this: In Massachusetts, *armed* robbery consists of robbery (as defined above) while in possession of a dangerous weapon. The weapon need not play any role in the offense, as is often required in other States, and the victim need not even be aware of the weapon's existence. *See, e.g.,*

*Commonwealth v. Rogers,* 459 Mass. 249, 945 N.E.2d 295, 301 n. 6 (2011); *Commonwealth v. Goldman,* 5 Mass.App.Ct. 635, 367 N.E.2d 1181, 1182 (1977). Thus, the same purse-snatcher described above is guilty of armed robbery under Massachusetts law so long as he has a gun concealed on his person—even if the victim never learns of the gun's presence, and even if the gun plays no role in facilitating the crime. So again, strange as it may seem, in Massachusetts a defendant can be found guilty of armed robbery without using or threatening to use any violence whatsoever.

The conduct encompassed by Massachusetts' armed robbery statute surely falls within the scope of the ACCA's so-called residual clause, 18 U.S.C. § 924(e)(2)(B)(ii). But that clause

is no longer valid. *Johnson v. United States,* —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). To qualify now as a violent felony, armed robbery must have as an element the use, attempted use, or threatened use of violent physical force. 18 U.S.C. § 924(e)(2)(B)(i). That is not the case under Massachusetts law, so Parnell's prior armed robbery conviction cannot serve as the basis for an enhanced sentence under the ACCA.

**All Citations**

--- F.3d ----, 2016 WL 1633167, 2016 Daily Journal D.A.R. 3489

Footnotes

1    *See* 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.").

2    *See* Mass. Gen. Laws Ann. ch. 265, § 17 ("Whoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment in the state prison for life or for any term of years....").

3    *See* Mass. Gen. Laws Ann. ch. 265, § 19(b) ("Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals or takes from the person of another, or from his immediate control, money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years.").

4    *Jones* and *Brown* also show there exists a realistic probability, not merely a theoretical possibility, that Massachusetts would apply its robbery and armed robbery statutes to conduct falling outside ACCA's violent felony definition. *See Ramirez,* 810 F.3d at 1131 (citing *Gonzales v. Duenas–Alvarez,* 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)).

5    Parnell argues, and the government does not dispute, that his 1989 conviction for assault and battery by dangerous weapon (ABDW), *see* Mass. Gen. Laws Ann. ch. 265, § 15A, does not qualify as a violent felony. Under Massachusetts law, an ABDW conviction may be predicated on a reckless act causing physical or bodily injury to another. *See Commonwealth v. Burno,* 396 Mass. 622, 487 N.E.2d 1366, 1368–69 (1986); *see also United States v. Fish,* 758 F.3d 1, 10 (1st Cir.2014); *United States v. Hart,* 674 F.3d 33, 41–43 & nn. 7–8 (1st Cir.2012). We have held, however, that the ACCA's force clause reaches only offenses requiring the intentional use of force. *See United States v. Dixon,* 805 F.3d 1193, 1197 (9th Cir.2015); *United States v. Lawrence,* 627 F.3d 1281, 1284 (9th Cir.2010). The district court therefore erred by relying on Parnell's ABDW conviction as an ACCA predicate.

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.