

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 14, 2016

<u>By ECF</u>

The Honorable Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
  for the Second Circuit
The Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

    Re:    USA v. Hill
           <u>No. 14-3872-cr</u>

Dear Ms. Wolfe:

        The government respectfully submits this letter to call the Court's attention to authority decided subsequent to oral argument. We request that this letter be distributed to the Panel that heard the above-captioned case on November 12, 2015 (Jacobs, Livingston and Droney, Judges).

        Among other issues, this case presents the issue of whether Hobbs Act robbery is a "crime of violence" as defined by 18 U.S.C. § 924(c)(3) following the Supreme Court's decision in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). The Eleventh Circuit has recently held that a defendant could not show plain error, the standard of review Hill must meet, in being sentenced for brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). See <u>United States v. Fox</u>, - F. App'x -, 2016 WL 3033067, at *2 (11th Cir. 2016) (per curiam) (enclosed). As the court explained, among other reasons, <u>Johnson</u> "did not expressly invalidate the crime-of-violence definition in § 924(c)(3)(B) or even broadly condemn criminal laws using risk-based terms," "[n]or is it clear that [] <u>Johnson</u>'s reasoning regarding the ACCA's residual clause applies with equal force to § 924(c)(3)(B)." <u>Id.</u> The Eleventh Circuit also denied permission to file a successive § 2255 petition to a habeas petitioner seeking to apply <u>Johnson</u> to his Section 924(c) conviction that was premised on a Hobbs Act robbery. See <u>In re Fleur</u>, - F.3d -, 2016 WL 3190539, at *3 (11th Cir. 2016) (enclosed). There, the court held that Hobbs Act robbery "clearly qualifies as a 'crime of violence' under the use-of-force clause in § 924(c)(3)(A)."

2

The Eighth Circuit also recently held that Hobbs Act robbery qualifies as a "serious violent felony" under 18 U.S.C. § 3559(c) as it has as an element "the use, attempted use, or threatened use of physical force against the person of another." <u>United States v. House</u>, - F.3d -, 2016 WL 3144735, at *3 (8th Cir. 2016) (enclosed).

Under these decisions, Hill's Section 924(j) conviction should be affirmed as his predicate Hobbs Act robbery qualifies as a crime of violence pursuant to both Sections 924(c)(3)(A) and (B). At minimum, it was not plain error for the district court to so find.

        Respectfully submitted,

        ROBERT L. CAPERS,
        United States Attorney

By:     /s/
        Amy Busa
        Assistant U.S. Attorney

Encls.
cc: Defense counsel (by ECF)

2016 WL 3033067
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007.
See also U.S. Ct. of App. 11th Cir. Rule 36-2.
United States Court of Appeals,
Eleventh Circuit.

United States of America, Plaintiff–Appellee,
v.
Glenn John Fox, Defendant–Appellant.

No. 15–11741
|
Non–Argument Calendar
|
(May 27, 2016)

Appeal from the United States District Court for the Middle District of Florida, D.C. Docket No. 8:14-cr-00526-JDW-AEP-1

**Attorneys and Law Firms**

Gregory T. Nolan, Yvette Rhodes, Peter J. Sholl, Arthur Lee Bentley, III, Simon A. Gaugush, U.S. Attorney's Office, Tampa, FL, for Plaintiff–Appellee.

Mara Allison Guagliardo, Frank William Zaremba, Tampa, FL, Rosemary Cakmis, Donna Lee Elm, Orlando, FL, Federal Public Defender's Office, for Defendant–Appellant.

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

**Opinion**

PER CURIAM:

*1 Glenn John Fox appeals his conviction for brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), as well as the total 120-month sentence of imprisonment he received after pleading guilty to that offense and to bank robbery, in violation of 18 U.S.C. § 2113(a). He argues, for the first time on appeal, that his conviction for brandishing a firearm during a crime of violence should be vacated because, after *Johnson v. United States (Samuel Johnson)*, 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), bank robbery is not a "crime of violence" that can support the conviction. He also challenges the procedural and substantive reasonableness of his sentence, claiming that the district court erred in considering rehabilitation when imposing a term of imprisonment and that his sentence was substantively unreasonable in light of his age and lack of criminal history. After careful review, we affirm.

**I.**

Fox contends that the Supreme Court's recent decision in *Samuel Johnson* invalidated 18 U.S.C. § 924(c)(3)(B), one of two provisions defining what is a "crime of violence" for purposes of § 924(c)(1)(A) (criminalizing possession of a firearm during and in relation to, or in furtherance of, a crime of violence). According to Fox, § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague for the same reasons the Court in *Samuel Johnson* held the "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), unconstitutionally vague. He also argues that bank robbery does not qualify under § 924(c)'s other definition of "crime of violence" because it does not have as an element "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

We generally review constitutional challenges to a statute *de novo*. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). Arguments raised for the first time on appeal in a criminal case, however, are reviewed for plain error only. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). "To find plain error, there must be: (1) error, (2) that is plain, and (3) that has affected the defendant's substantial rights." *United States v. Hesser*, 800 F.3d 1310, 1324 (11th Cir. 2015) (quoting other sources). If those three conditions are met, we may exercise our discretion to correct the error, "but only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted). Because Fox did not raise his arguments to the district court, we review for plain error.

"An error is plain if it is obvious and clear under current law[,]" *United States v. Eckhardt*, 466 F.3d 938, 948 (11th Cir. 2006), which is determined at the time the case is reviewed on appeal, *United States v. Pantle*, 637 F.3d 1172, 1175 (11th Cir. 2011). The threshold for establishing a "plain" error is high. Unless the explicit language of a statute or rule

specifically resolves an issue, there can be no plain error without precedent from the Supreme Court or this Court directly resolving the issue. *Hesser*, 800 F.3d at 1325.

***2** Fox was convicted of violating § 924(c), which states, in relevant part, that "any person who, during and in relation to any crime of violence ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence[,]" be sentenced to a consecutive term of imprisonment of not less than five years. 18 U.S.C. § 924(c)(1)(A)(i). If the firearm was brandished, the consecutive term of imprisonment must be not less than seven years. *Id.* § 924(c)(1)(A)(ii).

The statute defines a "crime of violence" as a felony that

   (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

   (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).

Fox compares subsection (B) above to the ACCA's "residual clause," one of three ways a prior conviction could qualify as a "violent felony" for purposes of enhancing a defendant's sentence under the ACCA.[1] The residual clause provided that an offense was a violent felony if it "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

[1] The other two ways are the "elements clause" (a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), and the "enumerated crimes clause" (a felony that "is burglary, arson, or extortion, [or] involves use of explosives"). *See* 18 U.S.C. § 924(e)(2)(B).

The Supreme Court in *Samuel Johnson* held the residual clause unconstitutionally vague because it creates uncertainty about (1) how to evaluate the risks posed by the crime in an abstract "ordinary case," instead of based on concrete factors or statutory elements, and (2) how much risk it takes to qualify as a violent felony. 135 S.Ct. at 2557–58. The Court explained that the residual clause forced courts to interpret the requisite degree of risk in light of the enumerated crimes, which were "far from clear in respect to the degree of risk each posed." *Id.* at 2558. The Court also observed that the vagueness of the residual clause was confirmed by the Court's own repeated failed attempts to craft a principled and objective standard out of the residual clause, as well as the fact that the clause proved nearly impossible to apply consistently in the lower courts. *Id.* at 2558–60.

Here, Fox has not shown plain error for two main reasons.[2] First, *Samuel Johnson* did not expressly invalidate the crime-of-violence definition in § 924(c)(3)(B) or even broadly condemn criminal laws using risk-based terms. *See* 135 S.Ct. at 2561. Nor is it clear that *Samuel Johnson*'s reasoning regarding the ACCA's residual clause applies with equal force to § 924(c)(3)(B). Section 924(c)(3)(B)'s definition of crime of violence may require gauging the riskiness of conduct by reference "to an idealized ordinary case of the crime," *see United States v. Keelan*, 786 F.3d 865, 871 (11th Cir. 2015) (holding that an identical definition of crime of violence in 18 U.S.C. § 16(b) is subject to the "ordinary case" analysis when evaluating the riskiness of conduct), but it does not "link[ ] a phrase such as 'substantial risk' to a confusing list of examples," as the residual clause does, *see Samuel Johnson*, 135 S.Ct. at 2561. In addition, Fox has not shown that § 924(c)(3)(B) has been subject to the same kind of uncertainty in application as the residual clause. *See Samuel Johnson*, 135 S.Ct. at 2559–60. There may be other relevant differences as well, but it is enough to note that the two provisions are not identical in language or application. Therefore, it is not clear or obvious that *Samuel Johnson* invalidated § 924(c)(3)(B).

[2] We emphasize that, in this appeal, the issue of whether, upon *de novo* review, § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague, in violation of *Samuel Johnson*'s reasoning, is not before us. Therefore, we expressly do not opine on that issue here.

***3** Second, Fox has not shown that bank robbery under § 2113 plainly does not qualify under § 924(c)(3)'s other definition of the term "crime of violence"—a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Section 2113(a) provides that bank robbery must be committed "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). "Under section 2113(a), intimidation occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) (internal quotation marks omitted).

Case 14-3872, Document 98, 06/14/2016, 1793048, Page5 of 17

United States v. Fox, --- Fed.Appx. ---- (2016)

We have not expressly held that bank robbery under § 2113(a) qualifies as a crime of violence as defined by § 924(c)(3)(A), but our precedent supports the government's position that it does qualify. *See, e.g., United States v. Lockley*, 632 F.3d 1238, 1244–45 (11th Cir. 2011) (holding that a Florida robbery statute with a similar intimidation element categorically qualified as a crime of violence under the Sentencing Guidelines because it had as an element the use, attempted use, or threatened use of physical force against another); *United States v. Moore*, 43 F.3d 568, 572–73 (11th Cir. 1994) (stating that "[t]ak[ing] or attempt[ing] to take by force and violence or by intimidation ... encompasses the use, attempted use, or threatened use of physical force") (internal quotation marks and citations omitted); Likewise, at least a few other circuit courts have concluded that § 2113(a) constitutes a crime of violence under § 924(c)(3)(A). *See, e.g., United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000); *Royal v. Tombone*, 141 F.3d 596, 602 (5th Cir. 1998); *United States v. Adkins*, 937 F.2d 947, 950 n. 2 (4th Cir. 1991).

In any case, because Fox has not cited to, and an independent review has not uncovered, any precedent holding that bank robbery under § 2113(a) is *not* a qualifying offense under § 924(c)(3)(A), he cannot show plain error. *See Hesser*, 800 F.3d at 1325. We affirm his § 924(c)(1)(A) brandishing conviction.

## II.

Fox also challenges the procedural and substantive reasonableness of his sentence. We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). In reviewing a sentence for reasonableness, we first determine whether the district court committed procedural error at sentencing before evaluating whether the sentence was substantively reasonable in light of the totality of the circumstances. *Id.*

### A.

Fox first argues that the district court procedurally erred at sentencing by considering rehabilitation when crafting his sentence of imprisonment. Fox arguably did not preserve this argument because he did not clearly "inform the district court of the legal basis for the objection." *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006). He merely objected in general terms that his sentence was "substantively and procedurally" unreasonable. Regardless of our standard of review, however, Fox has not shown that resentencing is warranted.

In *Tapia v. United States*, the Supreme Court held that a sentencing court may not impose or lengthen a prison term in order to promote an offender's rehabilitation. 564 U.S. 319, 131 S.Ct. 2382, 2391, 180 L.Ed.2d 357 (2011). Following *Tapia*, we held in *Vandergrift* that a "*Tapia* error occurs where the district court *considers* rehabilitation when crafting a sentence of imprisonment," not merely when it tailors the length of the sentence to permit completion of a rehabilitation program, or makes rehabilitation the dominant factor in reaching its sentencing determination. *United States v. Vandergrift*, 754 F.3d 1303, 1310 (11th Cir. 2014) (emphasis in original). "Because it is impermissible to consider rehabilitation, a court errs by relying on or considering rehabilitation in any way when sentencing a defendant to prison." *Id.* at 1311. "This is true regardless of how dominant the error was in the court's analysis and regardless of whether we can tell with certainty that the court relied on rehabilitation because the sentence was tailored to a rehabilitation program." *Id.*

*4 However, "a court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters." *Tapia*, 131 S.Ct. at 2392; *see Vandergrift*, 754 F.3d at 1311 (stating that although a district court may discuss rehabilitation during the sentencing hearing, the court erred because "prison's rehabilitative benefits were considered in the course of deciding whether or not Vandergrift should be sentenced to prison at all").

After careful review, we do not believe that the district court erred in considering rehabilitation when crafting Fox's sentence of imprisonment. Fox cites the following comments from the district court when discussing the § 3553(a) factors (the emphasis is Fox's):

> In addition to reflecting the seriousness of the offense, a sentence should promote respect for the law, act as a deterrent, and protect the public. You are a danger to the public unless and until you <u>receive and follow the advice and assistance of experts who can help you understand and address your psychological issues, your drug abuse issues, those tendencies that you have, your depression.</u> ....

When you get out of prison, your chances of finding a job are not gonna get any better. They'll be substantially less likely or worse and that depression will always be there or that potential for depression. So under those circumstances, your supervision will be a challenge to the United States Probation Office and that should be addressed in the sentence as well.

[ .... ]

The bottom line in this case is however troubled you may be as an individual, however skewed your thinking may have been, you committed an offense, actually two offenses, that placed yourself and others in jeopardy and society cannot allow individuals like yourself to present that risk. So you need to address it while in custody and once you're out. As [the prosecutor] says, we could be talking about something much more serious in terms of injury to others if that gun had discharged either intentionally or accidentally.

While the district court did reference the need for Fox to address his mental-health issues, these comments do not show that the district court considered the need for rehabilitation in its decision to impose or lengthen his term of imprisonment. Rather, it appears that the district court was primarily responding to Fox's arguments related to his mental-health issues and drug addiction. Moreover, there is nothing improper about the court's discussion with Fox of his opportunities for rehabilitation while in prison or the benefits of treatment programs. *See Tapia*, 131 S.Ct. at 2392.

But even assuming that the district court committed *Tapia* error, Fox has not shown that remand for resentencing is warranted.[3] While a sentence can be unreasonable if it "was substantially affected by [the court's] consideration of impermissible factors," "a district court's consideration of an impermissible factor at sentencing is harmless if the record as a whole shows the error did not substantially affect the district court's selection of the sentence imposed." *United States v. Williams*, 456 F.3d 1353, 1361–62 (11th Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007); *see Vandergrift*, 754 F.3d at 1311 (stating that *Tapia* error is treated no differently than "any other instance where a court considers an impermissible sentencing factor").

arguments related to mental health or drug addiction without being accused of committing *Tapia* error.

*5 Here, the record conclusively demonstrates that any rehabilitative considerations "constituted only a minor fragment of the court's reasoning." *See Vandergrift*, 754 F.3d at 1312 (quoting *United States v. Bennett*, 698 F.3d 194, 200 (4th Cir. 2012)). The primary consideration of the district court was the seriousness of the offense, repeatedly emphasized by the court at sentencing, as well as, to a lesser extent, the danger Fox posed to the public. For example, near the end of the hearing, the district court summed up its sentence entirely in terms of the seriousness of the offense: "a sentence of less than [ten years] would not adequately reflect the seriousness of the offense." Based on the record as a whole, we have no doubt that the error, if any, was harmless under the circumstances. *See Williams*, 456 F.3d at 1362.

### III.

Fox next argues that his sentence was substantively unreasonable because it was greater than necessary to serve the purposes of sentencing in light of Fox's age, lack of criminal history, and the court's *Tapia* error.

In sentencing a defendant, the district court must consider the § 3553(a) factors[4] and then impose a sentence that is "sufficient, but not greater than necessary to comply with the purposes" of sentencing listed in 18 U.S.C. § 3553(a)(2). These purposes are retribution, deterrence, incapacitation, and, when appropriate, rehabilitation. *See* 18 U.S.C. § 3553(a)(2). The weight given to specific § 3553(a) factors is committed to the sound discretion of the district court. *United States v. Amedeo*, 487 F.3d 823, 832 (11th Cir. 2007). We may conclude that a district court abused its discretion if the court (1) fails to account for a factor due significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) commits a clear error of judgment in balancing the sentencing factors by arriving at a sentence outside the range of reasonable sentences based on the facts of the case. *United States v. Irey*, 612 F.3d 1160, 1189–90 (11th Cir. 2010) (*en banc*). "[W]e ordinarily expect a sentence within the Guidelines range to be reasonable." *United States v. Asante*, 782 F.3d 639, 648 (11th Cir. 2015) (internal quotation marks omitted)

---

[3] We do not agree with the government that, indulging the assumption that *Tapia* error occurred, such error was invited. Nevertheless, we do note the difficulty courts may face in attempting to respond to sentencing

[4] The district court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences

available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwanted sentencing disparities, and the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1), (3)–(7).

Here, Fox has not shown that the district court abused its discretion in sentencing him. Fox was sentenced to 36 months in prison for the bank-robbery offense, within the guideline range of 30 to 37 months, to be followed by a consecutive term of seven years in prison for the brandishing offense. Before sentencing him, the court thoughtfully weighed the § 3553(a) factors and considered Fox's arguments. The district court adequately explained the weight it gave to the seriousness of the offense based on Fox's use of a firearm during the bank robbery, which posed a serious risk to the victims and himself. *See United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008) (attaching "great weight" to the seriousness of the offense did not render the sentence unreasonable). Despite his age and lack of criminal history, Fox has not shown that the district court committed a clear error of judgment in balancing the proper factors. *See Irey*, 612 F.3d at 1190.

**AFFIRMED.**

**All Citations**

--- Fed.Appx. ----, 2016 WL 3033067

---

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3190539
United States Court of Appeals,
Eleventh Circuit.

In re: Marckson Saint Fleur, Petitioner.

No. 16-12299-J
|
June 8, 2016

Application for Leave to File a Second or Successive Motion to Vacate, Set Aside, or Correct Sentence, 28 U.S.C. § 2255(h)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

**Opinion**

BY THE PANEL:

*1 Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Marckson Saint Fleur has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

## I. SAINT FLEUR'S *JOHNSON* CLAIM

In his application, Saint Fleur seeks to raise one claim in a second or successive § 2255 motion. Saint Fleur asserts that his claim relies on a new rule of constitutional law, citing *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague, and citing *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257 (2016), in which the Supreme Court held that *Johnson* applies retroactively to cases on collateral review.

Saint Fleur was not sentenced or subject to an enhancement under the ACCA. Rather, Saint Fleur appears to assert that the Supreme Court's holding in *Johnson* implicates his sentence for using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Specifically, he argues that his conviction for Hobbs Act robbery no longer qualifies as a crime of violence because of *Johnson*, and thus, his § 924(c) sentence cannot stand.

The ACCA, 18 U.S.C. § 924(e), defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause" (referred to herein as the "ACCA residual clause"). *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012). The ACCA residual clause covers "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). In *Johnson*, the Supreme Court held that the ACCA residual clause is unconstitutionally vague. *Johnson*, 576 U.S. at ___, 135 S. Ct. at 2557-58, 2563. The Supreme Court clarified that, in holding that the ACCA residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.* at ___, 135 S. Ct. at 2563.

**\*2** Distinct from the sentence provisions in § 924(e)(1) of the ACCA, § 924(c)(1)(A) provides for a separate consecutive sentence if any person uses or carries a firearm during and in relation to a crime of violence or drug trafficking crime, or possesses a firearm in furtherance of such crimes, as follows:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A). For the purposes of § 924(c), § 924(c)(3)(A) and (B) define "crime of violence" as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). The former clause is referred to herein as the "use-of-force" clause and that later clause as the "§ 924(c)(3)(B) residual clause." Notably, the ACCA's elements clause only involves the use of force "against the person of another," while the use-of-force clause involves the use of force "against the person or property of another." *Compare* 18 U.S.C. § 924(e)(2)(B)(i), *with* 18 U.S.C. § 924(c)(3)(A) (emphasis added).

## II. SAINT FLEUR'S HOBBS ACT ROBBERY

Saint Fleur was charged, in the same Second Superseding Indictment, with one count of "Hobbs Act Robbery" (Count 4), in violation of 18 U.S.C. § 1951(a), and one count of using, carrying, and discharging a firearm during a crime of violence as set forth in Count 4 (Count 5), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(iii).

In that indictment, Count 4, the Hobbs Act robbery count, charged that Saint Fleur "did knowingly and unlawfully obstruct, delay and affect commerce ... by means of robbery, as the term[ ] ... 'robbery' [is] defined in Title 18, United States Code, Sections 1951(b)(1) and (b)(3), in that [Saint Fleur] did take United States currency from individuals at the Au Bon Gout Restaurant ... by means of actual and threatened force, violence, and fear of injury to said persons, in violation of Title 18, United States Code, Section 1951(a) and 2."

In that same indictment, Count 5, the § 924(c) count, charged that Saint Fleur "did knowingly use, carry and discharge a firearm during and in relation to a crime of violence, and did possess a firearm in furtherance of a crime of violence, which is a felony prosecutable in a court of the United States, specifically, a violation of Title 18, United States Code, Section 1951(a), *as set forth in Count[ ] ... 4 of the Second Superseding Indictment*, in violation Title 18, United States Code, Sections 924(a)(1)(A), 924(a)(1)(A)(iii), and 2." (emphasis added).

**\*3** Saint Fleur pled guilty to Counts 4 and 5.

As recently pointed out in *In re Pinder*, "[o]ur Court hasn't decided if *Johnson* applies to § 924(c)(3)(B)" and "the law is unsettled" as to whether *Johnson* invalidates sentences that relied on the § 924(c)(3)(B) residual clause. *In re Pinder*, ___ F.3d ___, No. 16-12084-J, 2016 U.S. App. LEXIS 10031, at \*2, 4 (11th Cir. June 2, 2016) (granting an application for leave to file a second or successive motion under § 2255(h) because determining whether *Johnson* invalidates the § 924(c)(3)(B) residual clause should be decided in the first instance by the district court). In this regard, we note that *Johnson* did not address the definition for "crime of violence" under § 924(c)(3), and, as shown above, the ACCA residual clause and the § 924(c)(3)(B) residual clause have somewhat different language.[1]

---

1   We also note that the ACCA § 924(e) sentence enhancement and the § 924(c) penalty each appear to serve a different statutory purpose. *Compare* 18 U.S.C. § 924(c) (providing for a consecutive term of imprisonment for defendants who use a firearm during a concurrent and simultaneous crime of violence or drug

trafficking crime), *with* 18 U.S.C. § 924(e) (providing for an enhanced term of imprisonment for a § 922(g)(1) conviction of a felon in possession of a firearm who had three past convictions for a violent felony or serious drug offense).

But we need not decide, nor remand to the district court, the § 924(c)(3)(B) residual clause issue in this particular case because even if *Johnson*'s rule about the ACCA residual clause applies to the § 924(c)(3)(B) residual clause, Saint Fleur's claim does not meet the statutory criteria for granting this § 2255(h) application. This is because Saint Fleur's companion conviction for Hobbs Act robbery, which was charged in the same indictment as the § 924(c) count, clearly qualifies as a "crime of violence" under the use-of-force clause in § 924(c)(3)(A). The indictment and the judgment make clear that Saint Fleur's § 924(c) sentence was not pursuant to the residual clause in subsection (B), but pursuant to the use-of-force clause in subsection (A), which requires that the crime during which the defendant was carrying the firearm be a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 924(c)(3)(A).

Specifically, Saint Fleur pled guilty to Count 4, which charged that Saint Fleur did affect commerce "by means of robbery," as the term robbery is defined in 18 U.S.C. § 1951(b)(1). "The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property. ..." *Id.* § 1951(b)(1). Count 4 further charged Saint Fleur with, and Saint Fleur pled guilty to, committing robbery "by means of actual and threatened force, violence, and fear of injury." Thus, the elements of Saint Fleur's § 1951 robbery, as replicated in the indictment, require the use, attempted use, or threatened use of physical force "against the person or property of another." *See id.*; 18 U.S.C. § 924(c)(3)(A).

**\*4** In sum, Saint Fleur pled guilty to using, carrying, and discharging a firearm during the Hobbs Act robbery set forth in Count 4, which robbery offense meets the use-of-force clause of the definition of a crime of violence under § 924(c)(3)(A). [2] This means Saint Fleur's sentence would be valid even if *Johnson* makes the § 924(c)(3)(B) residual clause unconstitutional.

2      In *Pinder*, this Court stated that the applicant's § 924(c) sentence "appear[ed] to have been based on a conviction for conspiracy to commit Hobbs Act robbery." *Pinder*, ___ F.3d at ___ n.1, 2016 U.S. App. LEXIS 10031, at *5 n.1. However, unlike *Pinder*, this case involves the actual commission of a Hobbs Act robbery.

Accordingly, because Saint Fleur has failed to make a *prima facie* showing of the existence of either of the grounds set forth in 28 U.S.C. § 2255, his application for leave to file a second or successive motion is hereby DENIED.

MARTIN, Circuit Judge, concurring:

I agree that Marckson Saint Fleur's 18 U.S.C. § 924(c) sentence looks to be valid despite Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551 (2015). I write separately to make two points. First, the majority's holding seems to hinge on the fact that Mr. Saint Fleur was convicted in federal court of robbery "by means of an actual and threatened force, violence, and fear of injury." In other cases where a different crime provided the basis for a § 924(c) sentence, there may still be "a sufficient showing of possible merit to warrant a fuller exploration by the district court." In re Holladay, 331 F.3d 1169, 1173 (11th Cir. 2003) (quotation omitted). Second, I am increasingly wary of deciding whether to grant leave to file a second or successive § 2255 petition based on a conclusion that the applicant's proposed claim will fail on the merits. All § 2255 requires us to do at this stage is "certif[y]" whether the applicant made "a prima facie showing" that the petition will "contain ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. §§ 2255(h), 2244(3)(C). We have therefore held that "the merits" of a proposed claim "are not relevant to whether [the applicant] can obtain permission to bring a second or successive § 2255 motion." In re Joshua, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (per curiam).

Forgoing a detailed merits review makes sense because our decisions at this stage are typically based on nothing more than a form filled out by a prisoner. Without any briefing or other argument made by a lawyer, we are ill equipped to decide the merits of the claim. On top of that, we are expected to decide these applications within 30 days of their filing. See 28 U.S.C. § 2244(b)(3)(D). "Things are different in the district court. That court has the benefit of submissions from both sides, has access to the record, has an opportunity to inquire into the evidence, and usually has time to make and explain a decision about whether the petitioner's claim truly does meet the § 2244(b) requirements." Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1358 (11th Cir. 2007).

Given those limitations, it would be much more prudent, I believe, to allow the District Court to decide the merits of these cases in the first instance. The losing party can then appeal that decision. And in that context, our precedent provides that the decision on the merits appeal would not be controlled one way or another by the "limited determination" made in the order granting leave to file the § 2255 petition. In re Moss, 703 F.3d 1301, 1303 (11th Cir. 2013). Certainly this would be a more appropriate posture for a court of appeals to decide the merits of a § 2255 petition. At the current stage, applicants haven't even filed § 2255 petitions. All they've filed is a form applying for permission to file a petition.[1]

[1] This form gives prisoners very little space to explain their claims. See http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/Form2255APP.pdf. The form also says: "Do not submit separate petitions, motions, briefs, arguments, etc." In this same context our court invited the government to file a brief "setting forth its views on the appropriate disposition of applications by federal defendants for leave to file second or successive motions under 28 U.S.C. § 2255(a) ... in light of the recent decision in Johnson." This brief is 47 pages long and the government has asked us to file it "on the docket in future cases where federal defendants seek leave to file a successive Section 2255 motion."

*5 Even if some applications seem easy to deny based on how the merits look, this won't always be true. Mr. Saint Fleur's § 924(c) sentence was based on the determination that his federal robbery conviction is a "violent felony." This crime was charged in the same indictment and then proved in the same way and at the same time as his § 924(c) violation. Unlike Mr. Saint Fleur, many prisoners seeking to file new § 2255 petitions are challenging sentences that were based on old convictions under state law. This means a decision on the merits of a proposed claim will turn on whether those state crimes are a "violent felony" under one of the definitions of that term that survived Johnson. And that inquiry depends in turn on how the state's courts interpreted the elements of the offense at the time the applicant was convicted. See United States v. Howard, 742 F.3d 1334, 1343 (11th Cir. 2014). Because of evolving state court rulings, this can mean that an offense will count as a "violent felony" if it was committed one year but not if it was committed the next.

Questions about how states apply their criminal statutes are rarely easy to answer. Again, the question can turn on the historical development of state law. It can also depend on changes in federal law. For example, the answer might depend on whether our precedent characterizing a particular state offense has been overruled by the Supreme Court, which has decided at least nine Armed Career Criminal Act (ACCA) cases in the past decade alone.[2] Adding to this difficulty, in many cases the only record of an applicant's earlier state conviction is the report prepared by a probation officer prior to sentencing (if that). But when we grant leave to file a § 2255 petition, prisoners must file their petitions in the court that sentenced them. That court will be far more familiar with the sentencing (or can more easily become familiar) than we will be within the 30 days that we are given to decide an application for leave. Also, in cases where a sentencing court didn't make a specific enough factual finding about which prior crimes the defendant committed (when a defendant committed many crimes that easily counted under ACCA's "residual clause," this specificity may not have been necessary), the District Court can examine the allegations and documentary evidence and make these findings anew. As an appellate court, we can't do that.

[2] See Johnson, 135 S. Ct. 2551; Descamps v. United States, __ U.S. __, 133 S. Ct. 2276 (2013); Sykes v. United States, 564 U.S. 1, 131 S. Ct. 2267 (2011); McNeill v. United States, 563 U.S. 816, 131 S. Ct. 2218 (2011); Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265 (2010); United States v. Rodriquez, 553 U.S. 377, 128 S. Ct. 1783 (2008); Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581 (2008); Logan v. United States, 552 U.S. 23, 128 S. Ct. 475 (2007); James v. United States, 550 U.S. 192, 127 S. Ct. 1586 (2007). This ongoing uncertainty is despite the fact that ACCA is over thirty years old. Non-ACCA cases may govern the merits of Johnson claims as well. See, e.g., Torres v. Lynch, __ U.S. __, 136 S. Ct. 1619 (2016); United States v. Castleman, __ U.S. __, 134 S. Ct. 1405 (2014); Moncrieffe v. Holder, __ U.S. __, 133 S. Ct. 1678 (2013).

Nothing in the habeas statute suggests that Congress expected us to decide the merits of a proposed claim when deciding whether to grant an application for leave to file a successive petition. When an appeals court panel combs a probation officer's unproven allegations to decide in the first instance if the applicant's sentence is lawful, it is deciding more than a "prima facie" case. In the somewhat analogous certificate of appealability (COA) context, the Supreme Court has said the COA statute's "threshold inquiry" is satisfied so long as "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). This "does not require a showing that the appeal will succeed." Id. at 337, 123 S. Ct. at 1039. It doesn't even mean that "some jurists would grant the

petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the ... case has received full consideration, that petitioner will not prevail." Id. at 338, 123 S. Ct. at 1040.[3]

[3] The Supreme Court recently granted a prisoner's petition for certiorari in a case that (just like Miller-El) asks if the Fifth Circuit's COA standard is too strict. See Buck v. Stephens, No. 15-8049, __ S. Ct. __, 2016 WL 531661 (U.S. June 6, 2016).

*6 To some extent the COA standard is more demanding than the standard for granting an application to file a second or successive petition. A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Permission to file a second or successive § 2255 petition merely requires "a prima facie showing" that petition will "contain ... a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." Id. §§ 2244(b)(3)(C), 2255(h)(2). By its plain text, the standard we are applying here invites even *less* of an inquiry into the merits of the proposed claim than the standard for a COA. Other courts agree that permission to file a second or successive § 2255 petition requires no inquiry into the merits of a proposed claim.[4] So do the leading practice manuals.[5]

[4] See, e.g., Ochoa v. Sirmons, 485 F.3d 538, 541 (10th Cir. 2007) ("This statutory mandate does not direct the appellate court to engage in a preliminary merits assessment. Rather, it focuses our inquiry solely on the conditions specified in § 2244(b) that justify raising a new habeas claim."); Goldblum v. Klem, 510 F.3d 204, 219 n.9 (3d Cir. 2007) (" '[S]ufficient showing of possible merit' in this context does not refer to the merits of the claims asserted in the petition." (alteration in original)).

[5] See, e.g., Means, Federal Habeas Manual § 11:85, at 1307 (2015 ed.) ("If the petitioner seeks to file a second or successive petition based on a new rule of law made retroactive on collateral review by the Supreme Court, the appellate court does not conduct any assessment of the merits of the underlying claim, preliminary or otherwise." (citations omitted)); Hertz & Liebman, 2 Federal Habeas Corpus Practice & Procedure § 28.3[d], at 1717 (7th ed. 2015) (explaining that "lack of merit" is "irrelevant" at the § 2244(b) authorization stage).

For decades, courts across the country imprisoned people in a way that we know after Johnson is illegal. The Supreme Court has also told us that prisoners are entitled to benefit from Johnson regardless of when they were sentenced. See Welch v. United States, __ U.S. __, __, 136 S. Ct. 1257, 1268 (2016). We owe these possibly wrongfully incarcerated people careful attention in deciding whether a district court can simply *look* at whether their sentence is wrong. Our court received about 600 Johnson-based § 2255(h) applications in the month of May alone. Nearly all those applications are pro se. Some were denied by split panels.[6] And nearly all the orders in these cases are not published on our public website or in case reporters, which means no lawyer is likely to ever see them.

[6] E.g., In re Payne, No. 16-12290 (11th Cir. June 6, 2016) (Martin, J., dissenting); In re Knight, No. 16-12132 (11th Cir. June 3, 2016) (Wilson, J., dissenting); In re Little, No. 16-11979 (11th Cir. May 27, 2016) (Martin, J., dissenting); In re McKinney, No. 16-11948 (11th Cir. May 26, 2016) (Martin, J., dissenting); In re Turner, No. 16-11914 (11th Cir. May 25, 2016) (Rosenbaum, J., dissenting); In re Smith, No. 16-11901 (11th Cir. May 24, 2016) (Wilson, J., dissenting); In re Cantillo, No. 16-11468 (11th Cir. May 2, 2016) (Martin, J., dissenting); In re Young, No. 16-11532 (11th Cir. Apr. 28, 2016) (Wilson, J., dissenting).

The stakes in these cases are very high, since many of these applicants claim they are in prison beyond the lawful limit of their sentence. And the margin for error is very low, since the "denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). Federal judges are rarely authorized to make legal decisions that are not subject to review. In the few circumstances for which Congress has given us this authority, we ought to wield it with extreme caution. While the merits of Mr. Saint Fleur's proposed claim seem easier than in some other cases, it is hard to be sure based on the limited record we have at this stage. I worry that our merits decisions in these cases may be shutting people out of court based on conclusions that are both "not relevant" at this stage and not reviewable. Joshua, 224 F.3d at 1282 n.2.

**All Citations**

--- F.3d ----, 2016 WL 3190539

**End of Document** © 2016 Thomson Reuters. No claim to original U.S. Government Works.

**2016 WL 3144735**
United States Court of Appeals,
Eighth Circuit.

United States of America, Plaintiff-Appellee

v.

Darryl House, Defendant-Appellant

No. 14-3011
|
Submitted: April 14, 2016
|
Filed: June 6, 2016

Appeal from United States District Court for the Eastern District of Missouri—Cape Girardeau

Before RILEY, Chief Judge, WOLLMAN and MURPHY, Circuit Judges.

**Opinion**

MURPHY, Circuit Judge.

*1 Darryl House displayed a handgun while robbing the Jayson Jewelers store and was found guilty of violating the Hobbs Act and brandishing a weapon during a crime of violence. The district court[1] sentenced House to life imprisonment. He appeals his sentence and several of the district court's rulings. We affirm.

---

1     The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

---

I.

On September 23, 2009 Darryl House and his associates robbed Jayson Jewelers in Cape Girardeau, Missouri. Kevin Stitt and Keyessence Fountain entered the store pretending to be a couple interested in wedding rings and started speaking with the clerk Debbie Drerup. House then entered the store and pointed a handgun at Drerup. Stitt placed handcuffs on Drerup, wrapped duct tape over the handcuffs and Drerup's eyes, and left her in the back room with the door closed. While Drerup was restrained, House, Stitt, and Fountain took jewelry produced outside Missouri and cash from the store before fleeing. After House and his associates had fled the scene, the police arrived and took DNA samples from the handcuffs.

About three years later Stitt was arrested in Tennessee. The Missouri highway patrol crime laboratory notified the Cape Girardeau police department that his DNA sample matched one taken from Jayson Jewelers on the day of the robbery. Stitt subsequently admitted that he had robbed the store in 2009 and identified House as his associate who had carried the handgun during the robbery.

House was charged with interfering with interstate commerce by aiding and abetting a robbery of a business, in violation of the Hobbs Act, 18 U.S.C. § 1951, and with brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). During jury selection the government used one of its peremptory strikes on juror 18, the only black member of the jury panel. House objected to the strike and raised a Batson challenge, see Batson v. Kentucky, 476 U.S. 79, 84 (1986), but the district court accepted the prosecution's justification for striking the juror. During the trial the parties stipulated to the interstate nexus element of the Hobbs Act charge. Several witnesses testified for the prosecution, including Stitt and the clerk Drerup who identified House as the person who pointed the handgun at her during the robbery. The jury convicted House on both counts.

The presentence investigation report indicated that House was subject to a mandatory life sentence for his Hobbs Act violation since he had at least two prior felony convictions for crimes of violence — a 2001 conviction for aggravated robbery in Tennessee and a 2006 conviction for aggravated robbery in Illinois. According to the report, House's guideline range for possessing a firearm during the robbery was seven years to life. The district court overruled his objections to the report and sentenced him to life imprisonment for his Hobbs Act violation and a consecutive seven years for brandishing a firearm. House appeals his sentence and several of the court's rulings.

II.

*2 We review Batson rulings for clear error, according great deference to the district court's findings, and "keeping in mind that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the party opposing the strike." United States v. Maxwell, 473 F.3d 868, 871 (8th Cir. 2007) (internal quotation marks omitted). "If a party makes a prima facie showing that a peremptory challenge is race based, the proponent must show a race

neutral justification to overcome the objection." United States v. Ellison, 616 F.3d 829, 832 (8th Cir. 2010). The district court then determines whether the objecting party has shown purposeful discrimination. Id.

The district court did not clearly err by overruling House's Batson challenge. The government claimed that its race neutral justifications for striking juror 18, the sole potential black juror, were that he had refused to make eye contact with the attorneys or the judge, had slouched in his chair and appeared disinterested in the trial, and had been the only prospective juror not to list an occupation or work history on the juror information sheet. "[D]emeanor and body language" may serve as legitimate, race neutral reasons to strike a potential juror. Maxwell, 473 F.3d at 872. A venire member's "nearly empty questionnaire" may also be a valid, race neutral reason to strike that person. See United States v. Carter, 481 F.3d 601, 610 (8th Cir. 2007), rev'd on other grounds, 554 U.S. 237 (2008). Even though the district judge had not personally detected disinterest by the prospective juror, he was permitted to credit the government's observations in overruling defendant's Batson challenge. See Ellison, 616 F.3d at 832.

III.

House claims that the Hobbs Act is unconstitutional on its face because Congress exceeded the legislative power granted it under the Commerce Clause when it passed this statute. We review constitutional challenges de novo. United States v. Foster, 443 F.3d 978, 981 (8th Cir. 2006). House argues that the Commerce Clause and the Tenth Amendment prohibit the federal government from making robbery of a local store a federal crime, but the Hobbs Act contains an express nexus requiring the charged criminal conduct to affect interstate commerce. See, e.g., United States v. Vong, 171 F.3d 648, 654 (8th Cir. 1999). Congress has the constitutional authority to pass such legislation, and House's constitutional challenge to the Hobbs Act thus fails.

House also argues that his robbery of Jayson Jewelers was not unlawful under the Hobbs Act because it did not obstruct, delay, or affect interstate commerce. See 18 U.S.C. § 1951. The federal jurisdictional requirement in the Hobbs Act is satisfied however when a robbery depletes the assets of a business engaged in interstate commerce. See United States v. Farmer, 73 F.3d 836, 843 (8th Cir. 1996). The robbery here satisfies this requirement because the stolen jewelry had been made outside of Missouri and shipped to a store in Missouri where it was offered for sale. See Vong, 171 F.3d at 654. House's robbery of Jayson Jewelers thus met the Hobbs Act jurisdictional requirement.

IV.

House argues that the district court erred by imposing a mandatory life sentence under 18 U.S.C. § 3559(c). Section 3559 mandates a life sentence for a defendant who commits a serious violent felony and already has at least two such convictions. We review statutory construction and constitutional challenges de novo and factual findings for clear error. See Foster, 443 F.3d at 981; United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994).

*3 House argues that a Hobbs Act robbery does not qualify as a "serious violent felony" under 18 U.S.C. § 3559(c) so his life sentence for his crime was improper. "[S]erious violent felony" is defined in § 3559(c) as an "offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). Robbery is defined in the Hobbs Act as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). The district court thus did not err by ruling that House's robbery conviction was a "serious violent felony" under 18 U.S.C. § 3559(c)(2)(F)(ii). Farmer, 73 F.3d at 842.

House also claims that his life sentence is unlawful under 18 U.S.C. § 924(c)(3)(A), which provides penalties for "crime[s] of violence" or felonies that have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." He contends that Hobbs Act robbery is not a crime of violence under this statutory definition. The district court sentenced House to life imprisonment under § 3559(c), however, not § 924(c). Furthermore, even if we analyzed the lawfulness of his sentence under § 924(c), we would be bound by Farmer, 73 F.3d at 842, where we concluded that Hobbs Act robbery has "as an element the use, attempted use, or threatened use of physical force against the person of another."

According to House, his 2006 Illinois conviction for aggravated robbery does not qualify as a prior serious violent felony. Robbery is however one of the enumerated serious violent felonies provided in § 3559(c)(2)(F)(i). Under § 3559(c), an offense qualifies as robbery if it contains the elements of generic robbery which is defined as aggravated larceny, or the misappropriation of property under circumstances involving immediate danger to a person. See United States v. Becerril–Lopez, 541 F.3d 881, 891 (9th Cir. 2008); 3 W. LaFave, Substantive Criminal Law § 20.3(e) (2d ed. 2003). The definition of aggravated robbery in the Illinois statute under which House was convicted was the unlawful taking of personal property from a person or in the presence of another by force or threat of force while "indicating verbally or by [ ] action" that he is armed with a dangerous weapon. 720 Ill. Comp. Stat. 5/18-5 (2006). We conclude that House's 2006 state conviction satisfies the generic definition of robbery and therefore qualifies as a prior serious violent felony. See Farmer, 73 F.3d at 842.

Another reason House argues his Illinois robbery conviction does not qualify as a serious violent felony is because he claims he did not use a dangerous weapon when he committed that crime. According to § 3559(c)(3)(A), robbery cannot be a predicate offense if clear and convincing evidence shows that it did not result in death or serious bodily injury and "no firearm or other dangerous weapon was used" or threatened to be used. 18 U.S.C. § 3559(c)(3)(A). Here, House and his uncle submitted affidavits stating that the conduct underlying his aggravated robbery conviction did not involve the use or threatened use of a dangerous weapon. To have been convicted of the Illinois offense of aggravated robbery, however, House had to have indicated to the victim that he was "armed with a firearm or other dangerous weapon." See 720 Ill. Comp. Stat. 5/18-5 (2006). The district court therefore did not err by determining that his Illinois robbery conviction qualified as a prior serious violent felony.

House also challenges the constitutionality of § 3559(c) because he claims it places the burden on him to show that his prior conviction does not qualify as a predicate offense. The burden shifting provision in § 3559(c)(3)(A) is not unconstitutional, however, because "Congress has the power to place on a defendant the burden of establishing an affirmative defense that is not an essential element of the crime." United States v. Davis, 260 F.3d 965, 970 (8th Cir. 2001).

*4 Appellant also claims that his Tennessee conviction in 2001 for aggravated robbery does not qualify as a second requisite predicate offense because this conviction was unconstitutional as he cannot recall meeting with an attorney before his hearing on the state's motion to transfer him from juvenile to adult criminal court. His argument fails because "[t]he Constitution only requires federal [sentencing] courts to permit a collateral attack on an earlier state conviction ... [if] the defendant asserts the state court violated [his] right to appointed counsel." United States v. Jones, 28 F.3d 69, 70 (8th Cir. 1994). To establish this claim a defendant must allege a "complete lack of representation by counsel during earlier state proceedings." Id. Because House's argument is an ineffective assistance of counsel claim, his 2001 Tennessee conviction cannot be collaterally attacked here. See United States v. Walker, 202 F.3d 1066, 1067 (8th Cir. 2000). Since House had at least two prior violent felony convictions, the district court properly sentenced him to life imprisonment under § 3559.

House argues in addition that Alleyne v. United States, 133 S. Ct. 2151 (2013), and the Sixth Amendment require that a jury rather than a judge make any finding that he had been previously convicted of at least two serious violent felonies since such a fact could increase the maximum penalty to which he was exposed. In Almendarez–Torres v. United States, 523 U.S. 224, 226–27 (1998), the Supreme Court explained however that recidivism is not an element of an offense that must be submitted to a jury, and the Alleyne Court, 133 S. Ct. at 2160 n.1, did not revisit that conclusion. United States v. Roberts, 763 F.3d 947, 949 (8th Cir. 2014). We conclude that the district court properly sentenced House to life imprisonment under 18 U.S.C. § 3559(c).

V.

House also appeals some evidentiary rulings. He argues that the district court violated his constitutional rights by denying his motion to suppress Stitt's trial testimony. When reviewing the denial of a motion to suppress, we review factual findings for clear error and legal conclusions de novo. United States v. Smith, 720 F.3d 1017, 1019 (8th Cir. 2013). After trial, "we examine the entire record, not merely the evidence adduced at the suppression hearing." United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks omitted). House contends that Stitt's trial testimony should have been suppressed because it was a result of his involuntary confession.

Although House does not have standing to vindicate Stitt's right against self-incrimination, he has standing to raise a Fifth Amendment claim to protect his own right to a fair trial. See United States v. Dowell, 430 F.3d 1100, 1107 (10th Cir. 2005); United States v. Gonzales, 164 F.3d 1285, 1289 (10th Cir. 1999). Where a defendant seeks to exclude witness testimony because it is a result of a coerced confession, he has the burden to prove that the earlier confession was coerced and led to false trial testimony. See Dowell, 430 F.3d 1107. Here, House's Fifth Amendment challenge fails because he did not show a "serious factual dispute" about whether Stitt was coerced to confess or whether Stitt's confession actually affected the reliability of his trial testimony. See id. at 1108. Moreover, about two years had passed between Stitt's interrogation and his trial testimony, and "[w]ith this passage of time ... [the alleged] coercive atmosphere of the interrogation had certainly dissipated." See Williams v. Woodford, 384 F.3d 567, 595 (9th Cir. 2002). The district court thus did not err in denying House's motion to suppress Stitt's trial testimony.

We review House's remaining evidentiary arguments for plain error because he did not raise them below. United States v. Peneaux, 432 F.3d 882, 891 (8th Cir. 2005). House claims that the clerk Debbie Drerup was only able to identify him at trial because a police detective had told her that House was "the guy" who robbed the store and she had seen House in his prison uniform during earlier proceedings. House argues these incidents were "impermissibly suggestive," and under the totality of the circumstances they created "a very substantial likelihood of irreparable misidentification." Manson v. Brathwaite, 432 U.S. 98, 107, 116 (1977) (internal quotation marks omitted); see Graham v. Solem, 728 F.2d 1533, 1541–42 (8th Cir. 1984) (en banc).

*5 Even assuming that it was "impermissibly suggestive" for Drerup to have seen House in his prison clothes during the state court proceedings and for the detective to refer to House as "the guy" who committed the robbery, this did not create "a very substantial likelihood of irreparable misidentification" under the totality of circumstances. See Manson, 432 U.S. at 113. Drerup testified that she had a clear enough view of House during the robbery to describe his physical characteristics accurately, and the district court did not plainly err by permitting her to identify him in court. Moreover, any potential error was harmless because Stitt corroborated Drerup's testimony by also testifying about House's role in the robbery. See Williams v. Armontrout, 877 F.2d 1376, 1381 (8th Cir. 1989).

House finally argues that the district court erred by admitting a motel receipt with his name and driver license identification number on it because there was insufficient authenticating evidence. The receipt was used by the government to demonstrate that House stayed at a hotel near Jayson Jewelers the night before its robbery. We conclude that the receipt was sufficiently authenticated because the motel record custodian, Melinda Schaffer, testified that she had obtained the receipt from the company's records. See Fed. R. Evid. 901(b)(1). House claims that the court erred by permitting Schaffer to authenticate the motel receipt because she was not present when the document was created, but the document would also have been admissible under Rule 803(6) as a record of regularly conducted activity. See United States v. Wigerman, 549 F.2d 1192, 1194 (8th Cir. 1977) (per curiam); United States v. Franks, 939 F.2d 600, 602 (8th Cir. 1991). The district court did not plainly err by permitting Schaffer to testify and admitting the motel receipt into evidence.

VI.

For these reasons the judgment of the district court is affirmed.[2]

[2] The government's motion to supplement the record is denied as moot.

**All Citations**

--- F.3d ----, 2016 WL 3144735