# 14-3872-cr

_____
_____

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellee,

-against-

ELVIN HILL,

Defendant-Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

**APPELLANT'S PETITION FOR PANEL REHEARING AND/OR
REHEARING *EN BANC***

_____

FEDERAL DEFENDERS OF NEW YORK
APPEALS BUREAU
52 Duane Street, 10th Floor
New York, New York 10007
Tel.: (212) 417-8742
Email: Yuanchung_Lee@fd.org

YUANCHUNG LEE
MATTHEW B. LARSEN,
Of Counsel

_____
_____

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

STATEMENT OF FACTS ........................................................................2

REASONS FOR GRANTING REHEARING ...........................................3

    I.    The Panel's Ruling Upholding § 924(c)'s Residual Clause
        Conflicts with 2015 *Johnson* and *Welch* ...............................................3

    II.   The Panel's Ruling on § 924(c)'s Force Clause
        Conflicts with 2010 *Johnson* and *Jones* ................................................9

CONCLUSION ......................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Dimaya v. Lynch*,
803 F.3d 1110 (9th Cir. 2015) ...................................................... 7, 8

*Johnson v. United States*,
559 U.S. 133 (2010) ...................................................... 1, 9, 10, 12

*Johnson v. United States*,
135 S. Ct. 2551 (2015) .............................................................. *passim*

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ......................................................................... 9

*Matthews v. United States*,
682 F.3d 180 (2d Cir. 2012) ......................................................... 14

*NOW, Inc. v. Scheidler*,
396 F.3d 807 (7th Cir. 2005) ......................................................... 12

*Roberts v. Holder*,
745 F.3d 928 (8th Cir. 2014) .......................................................... 8

*Shuti v. Lynch*,
___ F.3d ___, 2016 WL 3632539 (6th Cir. July 7, 2016) ............................ 6, 8

*United States v. Acosta*,
470 F.3d 132 (2d Cir. 2006) ........................................................... 4

*United States v. Aguon*,
851 F.2d 1158 (9th Cir. 1988) (en banc) ........................................... 12

*United States v. Alewelt*,
532 F.2d 1165 (7th Cir. 1976) ........................................................ 14

*United States v. Ayala*,
601 F.3d 256 (4th Cir. 2010) .......................................................... 8

*United States v. Bell*,
158 F. Supp. 3d 906 (N.D. Cal. 2016) ............................................. 14

*United States v. Castleman*,
134 S. Ct. 1405 (2014) ............................................................. 9, 10

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Castro-Vazquez,*
  802 F.3d 28 (1st Cir. 2015) ........................................................... 12

*United States v. DePass,*
  510 F. App'x 119 (3d Cir. 2013) ................................................... 14

*United States v. Eason,*
  ___ F.3d ___, 2016 WL 3769477 (8th Cir. July 14, 2016) ............. 11

*United States v. Gardner,*
  823 F.3d 793 (4th Cir. 2016) ........................................................ 11

*United States v. Ivezaj,*
  568 F.3d 88 (2d Cir. 2009) .............................................................. 4

*United States v. Jones,*
  ___ F.3d ___, 2016 WL 3923838 (2d Cir. July 21, 2016) .................... 1, 11, 13

*United States v. Keelan,*
  786 F.3d 865 (11th Cir. 2015) ......................................................... 8

*United States v. Nedley,*
  255 F.2d 350 (3d Cir. 1958) .......................................................... 12

*United States v. Parnell,*
  818 F.3d 974 (9th Cir. 2016) ......................................................... 11

*United States v. Rede-Mendez,*
  680 F.3d 552 (6th Cir. 2012) ......................................................... 10

*United States v. Rodriguez,*
  925 F.2d 1049 (7th Cir. 1991) ....................................................... 13

*United States v. Sanchez-Espinal,*
  762 F.3d 425 (5th Cir. 2014) ........................................................... 8

*United States v. Silva,*
  608 F.3d 663 (10th Cir. 2010) ....................................................... 10

*United States v. Snype,*
  441 F.3d 119 (2d Cir. 2006) .......................................................... 14

*United States v. Vivas-Ceja,*
  808 F.3d 719 (7th Cir. 2015) ....................................................... 7, 8

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Yanes-Cruz,*
  634 F. App'x 247 (11th Cir. 2015) .................................................................. 10

*United States v. Zappola,*
  677 F.2d 264 (2d Cir. 1982) .......................................................................... 12

*Welch v. United States,*
  136 S. Ct. 1257 (2016) ............................................................................. 1, 5, 7

## Federal Statutes

18 U.S.C. § 16 ........................................................................................ 2, 8, 9

18 U.S.C. § 924(c) ...................................................................................... *passim*

18 U.S.C. § 924(j) .......................................................................................... 2

18 U.S.C. § 1951 ........................................................................................... 2

18 U.S.C. § 2113 .......................................................................................... 14

## State Statutes

N.Y. Penal Law § 160.00 .............................................................................. 13

N.Y. Penal Law § 2121 (1946) ...................................................................... 12

N.Y. Penal Law § 2122 ................................................................................ 12

## **INTRODUCTION**

This case should be reheard because the Panel's ruling (Exhibit A) involves questions of exceptional importance and conflicts with *Johnson v. United States*, 135 S. Ct. 2551 (2015), *Welch v. United States*, 136 S. Ct. 1257 (2016), *Johnson v. United States*, 559 U.S. 133 (2010), and *United States v. Jones*, ___ F.3d ___, 2016 WL 3923838 (2d Cir. July 21, 2016).

First, the Panel's ruling that the residual (or "risk-of-force") clause at 18 U.S.C. § 924(c)(3)(B) survived 2015 *Johnson* is wrong. *Johnson* held the neighboring residual clause at § 924(e)(2)(B)(ii) is unconstitutionally vague for a reason equally present here: applying the categorical approach to try to decide what qualifies as a sufficiently risky hypothetical crime "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." 135 S. Ct. at 2558. *Welch* confirmed that *Johnson*'s problem with the residual clause was interpretive, not textual: it failed because "the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense." 136 S. Ct. at 1262. As the same approach governs § 924(c) – a provision used to greatly extend scores of sentences – its residual clause also fails the vagueness test.

Second, the Panel contradicted 2010 *Johnson*, and this Court's decision in *Jones*, by ruling the oft-charged Hobbs Act robbery fits § 924(c)'s force clause. A crime under that clause requires "violent" force but Hobbs Act robbery does not: it's modeled on New York robbery and neither offense requires "violent" force.

In sum, the Panel's answers to the questions of broad significance here are contrary to controlling precedent. Rehearing is warranted.

## STATEMENT OF FACTS

Elvin Hill was convicted of violating 18 U.S.C. § 924(j), which requires an underlying "crime of violence"— defined by § 924(c)(3) as a felony that

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The Panel held Hobbs Act robbery, 18 U.S.C. § 1951, qualifies as a crime of violence under both subsection (A), called the force clause, and subsection (B), called the residual clause (or, as the Panel referred to it, the "risk-of-force clause").

Noting that the "question whether Hobbs Act robbery constitutes a crime of violence under the force clause is a matter of first impression in our Circuit," Exhibit A at 11, the Panel noted 2010 *Johnson*'s holding – the force required by the clause is "violent" force – and said such force "means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property." *Id*. at 16 (emphasis in original). Rejecting Hill's argument that "violent" force requires a "particular quantum of force" that Hobbs Act robbery does not mandate, *id.* at 15, the Panel said Hobbs Act robbery qualifies because literally any force "capable of causing physical pain or injury" is enough. *Id*. at 16.

"Even if Hobbs Act robbery did not qualify as a crime of violence" under the force clause, the Panel further held, "such robbery unequivocally qualifies" under the residual clause, which is not "void for vagueness." *Id*. at 22. The Panel distinguished 2015 *Johnson*, which invalidated the neighboring residual clause at

§ 924(e)(2)(B)(ii), on the basis of textual differences between the clauses.

Thus sustaining § 924(c)'s residual clause and also deeming Hobbs Act robbery a crime of violence under the force clause, the Panel denied Hill relief.

## REASONS FOR GRANTING REHEARING

### I.   The Panel's Ruling Upholding § 924(c)'s Residual Clause Conflicts with 2015 *Johnson* and *Welch*

In 2015 *Johnson*, the Court held the residual clause of the Armed Career Criminal Act ("ACCA"), codified at § 924(e)(2)(B)(ii), is void for vagueness.

ACCA's clause covered any felony that "involves conduct that presents a serious potential risk of physical injury to another."  § 924(e)(2)(B)(ii).  "Deciding whether the residual clause covers a crime," *Johnson* noted, "requires a court to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction presents a serious potential risk of physical injury." 135 S. Ct. at 2557 (citation omitted).  Given this categorical "ordinary case" approach, which does not ask "'how an individual offender might have committed [a crime] on a particular occasion,'" *Johnson* identified "[t]wo features of the residual clause [that] conspire to make it unconstitutionally vague." *Id.*

First, the clause gave no hint, and thus left "grave uncertainty[,] about how to estimate the risk posed by a crime. . . .  How does one go about deciding what kind of conduct the 'ordinary case' of a crime involves?  'A statistical analysis of the state reporter?  A survey?  Expert evidence?  Google?  Gut instinct?'. . . .  The residual clause offers no reliable way to choose between these competing accounts of what 'ordinary' [crimes] involve[]." *Id.* at 2557-58.

3

Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction" of the hypothetical "ordinary case." *Id*. at 2558.

"By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony," 2015 *Johnson* concluded, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id*.

Section 924(c)'s residual clause has the same two interpretive infirmities. The clause covers any felony that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B). The categorical approach applies to this inquiry, *see United States v. Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009); *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir.2006), and the first *Johnson* problem thus immediately rears its head: there is no indication what an "ordinary case" of any crime entails or "how to estimate the risk," *Johnson*, 135 S. Ct. at 2557, that "physical force against the person or property of another may be used."

Compounding this difficulty is the second *Johnson* problem: uncertainty over "how much risk it takes" to deem the offense a "crime of violence." *Id*. at 2558. The *Johnson* Court found it impossible to intelligently apply ACCA's "imprecise 'serious potential risk' standard to . . . a judge-imagined abstraction," *id*. at 2558, and the same goes for applying § 924(c)'s equally-squishy "substantial risk" standard to the chimerical "ordinary case" of a hypothetical crime.

As *Johnson* explained, the problem with ACCA's residual clause wasn't that it used the words "serious potential risk" rather than "substantial risk," or risk of "physical injury" instead of "physical force."  The deficiency was interpretive:

> [W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct. . . .  The residual clause, however, requires application of the 'serious potential risk' standard to an idealized ordinary case of the crime.  Because 'the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect,' this abstract inquiry offers significantly less predictability than one '[t]hat deals with the actual, not with an imaginary condition other than the facts.'

*Id*. at 2561 (citation omitted).

The Court made this crystal clear in *Welch*: "The residual clause failed not because it adopted a 'serious potential risk' standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense. . . .  [T]he 'indeterminacy of the wide-ranging inquiry' made the residual clause more unpredictable and arbitrary in its application than the Constitution allows."  136 S. Ct. at 1262.

Because § 924(c)'s residual clause poses the same interpretive problems as ACCA's, it is unconstitutionally vague as well.

The Panel's contrary view is based on textual differences between the two residual clauses.  But as *Johnson* and *Welch* held, it was the "ordinary case" hypothesizing required by the categorical approach – not the text – that rendered ACCA's residual clause unconstitutionally vague.  As the identical approach is required for § 924(c), its residual clause shares the same fate.

Citing the text of § 924(c)'s residual clause, the Panel said "[a]ssessing whether a felony, by its nature, poses a substantial risk that 'physical force against the person or property of another may be used' . . . is a far narrower and simpler undertaking than divining whether a felony . . . 'otherwise involves conduct that presents a serious potential risk of physical injury to another.'" Exhibit A at 25 (citations omitted). The Panel did not illustrate, however, and upon inquiry it is not "far narrower and simpler" to tell whether a hypothetical crime poses a risk of force as opposed to injury: the two are often both present or not, and the Panel offered no means of gauging the risk of either. *See also Johnson*, 135 S. Ct. at 2558 ("It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction."); *Shuti v. Lynch*, ___ F.3d ___, 2016 WL 3632539, at *7 (6th Cir. July 7, 2016) ("Even though [§ 16(b), identical to § 924(c)(3)(B),] refers to the risk that 'force may be used,' rather than the risk that potential 'injury might occur,' *Johnson* is equally applicable. The reason is simple: a marginally narrower abstraction is an abstraction all the same.").

The Panel emphasized that § 924(c)'s residual clause "contains no mystifying list of offenses and no indeterminate 'otherwise' phraseology." Exhibit A at 26. The Panel called this "a defining feature of the ACCA's residual clause," "a key aspect" of the clause, and "the prime cause of uncertainty." *Id*.

This misreads 2015 *Johnson*, however, as *Welch* confirms: "The residual clause failed [] because . . . the categorical approach require[s] courts to assess the hypothetical risk posed by an abstract generic version of the offense." 136 S. Ct. at

6

1262.  That is "the heart of" *Johnson*: "the two aspects of the residual clause's categorical approach – the ordinary-case determination and the risk assessment – 'conspire' to make the clause unconstitutionally vague."  *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015).  So too with § 924(c).  *See also id.* ("[E]numeration of specific crimes did nothing to clarify the quality or quantity of risk necessary to classify offenses under the statute.  The list itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague."); *Dimaya v. Lynch*, 803 F.3d 1110, 1118 (9th Cir. 2015) (Though list of offenses perhaps "added to the uncertainty, the fundamental reason for the Court's holding was the residual clause's 'application of the "serious potential risk" standard to an idealized ordinary case.'") (citation omitted).

     *Johnson* itself noted the enumerated crimes were not the problem: "Common sense has not even produced a consistent conception of the degree of risk posed by each of the four enumerated offenses; there is no reason to expect it to fare any better with respect to thousands of unenumerated crimes."  135 S. Ct. at 2559.

     Indeed, the lack of listed crimes makes § 924(c)'s clause "*more* vague than [ACCA's] . . . .  ACCA's enumerated examples . . . provide at least *some* guidance as to the sort of offenses Congress intended for the provision to cover.  Section [924(c)], by contrast, provide[s] no such guidance at all."  *Dimaya*, 803 F.3d at 1118 n.13 (first emphasis added; citation omitted).

     Finally, the Panel noted that, compared to ACCA's residual clause, § 924(c)'s clause has no equivalent "history of 'repeated attempts and repeated failures' on the part of the courts 'to craft a principled and objective standard' out

7

of its terms." Exhibit A at 30 (citation omitted). As *Johnson* explained, however, prior confusion over a statute's meaning may indeed "confirm" its indeterminacy, 135 S. Ct. at 2558, but that is not a prerequisite for a finding of vagueness. "That [ACCA's] residual clause had persistently 'eluded stable construction' was *additional evidence* that served to 'confirm its hopeless indeterminacy.' The chaotic state of the caselaw was not a *necessary condition* to the Court's vagueness determination." *Vivas-Ceja*, 808 F.3d at 723 (emphasis added; citations omitted). *See also Dimaya*, 803 F.3d at 1119 (same); *Shuti*, ___ F.3d ___, 2016 WL 3632539, at *8 ("[T]he government mistakes a correlation for causation; conflicting judicial interpretations only provide *ex post* 'evidence of vagueness.'").

Moreover, as courts use the same body of law to construe ACCA, § 16, and § 924(c) – *see* Exhibit A at 19 n.12; *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010); *United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015); *Roberts v. Holder*, 745 F.3d 928, 931 (8th Cir. 2014); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) – the confusion over ACCA reflects confusion over § 16 and § 924(c) even without an explicit chorus of criticism.

In sum, it was the process of "combining indeterminacy about how to measure the risk" of the elusive "ordinary case" of a hypothetical crime with "indeterminacy about how much risk it takes" for the abstraction to "qualify as a violent felony" that rendered ACCA's residual clause unconstitutionally vague. *Johnson*, 135 S. Ct. at 2558. Because that same approach, which "produces more unpredictability and arbitrariness than the Due Process Clause tolerates," *id*., governs § 924(c), its residual clause is likewise void.

8

## II.     The Panel's Ruling on § 924(c)'s Force Clause Conflicts with 2010 *Johnson* and *Jones*

In another case called *Johnson*, the Supreme Court interpreted ACCA's force clause in 2010 to require "*violent* force— that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140, (2010) (emphasis in original). The Court described this force as "substantial" and "extreme," akin to that used to commit "'murder'" and "'forcible rape.'" *Id*. (citation omitted). The Court relied on *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which construed § 16's force clause (a clause identical to § 924(c)'s force clause) and admonished: "'[W]e cannot forget that we ultimately are determining the meaning of the term 'crime of violence,'" which "'suggests a category of violent, active crimes.'" *Johnson*, 559 U.S. at 140 (quoting *Leocal*, 543 U.S. at 11).

The Panel "assume[d]" 2010 *Johnson* applies to § 924(c)'s force clause, Exhibit A at 15 n.9, and rightly so. Courts uniformly treat the force clauses as materially indistinguishable, and use cases construing one clause to determine the reach of the other. *See, e.g.*, *Johnson* 559 U.S. at 140 (relying on § 16(a), identical to § 924(c)(3)(A), to construe ACCA force clause); *United States v. Castleman*, 134 S. Ct. 1405, 1411 n.4 (2014) (acknowledging *Johnson*'s use of §16(a) to interpret ACCA); *Karimi v. Holder*, 715 F.3d 561, 566 n.5 (4th Cir. 2013) ("The *Johnson* Court noted the similarity between the terms 'violent felony' in ACCA and 'crime of violence' in § 16 . . . . Indeed, it relied on *Leocal*'s interpretation of § 16 in reaching its ACCA holding. Accordingly, we rely on *Johnson*" to interpret § 16(a).); *United States v. Rede-Mendez*, 680 F.3d 552, 562 n.2 (6th Cir. 2012)

(same); *United States v. Ramon Silva*, 608 F.3d 663, 675 (10th Cir. 2010) (same); *United States v. Yanes-Cruz*, 634 F. App'x 247, 252 (11th Cir. 2015) (same).[1]

Though correctly applying 2010 *Johnson*'s "violent force" requirement to § 924(c), the Panel erred by reading "violent force" to mean "no more nor less than force capable of causing physical pain or injury." Exhibit A at 16. This literal reading is contrary to *Johnson* itself, as even "the slightest unwanted physical touch," 559 U.S. at 137, is "capable" of causing pain if the person touched has recently suffered burns, broken bones, or is similarly infirm. *Johnson* squarely held the "slightest unwanted physical touch" is not "*violent* force."

Rather, "*violent* force" is "substantial" and "extreme." *Id.* at 140. The Court later elaborated: "Minor uses of force may not constitute 'violence' in the generic sense. For example, in an opinion that we cited with approval in *Johnson*, the Seventh Circuit noted that it was hard to describe . . . as violence a squeeze of the arm that causes a bruise." *Castleman*, 134 S. Ct. at 1412 (citation and internal punctuation omitted). Likewise, "acts that one might not characterize as 'violent' in a nondomestic context," because they are "relatively minor," include "'pushing, grabbing, shoving, slapping, and hitting.'" *Id.* at 1411-12 (citation omitted). The

---

[1]    The one textual difference between ACCA's and § 924(c)'s force clauses – ACCA covers force against people, whereas § 924(c) covers force against people and property – confirms that the force must be violent; otherwise, even the slightest force used to, say, "forge[] . . . or alter[] any obligation or other security of the United States," 18 U.S.C. § 471, would subject a defendant to a minimum consecutive term of 5 years in prison if he happened to possess a gun during the forgery. That reading of § 924(c), which makes forgery a "crime of violence," is not reasonable. *See United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A statute should be interpreted in a way that avoids absurd results.").

Panel overlooked these passages from *Castleman*, quoting instead Justice Scalia's concurrence.  Exhibit A at 16.

In the wake of 2010 *Johnson*, every circuit (including this one) that has addressed the question has rejected the Panel's reading that "violent" force means literally any force "capable of causing physical pain or injury."  *See United States v. Jones*, ___ F.3d ___, 2016 WL 3923838, at *5 (2d Cir. July 21, 2016) (New York robbery is not a crime of violence because it can be committed by "'form[ing] a human wall'" to facilitate the theft, "'bump[ing]'" someone to get his money, or "'tugg[ing]'" to overcome the victim's resistance, none of which "involve[s] the use of 'violent force.'") (citations omitted); *United States v. Eason*, ___ F.3d ___, 2016 WL 3769477, at *6 (8th Cir. July 14, 2016) (As Arkansas robbery can be committed by "'jerking the door from [a victim], cornering [her] in the back hallway and grabbing her dress,'" one "cannot conclude that the degree of physical force required . . . rises to the level of physical force required to establish a crime of violence for ACCA purposes."); *United States v. Gardner*, 823 F.3d 793, 804 (4th Cir. 2016) (North Carolina robbery is not a violent felony because it can be committed by "push[ing] shoulder of an electronics store clerk, causing her to fall onto shelves," which "does not necessarily include the use, attempted use, or threatened use of 'force capable of causing physical pain or injury.'"); *United States v. Parnell*, 818 F.3d 974, 980 (9th Cir. 2016) ("bumping," "jolting," "grabbing" and engaging in a "minor scuffle" are not examples of "violent" force); *United States v. Castro-Vazquez*, 802 F.3d 28, 37-38 (1st Cir. 2015) (The "slightest use of force . . . fall[s] short of the [] requirement that the offense include an

element of 'physical force,' which is defined as 'violent force'" and "connotes a 'substantial degree of force.'") (citations omitted).

The Panel's reading of "violent" force conflicts with *Johnson*, *Castleman* and all the circuit decisions above. "Violent" force is "substantial" and "extreme," *Johnson*, 559 U.S. at 140, not any force "capable" of causing pain or injury. And as Hobbs Act robbery does not require "violent" force, it is not a crime of violence.

"'Robbery' under the Hobbs Act is . . . robbery as defined by the New York Penal Laws and construed by the courts of that State." *United States v. Nedley*, 255 F.2d 350, 357 (3d Cir. 1958)*; see also United States v. Zappola*, 677 F.2d 264, 268 (2d Cir. 1982) ("'The bill contains definitions of robbery and extortion which follow the definitions contained in the Laws of the State of New York.'") (citation omitted); *United States v. Aguon*, 851 F.2d 1158, 1164 (9th Cir. 1988) (en banc) ("Congressman Hobbs said explicitly that the definitions of robbery and extortion were modeled on the New York Penal Code."), *overruled on other grounds by Evans v. United States*, 504 U.S. 255 (1992); *Nat'l Org. for Women, Inc. v. Scheidler*, 396 F.3d 807, 813 (7th Cir. 2005) ("Congress used the Penal Code of New York as a model for the Act."), *rev'd on other grounds*, 547 U.S. 9 (2006).

At the time of the Hobbs Act's passage, the New York robbery statute stated plainly that "the degree of force employed is immaterial," N.Y. Penal Law § 2122 (1946), so long as it is "employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking." *Id*. § 2121. Though the Penal Law was later revised, this feature was not. *See* N.Y. Penal Law § 160.00 (any amount of force sufficient for robbery if used to "[p]revent[] or

overcom[e] resistance to the taking of the property or to the retention thereof" or to "[c]ompel[] the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny").

New York robbery is indeed "forcible stealing," N.Y. Penal Law § 160.00, but New York courts "have made clear that 'forcible stealing' alone does not necessarily involve the use of 'violent force'" essential to a federal violent crime. *Jones*, ___ F.3d ___, 2016 WL 3923838, at *5. Because New York robbery covers "conduct that d[oes] not rise to the level of violent force required by *Johnson*," it is not a "crime of violence." *Id*. at *7.

The Panel called *Jones* irrelevant, saying it "addressed a distinct robbery statute." Exhibit A at 21 n.13. The Panel overlooked, however, that "'robbery under the Hobbs Act is . . . robbery as defined by the New York Penal Laws and construed by the courts of that State.'" Hill's Rule 28(j) Ltr regarding *Jones*, Dkt. 104 at 2 (citation omitted). As New York robbery does not require "violent" force, neither does Hobbs Act robbery.

And the fact that Hobbs Act robbery does not require "violent" force makes sense: neither do other federal robbery statutes. *See United States v. Rodriguez*, 925 F.2d 1049, 1052 (7th Cir. 1991) (Though force used was "rather minimal, there was sufficient evidence" as postal worker's "key chain was attached to his clothing, and Mr. Rodriguez had to pull the chain once or perhaps twice to snatch the keys."); *United States v. Depass*, 510 F. App'x 119, 121 (3d Cir. 2013) ("Given that Depass admits that he pushed Ortiz in an effort to retrieve the package, there was sufficient evidence for a rational trier of fact to conclude that a robbery did

13

occur under § 2114(a).") (unpublished); *United States v. Alewelt*, 532 F.2d 1165, 1166 (7th Cir. 1976) (sufficient evidence for bank robbery under § 2113 where robber "entered the First State Bank of Springfield, Illinois, pushed a teller to the floor, and fled with $1150.00 in cash"); *United States v. Bell*, 158 F.Supp.3d 906, 920 (N.D. Cal. 2016) (The "force necessary to commit a section 2112 robbery is less than violent force. . . . Accordingly, robbery of government property under section 2112 is not categorically a crime of violence under the section 924(c)(3) force clause."). *See generally Matthews v. United States*, 682 F.3d 180, 182 (2d Cir. 2012) ("[T]he New York Penal Law 'statutory elements' of robbery . . . 'parallel those required to establish robbery under 18 U.S.C. §§ 2111, 2113(a), and 2118(a).'") (quoting *United States v. Snype*, 441 F.3d 119, 144 (2d Cir. 2006)).

As these cases reflect, no court would hesitate to uphold a conviction for Hobbs Act robbery where the defendant pushed or briefly struggled with the victim to get the goods. Though such a defendant uses force and thereby violates § 1951, the offense does not require "violent" force and thus is not a "crime of violence."

*        *        *

Given 2015 *Johnson* and *Welch*, § 924(c)'s residual clause is void for vagueness. And given 2010 *Johnson* and *Jones*, § 924(c)'s force clause does not capture Hobbs Act robbery because that offense does not require "violent" force.

The Panel's rulings on the questions of broad importance here are thus contrary to controlling precedents from the Supreme Court and this Court.

## **CONCLUSION**

The Court should grant rehearing and reverse the judgment below.

Respectfully submitted,

FEDERAL DEFENDERS OF NEW YORK
APPEALS BUREAU

DATED: September 16, 2016          _____ */s/* _____

YUANCHUNG LEE
MATTHEW B. LARSEN
Assistant Federal Defenders
52 Duane Street, 10th Floor
New York, NY 10007
Tel.: (212) 417-8742

# EXHIBIT A

14-3872-cr
*United States v. Hill*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2015

(Argued: November 12, 2015        Decided: August 3, 2016)

No. 14-3872-cr

───────────────────────────────

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ELVIN HILL, A/K/A ELTON,

*Defendant-Appellant.*

───────────────────────────────

Before:        JACOBS, LIVINGSTON, and DRONEY, *Circuit Judges.*

Defendant-appellant Elvin Hill appeals from his judgment of conviction, dated October 3, 2014, in the United States District Court for the Eastern District of New York (Matsumoto, *J.*).   Hill was convicted of violating 18 U.S.C. § 924(j)(1), for a firearm-related murder committed in the course of a crime of violence pursuant to 18 U.S.C. § 924(c), in this case, Hobbs Act robbery, as defined in 18 U.S.C. § 1951(b)(1).   A summary order issued concurrently with this opinion addresses and rejects most of Hill's claims on appeal.   This opinion considers one of Hill's challenges to his conviction: whether Hobbs Act robbery qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3).   We hold that it

does.  First, we find that Hobbs Act robbery is categorically a "crime of violence" under the "force clause" of this statute, § 924(c)(3)(A).  Second, we reject Hill's argument that the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), effectively rendered the "risk-of-force clause," § 924(c)(3)(B), void for vagueness.  Accordingly, the judgment of conviction is **AFFIRMED**.

| | |
|---|---|
| FOR APPELLEE: | DANIEL S. SILVER, Amy Busa, Seth D. DuCharme, Assistant United States Attorneys, New York, N.Y., *for* Robert L. Capers, United States Attorney for the Eastern District of New York, *for the United States of America*. |
| FOR DEFENDANT-APPELLANT: | YUANCHUNG LEE, Federal Defenders of New York, New York, N.Y., *for Elvin Hill.* |

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In 1997, Fredy Cuenca, a livery cab driver, was robbed, shot, and killed after picking up a fare in the middle of the day in Brooklyn.  Almost 14 years later, Rhan Powell admitted he was one of the two passengers who robbed Cuenca.  He also attested that Elvin Hill was the second passenger — the one who carried the weapon and pulled the trigger.  The Government filed an indictment, charging Hill with violating 18 U.S.C. § 924(j)(1) for committing a firearm-related murder in the course of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3).  In this case, the crime of violence was Hobbs Act robbery, as

defined in 18 U.S.C. § 1951(b)(1).   Hill pleaded not guilty, proceeded to trial, and was convicted of the charged offense.

This case raises the question whether Hobbs Act robbery is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3).[1]   Hill argues that Hobbs Act robbery does not qualify categorically as a crime of violence under the statute's "force clause," § 924(c)(3)(A), because it can be committed without physical force or the threatened deployment of the same.   He also contends that Hobbs Act robbery cannot qualify as a crime of violence under the "risk-of-force clause," § 924(c)(3)(B), because the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (*Johnson II*) (2015), effectively rendered that clause unconstitutionally vague.

We reject both arguments and hold that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3).   Accordingly, we affirm the district court's judgment of conviction.

---

[1] Hill brings a number of additional claims on appeal, which we address in a summary order concurrently issued today.

3

## BACKGROUND[2]

Fredy Cuenca was a livery cab driver in New York City.   One afternoon, on June 29, 1997, he received a call from his dispatcher requesting a pickup in the Bushwick neighborhood of Brooklyn.   Two young men, Elvin Hill and Rhan Powell, entered Cuenca's cab.   According to Powell, as they were reaching the destination, Cuenca quoted the fare price, $10, which was higher than Hill and Powell had anticipated.   Powell suggested to Hill that they rob Cuenca.   When Cuenca stopped the cab, Hill yelled out, "[g]ive me the fucking money."   Joint App'x 295.   Cuenca handed some money he had in his hand to Powell.   As Powell was exiting the vehicle, Cuenca began to plead for his life in broken English, pointing to a photograph of his children on the dashboard.   Outside the vehicle, Powell then heard a loud sound and saw "red on the windshield."   *Id.* at 296.   Hill had shot Cuenca — once, in the head — with a previously concealed handgun.   Hill and Powell fled the scene.   Cuenca died.

Several witnesses heard the fatal gunshot and saw two young men exiting the cab and fleeing the scene.   One witness identified Hill as one of the

---

[2] The factual background presented here is derived from the testimony and evidence presented at Hill's trial.

4

assailants during a lineup conducted about two months after the crime.[3]   But
Hill was not charged with the crime at that time.   Rather, the indictment came
nearly 15 years later.

On April 26, 2011, Powell testified before a grand jury in the Eastern
District of New York and admitted that he was one of the two passengers
involved in the 1997 robbery.   He testified that Hill was the one who had killed
Cuenca.   On March 22, 2012, another federal grand jury, relying in part on
Powell's 2011 testimony, returned an indictment against Hill.   Therein, Hill was
charged with violating 18 U.S.C. § 924(j)(1), for committing a firearms-related
murder in the course of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3).
The alleged predicate crime of violence was Hobbs Act robbery, as defined in 18
U.S.C. § 1951(b)(1).

Hill pleaded not guilty and proceeded to trial in the United States District
Court for the Eastern District of New York (Matsumoto, *J.*).   On January 24,
2014, the jury returned a guilty verdict.   The district court sentenced Hill to 43

---

[3] Hill challenges the identification evidence from the lineup, a challenge we
determine to be without merit in the summary order published today.

years' imprisonment and entered a judgment of conviction dated October 3, 2014.   This appeal followed.

## DISCUSSION

This opinion addresses one of Hill's claims on appeal: whether Hobbs Act robbery is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3). Hill argues that Hobbs Act robbery does not qualify as a crime of violence on two grounds.   First, he claims that Hobbs Act robbery fails to categorically constitute a crime of violence under the statute's "force clause," § 924(c)(3)(A). Second, he argues that the "risk-of-force clause," § 924(c)(3)(B), should be deemed void for vagueness under the Supreme Court's decision in *Johnson II*. We reject both contentions.

## I

We begin with the interlocking statutory provisions involved in this appeal.   Hill was indicted and convicted under 18 U.S.C. § 924(j)(1).   This provision specifies as follows:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall[,] . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

6

Section 924(c)(1)(A) in turn explains that "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" violates subsection (c). Critically, subsection (c) defines the term "crime of violence" as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). We refer to § 924(c)(3)(A) as the "force clause" and § 924(c)(3)(B) as the "risk-of-force clause."[4]

The "crime of violence" alleged in Hill's indictment was Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Section 1951(a) penalizes a person who "in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do

---

[4] The parties' briefs refer to § 924(c)(3)(B) as the "residual clause." We think the shorthand "risk-of-force clause" is clearer and thus adopt that terminology.

anything in violation of this section." And § 1951(b)(1) defines "robbery" to mean

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Taking these statutes together, the jury found that Hill used a firearm to commit a Hobbs Act robbery — pursuant to the Government's theory, a "crime of violence" under the firearm statute — and, in the course of that robbery, he murdered Cuenca in violation of § 924(j)(1).

## II

### A

We first consider Hill's claim that Hobbs Act robbery categorically fails to constitute a crime of violence under the force clause. To determine whether an offense is a crime of violence, courts employ what has come to be known as the "categorical approach." *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016) (outlining the categorical approach); *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (same); *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam) (applying the

8

categorical approach to determine whether a predicate crime was a "crime of violence" under § 924(c). We have explained that the categorical approach is "'not only consistent with both precedent and sound policy' but[] also . . . 'necessary in view of the language of the applicable statutes.'" *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 167 (2d Cir. 2006) (quoting *Jobson v. Ashcroft*, 326 F.3d 367, 372 (2d Cir. 2003)). The categorical approach guides our analysis here.[5]

Under the categorical approach, courts identify "the minimum criminal conduct necessary for conviction under a particular statute." *Acosta*, 470 F.3d at 135. In doing so, courts "'look only to the statutory definitions' — *i.e.*, the elements — of [the] . . . offense[], and *not* 'to the particular [underlying] facts.'"

---

[5] Hill does not contest that the Hobbs Act is a divisible statute, and that Hill was charged with Hobbs Act *robbery* (as opposed to, say, Hobbs Act extortion). A divisible statute "sets out one or more elements of the offense in the alternative." *Descamps*, 133 S. Ct. at 2281; *see also Vargas-Sarmiento*, 448 F.3d at 167 (explaining how to identify divisible penal statutes). If some but not all of the alternative elements would amount to a crime of violence, a court can "modify" the categorical approach by looking at a limited set of documents, including the indictment, to consider under which portion of the statute the defendant was charged. *See Descamps*, 133 S. Ct. at 2284-85. After determining which portion was at issue, a court then applies the categorical approach to that part of the challenged statute. *Id.* Hill agrees that the Hobbs Act is divisible, but argues that Hobbs Act *robbery* is not, and the Government does not contest this assertion. *See* Hill Supp. Br. 23 n.9. *See generally* Gov't Supp. Br. 6-16 (relying on the categorical, rather than the modified categorical, approach). To that end, we express no view regarding whether Hobbs Act robbery is itself divisible, and we apply the standard categorical approach to the entire offense as defined in the statute.

9

*Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 600); *see also Acosta*, 470 F.3d at 135 ("[W]e focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime."). The reviewing court "cannot go behind the offense as it was charged to reach [its] own determination as to whether the underlying facts" qualify the offense as, in this case, a crime of violence. *Ming Lam Sui v. INS*, 250 F.3d 105, 117-18 (2d Cir. 2001) (quoting *Lewis v. INS*, 194 F.3d 539, 543 (4th Cir. 1999)). As relevant here, the categorical approach requires us to consider the minimum conduct necessary for a conviction of the predicate offense (in this case, a Hobbs Act robbery), and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A).

One final point remains. Critically, the Supreme Court has made clear in employing the categorical approach that to show a predicate conviction is not a crime of violence "requires more than the application of legal imagination to [the] . . . statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). As relevant here, there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. *Id.* To show that a particular reading of the

10

statute is realistic, a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." *Id.* To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013) (noting that "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense" (quoting *Duenas-Alvarez*, 549 U.S. at 193)).

**B**

The question whether Hobbs Act robbery constitutes a crime of violence under the force clause is a matter of first impression in our Circuit.[6]  We have, however, previously stated that conspiracy to commit Hobbs Act robbery is a crime of violence under the Bail Reform Act (which employs the same definition

---

[6] The Ninth Circuit recently reiterated its conclusion that Hobbs Act robbery satisfies the force clause. *See United States v. Howard*, No. 15-10042, 2016 WL 2961978 (9th Cir. May 23, 2016, amended Jun. 24, 2016) (mem.) (concluding that Hobbs Act robbery is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) and disagreeing with the defendant's argument that the "fear of injury" language requires an alternative conclusion); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) (observing that a substantive Hobbs Act robbery offense "indisputably qualifies as a crime of violence," a conclusion from which the court derived its holding that conspiracy to commit such an offense categorically creates a "substantial risk that physical force may be used"); *see also United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996) (concluding that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another" such that it qualifies as a "serious violent felony" under 18 U.S.C. § 3559(c)).

of the term as in § 924(c)(3)) because one of the elements of the offense "is actual or threatened use of force" and "if the element of violence is not present, no conviction under section 1951 can occur." *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (citing 18 U.S.C. § 1951(b)(1)); *see also United States v. Santos*, 449 F.3d 93, 99 (2d Cir. 2005) (noting that conspiracy to commit Hobbs Act robbery requires an intent to take personal property "by force"); *cf. VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 730 n.2 (2d Cir. 2012) (suggesting that the definition of robbery in 18 U.S.C. § 1951 "limit[s] the crime to larcenies committed by force or threat of force").

As stated above, the term "robbery" in the Hobbs Act is defined, in relevant part, as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Hill does not dispute that at least two of the ways in which a Hobbs Act robbery may be accomplished (by means of "actual or threatened force" or "violence") would appear, self-evidently, to satisfy § 924(c)'s force clause (defining a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against

12

the person or property of another"). He focuses instead on those Hobbs Act robberies accomplished by means of putting the victim in "fear of injury" to his person or property, arguing that such robberies can be accomplished *without* the "use, attempted use, or threatened use of physical force" so that the minimum conduct necessary to commit a Hobbs Act robbery does not include the element necessary to qualify such robberies as crimes of violence for the purpose of § 924(c)(3)(A). Hill primarily advances two arguments to support this contention. We disagree with both.

Hill first contends that a perpetrator could rob a victim by putting him in fear of injury to his property through non-forceful means. He offers hypotheticals such as threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to "pour[ ] chocolate syrup on his passport." Hill Supp. Br. 29. Hill argues that *Johnson v. United States*, 559 U.S. 133 (*Johnson I*) (2010), made clear that the physical force that must be used, attempted, or threatened to satisfy statutory language such as that in § 924(c)(3)(A) must be "violent," "great," or "strong."[7] On that basis, Hill

---

[7] *Johnson I* construed the meaning of physical force for purposes of 18 U.S.C. § 924(e)(2)(B)(i) which, in relevant part, defines a violent felony for purposes of the Armed Career Criminal Act ("ACCA") as a crime that "has as an element the use,

13

argues that, assuming his hypothetical acts would indeed be sufficient to put a

victim in "fear of injury" to his property so that a Hobbs Act robbery might be

accomplished (a proposition that is hardly obvious as a practical and

precedential matter), the force employed in these hypothetical cases would be

insufficient to satisfy the standard in *Johnson I*.[8]   We disagree.

---

attempted use, or threatened use of physical force against the person of another."   This
provision thus employs language identical to that used in § 924(c)(3)(A), except for the
fact that "crime of violence" is defined in the latter to include crimes having as an
element the actual, attempted, or threatened use of physical force "against the person *or
property* of another."   § 924(c)(3)(A) (emphasis added).

[8] Hill also suggests, along these same lines, that a perpetrator could successfully
commit Hobbs Act robbery by putting a victim in fear of economic injury to an
intangible asset without the use of physical force.   Hill relies almost exclusively on
hypotheticals, not actual cases, to suggest that there is a realistic possibility that Hobbs
Act robbery could extend to such a fact pattern.   He does cite a Fourth Circuit case,
*United States v. Iozzi*, 420 F.2d 512 (4th Cir. 1970), but that case involved a charge of
Hobbs Act *extortion*, not robbery, on the basis that "[the defendant] obtained or
attempted to obtain money from building contractors *with their consent* by causing the
contractors to fear financial and economic loss," *id.* at 513 (emphasis added).   The
Government, for its part, contends that "[i]t defies logic to suggest that someone could
be robbed by placing him in 'fear of injury' without using or threatening to use physical
force."   Gov't Supp. Br. 12; *see also DiSomma*, 951 F.2d at 496 ("[I]f the element of
violence is not present, no conviction under section 1951 can occur.").   We conclude as
to this argument that while it may indeed be the case that Hobbs Act robbery does not
extend to the hypotheticals Hill posits, *see United States v. Pena*, No. 15-cr-551 (AJN),
2016 WL 690746, at *11 (S.D.N.Y. Feb. 11, 2016) (concluding that "fear of injury" in the
Hobbs Act robbery statute requires "fear of injury from the use of force"), we need not
explicate the statute's outer limits in this regard, as Hill has failed to show any realistic
probability that a perpetrator could effect such a robbery in the manner he posits
without employing or threatening physical force, *see Duenas-Alvarez*, 549 U.S. at 193
(noting that a predicate conviction fails to qualify as a crime of violence using the

14

Hill's argument rests on a flawed reading of *Johnson I*. In that case, the Court declined to construe "physical force" for the purposes of § 924(e)(2)(B)(i) in line with the common-law crime of battery, which deemed the element of "force" to be satisfied "by even the slightest offensive touching."[9] 559 U.S. at 139. But in rejecting this interpretive approach, the Court did *not* construe § 924(e)(2)(B)(i) to require that a particular quantum of force be employed or threatened to satisfy its physical force requirement. The Court concluded, instead, that "physical

---

categorical approach only when there is "a realistic probability, not a theoretical possibility" that the statute at issue could be applied to conduct not constituting such a crime).

[9] We assume *arguendo Johnson I*'s relevance to the construction of § 924(c)(3)(A), but note that the case might not apply to the present statute for at least two reasons. First, as a matter of precedent, our Circuit has long defined the meaning of "physical force" in the context of 18 U.S.C. § 16 (which employs language similar to that used in § 924(c)(3)(A)) as "power, violence, or pressure directed against a person or thing," and we have affirmed this understanding of force in post-*Johnson I* cases. *See Morris v. Holder*, 676 F.3d 309, 314 (2d Cir. 2012) (quoting *Vargas-Sarmiento*, 448 F.3d at 169); *see also Acosta*, 470 F.3d at 134-35 (noting that this Circuit has interpreted § 16 and § 924(c)(3)(A) by applying the same case law). Second, *Johnson I*'s reasoning does not necessarily extend to a statute like § 924(c)(3)(A), which includes within its definition of crime of violence those felonies that have as an element physical force threatened or employed against the person *or property* of another, as opposed to only the former. *Johnson I*'s holding rejected the possibility that mere "offensive touching," sufficient for common-law battery, could constitute a use of physical force in the context of § 924(e)(2)(B)(i). *Johnson I*, 559 U.S. at 139. Yet it is not obvious what "offensive touching" could possibly mean for *property* — a point that may suggest *Johnson I* is inapplicable to the force clause herein, or may simply reinforce our conclusion that nothing in *Johnson I* suggests that force sufficient to injure property would, under that decision, be insufficient to count as a use of physical force.

15

force" as used in § 924(e)(2)(B)(i) (which defines a violent felony in relevant part as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another") means simply "*violent* force — that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140; *see also United States v. Castleman*, 134 S. Ct. 1405, 1417 (2014) (Scalia, J., concurring in part and concurring in judgment) (rejecting the argument that *Johnson I* "requires force capable of inflicting 'serious' bodily injury," as opposed to "force capable of causing physical pain or injury, serious or otherwise"). Assuming *arguendo Johnson I*'s relevance to the construction of § 924(c)(3), "physical force" as used in the provision at issue here means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property. *See* § 924(c)(3) (defining "crime of violence" in relevant part as a felony with an element requiring "use, attempted use, or threatened use of physical force against the person *or property* of another" (emphasis added)). Hill's hypotheticals then — to the degree that they would indeed satisfy the Hobbs Act's "fear of injury" standard — do not fail to involve the use or threatened use of physical force.

Hill's second claim is no more successful.  Hill next contends that an individual can commit a Hobbs Act robbery without using or threatening the use of physical force by putting the victim in fear of injury through such means, *inter alia*, as threatening to withhold vital medicine from the victim or to poison him. Lacking any case in which a defendant was in fact convicted for committing Hobbs Act robbery through such means, Hill relies principally on these hypotheticals to argue that such conduct entails an insufficient direct application of physical force to satisfy the force clause — even if it indisputably involves the threatened *indirect* application of force.  These hypotheticals are insufficient because a defendant is required to "point to his own case or other cases in which the . . . courts in fact did apply the statute" in such a manner to show that there is a "realistic probability" that the Hobbs Act would reach the conduct Hill describes.  *Duenas-Alvarez*, 549 U.S. at 193.[10]  Even assuming, *arguendo*, that there is indeed a "realistic probability" that the Hobbs Act would reach the

---

[10]   This requirement also undermines Hill's suggestion that a perpetrator could successfully commit Hobbs Act robbery by unintentionally placing a victim in fear of injury.  In support of this argument, he cites a line of out-of-circuit cases interpreting the "intimidation" element of the federal bank robbery statute, 18 U.S.C. § 2113(a), as including unintentional intimidation.  *See, e.g.*, *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005).  However, these decisions are insufficient because, as is the case with his contention that Hobbs Act robbery includes threats involving the indirect application of force, Hill cannot point to cases in which "courts in fact did apply the statute in the . . . manner for which he argues."  *Duenas-Alvarez*, 549 U.S. at 193.

conduct Hill describes (or analogous conduct), we again disagree that these hypotheticals demonstrate that a Hobbs Act robbery is not categorically a crime of violence for the purpose of § 924(c)(3)(A).

Hill argues, in effect, that placing a victim in fear of injury by threatening the indirect application of physical force is not sufficient to constitute the threatened use of physical force. Yet the Supreme Court has suggested otherwise. In *Castleman*, the Supreme Court, construing "physical force" as it is employed in connection with § 922(g)(9), made clear that physical force "encompasses even its indirect application," as when a battery is committed by administering a poison: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter" lest we conclude that pulling the trigger on a gun involves no use of force "because it is the bullet, not the trigger, that actually strikes the victim."[11] 134 S. Ct. at 1414-15. Hill offers no persuasive reason why the same principle should not apply to the construction

---

[11] Section 922(g)(9) restricts persons who have been convicted of certain misdemeanor crimes of domestic violence from possessing firearms or ammunition. In relevant part, the statute defines crimes of domestic violence as misdemeanors that "ha[ve], as an element, the use or attempted use of physical force . . . committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A).

of § 924(c)(3), so that, as regarding the Hobbs Act, a robbery still has as an element "the use, attempted use, or threatened use of physical force against the person or property of another," notwithstanding that it is accomplished by threatening to poison a victim, rather than to shoot him.  Some threats do not require specification of any particular means in order to be effective; yet they still threaten *some* type of violence and the application of *some* force.  Consider: "That's a nice car — would you like to be able to continue driving it?"

Hill relies on *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003), to argue that "the act of placing another in fear of injury" constitutes, "at best," a "threat of *injury*," which is not the same as a threat of physical force.   Hill Supp. Br. 24-25.   In *Chrzanoski*, we addressed a Connecticut misdemeanor that criminalized causing injury to another person, concluding that the misdemeanor at issue there was not a crime of violence for the purpose of deportation proceedings and as defined in 28 U.S.C. § 16(a) because it did not require that injury be caused through the use of physical force.[12]   327 F.3d at 195-96; *see also Vargas-Sarmiento*, 448 F.3d at 175 n.10 (noting that, in *Chrzanoski*, "[b]ecause the

---

[12]  As already noted, § 16 defines a crime of violence similarly to § 924(c)(3), and we have interpreted both statutes by applying the same case law.   *See Acosta*, 470 F.3d at 134-35.

plain language of the Connecticut statute did not make use of force an explicit or implicit element, we ruled that misdemeanor third degree assault was not a crime of violence under § 16(a)"). But as we have said, the taking of personal property "'by force,' . . . *is* required in Hobbs Act robbery." *Santos*, 449 F.3d at 99 (emphasis added); *see also DiSomma*, 951 F.2d at 496 ("[I]f the element of violence is not present, no conviction under section 1951 can occur."). And such robberies may be accomplished, *inter alia*, by placing the victim in fear of injury at the point of a gun (as in the present case) or by other menacing conduct, as when a perpetrator "wrongfully and intentionally use[s] an individual's reputation 'as a prominent figure in the Russian criminal underworld alone' to instill fear." *Santos*, 449 F.3d at 100-01. To the degree that any aspect of *Chrzanoski*'s reasoning suggests that the conduct Hill describes does not involve the threatened use of physical force, moreover, the *Chrzanoski* panel did not have the benefit of the Supreme Court's reasoning in *Castleman* to the effect that a use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly (as with poisoning) "rather than directly (as with a kick or punch)." *Castleman*, 134 S. Ct. at 1415; *see also Vargas-Sarmiento*, 448 F.3d at 175 (observing, in the context of § 16(b), that "we are not persuaded

by [the] argument that first-degree manslaughter is not a crime of violence when it is committed by a person who intentionally poisons the food of an unwitting victim rather than by a person who directly injects the poison into his victim's arm[, as i]n either situation, the killer has intentionally availed himself of the forceful physical properties of poison to cause death"). Accordingly, we are unpersuaded by Hill's reliance on *Chrzanoski.*

In sum, we agree with the Ninth Circuit, *see* supra note 6, that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). We have considered each of Hill's arguments to the contrary and conclude that they are all without merit.[13]

---

[13] A panel of this circuit recently held that New York's first-degree robbery statute, *see* N.Y. Penal Law §§ 160.00, 160.15, fails to categorically qualify as a "crime of violence" for purposes of U.S.S.G. § 4B1.2(a)(1), as it is possible to commit it "without necessarily using violent force." *United States v. Jones*, No. 15-1518, 2016 WL 3923838, at *6 (2d Cir. July 21, 2016). Hill's suggestion that this decision has any relevance to ours is mistaken. The *Jones* panel addressed a distinct robbery statute, *compare* N.Y. Penal Law § 160.15 (including under the definition of first-degree robbery the case where the defendant or another participant in the crime "is armed with a deadly weapon"), *with* 18 U.S.C. § 1951, and it interpreted that statute with reference to a distinct body of state-law precedent inapposite in our case. *See Jones*, 2016 WL 3923838, at *5. Additionally, the *Jones* panel assessed whether the state-law conviction was a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1) which, unlike 18 U.S.C. § 924(c)(3)(A), does not include the use or threatened use of "physical force against the person or *property* of another." § 924(c)(3)(A) (emphasis added); *compare*

# III

Even if Hobbs Act robbery did not qualify as a crime of violence pursuant to § 924(c)(3)(A), such a robbery unequivocally qualifies as a crime of violence pursuant to § 924(c)(3)(B) because it, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Hill does not contend otherwise. Instead, he argues that § 924(c)(3)(B) is inapplicable here on the ground that the risk-of-force clause is void for vagueness in light of *Johnson II*. For the following reasons, we disagree.

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." From this constitutional provision stems the proscription against vague criminal laws.

---

U.S.S.G. § 4B1.2(a)(1) (qualifying offenses must have "as an element the use, attempted use, or threatened use of physical force against the *person* of another" (emphasis added)). Nor is *Jones*'s suggestion, in dicta, that the previous version of U.S.S.G. § 4B1.2(a) is "likely void for vagueness in light of [*Johnson II*]," relevant to our analysis in Part III of this opinion. *Jones*, 2016 WL 3923838, at *6. Unlike the risk-of-force clause in this case, the prior version of § 4B1.2(a)(2) *was* textually identical to § 924(e)(2)(B) (the clause at issue in *Johnson II*). *See* U.S.S.G. § 4B1.2(a) (2015) (defining "crime of violence" as a qualifying offense that "is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). As we explain in this opinion, the risk-of-force clause at issue here contains no confusing list of predicate offenses and is significantly narrower in scope than the clause at issue in *Johnson II* – material distinctions that make all the difference. *See infra* Part III.

22

"The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) (quoting *Johnson II*, 135 S. Ct. at 2556).

In *Johnson II*, the Supreme Court concluded that the "residual clause" of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. at 2557. Before *Johnson II*, the ACCA worked as follows. In general, an individual who unlawfully possessed a firearm could be punished by up to 10 years' imprisonment. 18 U.S.C. §§ 922(g), 924(a)(2). But if the violator had three or more prior convictions for a "serious drug offense" or a "violent felony," the ACCA extended his or her prison term to a minimum of 15 years and a maximum of life. *Id.* § 924(e)(1). The ACCA defined a "violent felony" as any felony that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .

*Id.* § 924(e)(2)(B) (emphasis added). *Johnson II* determined that the so-called "residual clause" of subsection (ii), italicized above, is constitutionally invalid.

The Supreme Court in *Johnson II* determined that "[t]wo features of the residual clause conspire to make it unconstitutionally vague." 135 S. Ct. at 2557. In particular, the Court focused on the double-layered uncertainty embedded in the clause's operation — which required courts employing the categorical approach first to estimate the potential risk of physical injury posed by "a judicially imagined 'ordinary case' of [the] crime" at issue, and then to consider how this risk of injury compared to the risk posed by the four enumerated crimes, which are themselves, the Court noted, "far from clear in respect to the degree of risk each poses."[14] *Id.* at 2557-58 (quoting *Begay v. United States*, 553

---

[14] As the *Johnson II* Court recognized, "[b]y asking whether the crime 'otherwise involves conduct that presents a serious potential risk,' . . . the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes — burglary, arson, extortion, and crimes involving the use of explosives." 135 S. Ct. at 2558 (emphasis omitted). But no rhyme or reason appears to connect these crimes, in terms of assessing either the method for evaluating the risk of injury posed, or the degree of risk: "Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? Does the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information?" *Id.* The Court concluded that "[c]ommon sense has not . . . produced a consistent conception of the degree of risk posed by each of the four enumerated crimes" and that these crimes "are not much more similar to one another in kind than in degree of risk posed." *Id.* at 2559.

U.S. 137, 143 (2008)).   It was these twin ambiguities — "*combining* indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony" — that offended the Constitution.   *Id.* at 2558 (emphasis added); *see also id.* at 2560 (observing that "[e]ach of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork'" (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948))).

We conclude that the Supreme Court's explanation for its conclusion in *Johnson II* renders that case inapplicable to the risk-of-force clause at issue here. Section 924(c)(3)(B) does not involve the double-layered uncertainty present in *Johnson II*.   Granted, courts construing the provision must grapple with assessing the risk of physical force posed by the "ordinary" instance of a predicate crime.   Assessing whether a felony, by its nature, poses a substantial risk that "physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B), however, is a far narrower and simpler undertaking than divining whether a felony, not being one of four enumerated, but disparate crimes, "otherwise involves conduct that presents a serious potential risk of physical injury to another," § 924(e)(2)(B)(ii).   A

25

straightforward comparison of the texts of the two provisions — analyzed in light of the reasoning in *Johnson II* and other case law — makes clear that Hill is mistaken in suggesting that the provisions are materially indistinguishable.

First, and most obviously, the risk-of-force clause contains no mystifying list of offenses and no indeterminate "otherwise" phraseology — a defining feature of the ACCA's residual clause that, in *Johnson II*, was understood to add an additional layer of uncertainty as to "how much risk it takes for a crime to qualify as a violent felony." 135 S. Ct. at 2558. In *Johnson II*, the Court cited this list as a key aspect of § 924(e)(2)(B)(ii), distinguishing the ACCA's residual clause from other laws that the Government warned could be vulnerable to vagueness challenge. Indeed, the Court rejected the Government's argument that its decision in *Johnson II* would draw into question statutes that, like the one here, do not "link[ ] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. Moreover, an analysis of the Court's pre-*Johnson II* precedents attempting to construe the residual clause makes clear that the presence of these enumerated offenses was, as *Johnson II* suggested, the prime cause of uncertainty in that provision, and the key obstacle to consistent judicial

construction.[15]   As the Court recognized in *Begay*, the enumerated offenses are

"far from clear in respect to the degree of risk each poses."   553 U.S. at 143.   The

_____

[15] In these earlier cases, the Court consistently relied on the list of offenses as its primary tool of construction through which to determine which predicate crimes constituted violent felonies.   *See, e.g.*, *Sykes v. United States*, 564 U.S. 1, 15-16 (2011) (observing that "[t]he residual clause imposes enhanced punishment for unlawful possession of [a] firearm when the relevant prior offenses involved a potential risk of physical injury similar to that presented by burglary, extortion, arson, and crimes involving use of explosives," though noting that "this approach may at times be more difficult for courts to implement"); *Begay*, 553 U.S. at 143 (holding that "the examples in [the residual clause] limit the scope of the clause to crimes that are similar to the examples themselves"); *James v. United States*, 550 U.S. 192, 218 n.1 (2007) (Scalia, J., dissenting) (referring to the list of enumerated offenses as providing "the defining characteristic of the residual provision").   Nevertheless, although the Justices seemed largely to agree that the enumerated list was dispositive of the required analysis, they consistently diverged on *how* Congress intended the list itself to be employed. *Compare, e.g.*, *Begay*, 553 U.S. at 143 (holding that courts "should read the examples as limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves"), *with id.* at 149 (Scalia, J., concurring in the judgment) (arguing instead that the Court should "determine which of the enumerated offenses poses the least serious risk of physical injury, and then . . . set that level of risk as the 'serious potential risk' required by the statute"); *and id.* at 158-59 (Alito, J., dissenting) (disagreeing with the majority's view that predicate crimes must be similar not only in degree of risk, but also in kind, to the enumerated offenses).   The Justices also consistently disagreed on what unified the four enumerated offenses for purposes of defining the requisite level of risk.   *Compare, e.g.*, *Begay*, 553 U.S. at 144-45 (majority opinion) (arguing that the four enumerated crimes "all . . . involve[d] purposeful, 'violent,' and 'aggressive' conduct" and relying on this characteristic to exclude a DUI conviction), *with Sykes*, 564 U.S. at 13 (noting that the "phrase 'purposeful, violent, and aggressive' has no precise textual link to the residual clause," and that, most of the time, "risk levels provide a categorical and manageable standard"); *and id.* at 36 n.1 (Kagan, J., dissenting) ("I understand the majority to retain the 'purposeful, violent, and aggressive' test, but to conclude that it is 'redundant' in this case."); *compare, e.g.*, *James*, 550 U.S. at 199 ("[T]he most relevant common attribute of the enumerated offenses of burglary, arson, extortion, and

Court reaffirmed this point in *Johnson II*, noting the absence of apparent commonalties among the enumerated offenses, and the confusion thereby generated in construing the residual provision. *See* 135 S. Ct. at 2557-60. In short, as *Johnson II* itself attests, it is evident that the Court's "repeated failures to craft a principled and objective standard out of the residual clause" were failures in large part because of the list of enumerated offenses. 135 S. Ct. at 2558.[16]

Moreover, even if the list of enumerated offenses is not alone sufficient to distinguish the residual clause in *Johnson II* from the risk-of-force clause at issue here (a conclusion which would ignore the Court's fraught history with the residual clause), the text of the risk-of-force clause differs in additional, material ways. The ACCA's residual clause defines crimes as violent felonies if they,

explosives use is . . . that all of these offenses . . . create significant risks of bodily injury or confrontation that might result in bodily injury."), *with id.* at 218 n.1 (Scalia, J., dissenting) (criticizing the majority for "imprecisely identif[ying] the common characteristic of the enumerated offenses," and arguing that "the word 'confrontation' . . . is an invention entirely divorced from the statutory text").

[16] Indeed, absent such a confounding list of inconsistent enumerated offenses, the Court has had little trouble interpreting language in 18 U.S.C. § 16(b) that is the same as that in the risk-of-force clause at issue here. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (observing, in a unanimous decision, that "[t]he ordinary meaning of ['crime of violence'], combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses").

*inter alia*, "present[] a serious potential risk of physical injury to another."
18 U.S.C. § 924(e)(2)(B)(ii).   This terminology is materially different from that in
the risk-of-force clause, which defines predicate crimes as those that by their
"nature[] involve[] a substantial risk that physical force against the person or
property of another may be used in the course of committing the offense."   *Id.*
§ 924(c)(3)(B).   Both the Supreme Court and this Court have noted that the
language in the latter provision is both narrower *and* easier to construe.   *See*
*Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (holding that "[t]he reckless disregard in §
16 [employing the language of § 924(c)(3)(B)] relates *not* to the general conduct or
to the possibility that harm will result from a person's conduct, but to the risk
that the use of physical force against another might be required in committing a
crime"); *id.* at 10 n.7 (noting that "§ 16(b) *plainly* does not encompass all offenses
which create a 'substantial risk' that *injury* will result from a person's conduct"
(emphasis added)); *Jobson*, 326 F.3d at 372-73 ("[T]he risk that a defendant will
use physical force in the commission of an offense is materially different from the
risk that an offense will result in physical injury."); *id.* at 373 n.5 (observing that
the "risk of physical injury" language "was intended to be broader" than the
language in the risk-of-force clause).   Indeed, in interpreting the language in

29

§ 16(b), which is materially indistinguishable from the provision at issue here, we have had little trouble narrowing, and construing, its scope. *See, e.g., id.* at 374 ("[S]ection 16(b) requires that an offense inherently poses a substantial risk that a defendant will [intentionally] use physical force . . . ."). As one of our sister circuits recently observed, even apart from the enumerated offenses, the language of the risk-of-force clause "is distinctly narrower" than that in the residual clause, and in a manner that makes it easier to construe. *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016) (rejecting the argument that *Johnson II* "compels the conclusion" that the risk-of-force clause is void for vagueness).

It is unsurprising, then, that the risk-of-force clause has no history of "repeated attempts and repeated failures" on the part of courts "to craft a principled and objective standard" out of its terms — the sort of doctrinal history that *Johnson II* recognized was sufficient to "confirm [the] hopeless indeterminacy" of the residual clause. 135 S. Ct. at 2558. The Court explained in *Johnson II* that "the failure of 'persistent efforts . . . to establish a standard' can provide evidence of vagueness." *Id.* (alteration in original) (quoting *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 91 (1921)). But there is no such

30

troubled interpretive history with respect to the risk-of-force clause.   As the

Sixth Circuit recently recognized, while "the Supreme Court reached its

void-for-vagueness conclusion only after struggling mightily for nine years to

come up with a coherent interpretation of the [residual] clause, . . . no such

history has occurred with respect to § 924(c)(3)(B)."   *Taylor*, 814 F.3d at 376.

This, too, counts against Hill's position.

Hill argues that *Johnson II* also relied in part on the fact that the ACCA's

residual clause, like the risk-of-force clause, requires application of the

categorical approach, with its attendant difficulties in determining the

parameters of the "ordinary case" of a predicate crime.   This is true.   But we

conclude that this fact alone is not nearly enough to render the risk-of-force

clause void for vagueness.   As the Sixth Circuit recognized in *Taylor*, the

Supreme Court in *Johnson II* did not conclude that statutes requiring such an

approach are thereby rendered unconstitutionally vague.   814 F.3d at 378.[17]   To

---

[17] Hill argues that *Taylor* is distinguishable in that it relied on the fact that the Sixth Circuit does not use a categorical approach "in many § 924(c) cases" in upholding the risk-of-force clause.   Hill's July 28 Response to Gov't's 28(j) Letter at 2 n.1, *United States v. Hill*, No. 14-3872 (2d Cir. Aug. 2, 2016), ECF No. 112 (citing *Shuti v. Lynch*, __ F.3d __, 2016 WL 3632539, at *8 (6th Cir. July 7, 2016)).   The panel in *Taylor* explicitly disclaimed any such reading of its opinion.   *See Taylor*, 814 F.3d at 378 (noting that "[i]t is true that *Johnson* [*II*] also relied in part on the fact that the ACCA residual clause, *like*

the contrary, the Court took pains to note that it was a *combination* of factors that together rendered the residual clause invalid:   "Each of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'"   *Johnson II*, 135 S. Ct. at 2560 (quoting *Evans*, 333 U.S. at 495).   No such factors conspire to suggest that § 924(c)(3)(B) is constitutionally infirm.

We note that four other circuits — the Fifth, Sixth, Seventh, and Ninth — have considered the language in 18 U.S.C. § 16(b), which appears materially the same as that in § 924(c)(3)(B), and have determined that § 16(b) is void for vagueness after *Johnson*.   *Shuti v. Lynch*, __ F.3d __, 2016 WL 3632539 (6th Cir. July 7, 2016); *United States v. Gonzalez-Longoria*, 813 F.3d 225, 227 (5th Cir. 2016), *en banc rehearing granted*, 815 F.3d 189 (5th Cir. 2016) (mem.); *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015).   Although we generally interpret § 16(b) and § 924(c) by

---

*§ 924(c)(3)(B)*, requires the application of a categorical approach, which requires courts to look at the ordinary case of the predicate crime" before concluding that this similarity was insufficient to render the risk-of-force clause unconstitutionally vague (emphasis added)); *accord id.* at 394 (White, J., concurring in part and dissenting in part) (stating that the Sixth Circuit applies the categorical approach to the risk-of-force clause).

applying the same case law, *see Acosta*, 470 F.3d at 134-35, we find these opinions

unpersuasive for three reasons.

First, each greatly underestimates — or misunderstands — the significance

of the list of enumerated offenses in the ACCA's residual clause to the decision in

*Johnson II*, in part by failing to engage with the precedent that preceded, and

informed, that decision.[18]  Second, these cases either ignore or minimize the

other textual distinctions between the residual clause and the language of

§ 16(b).[19]  Finally, each case dismisses the significance of the Supreme Court's

---

[18]  *See Shuti*, 2016 WL 3632539, at *7; *Gonzalez-Longoria*, 813 F.3d at 232-34 (though acknowledging that § 16(b) is "arguably at least slightly less imprecise" than the language in the ACCA's residual clause, suggesting that "[a]rguably, having no examples is worse than having unclear examples"); *Vivas-Ceja*, 808 F.3d at 723 (observing that "the enumeration of specific crimes . . . wasn't one of the 'two features' that combined to make the [residual] clause unconstitutionally vague," and thus misunderstanding that the list was a primary impetus for the second feature, "indeterminacy about how much risk it takes for the crime to qualify as a violent felony," *Johnson II*, 135 S. Ct. at 2558); *Dimaya*, 803 F.3d at 1118 & n.13 (first minimizing the significance of the enumerated offenses to *Johnson II*'s analysis, and then noting that "[a]lthough *Johnson* [*II*] concluded that the enumerated offenses added to the residual clause's indeterminacy, it could well be argued that, if anything, § 16(b) is more vague than the residual clause because of its lack of enumerated examples").

[19]  *See Shuti*, 2016 WL 3632539, at *7; *Gonzalez-Longoria*, 813 F.3d at 232 (acknowledging the textual differences, but arguing that they are "slight"); *Vivas-Ceja*, 808 F.3d at 722 (noting that the "language [in § 16(b)], though not identical to the residual clause, is materially the same"); *Dimaya*, 803 F.3d at 1114-18 (referring to the two textual provisions as "similar," providing no analysis of the distinction between the phrases "risk of physical injury" and "risk that physical force . . . may be used," and

---

33

fraught precedent interpreting the ACCA's residual clause, and in doing so not only disregards the significance of that precedent to the *Johnson II* decision, *see* 135 S. Ct. at 2558-61 (discussing these prior cases), but also fails to grapple with the fact that the textual aspects unique to the residual clause were largely to blame for that confusion. *See Shuti*, 2016 WL 3632539, at *8; *Gonzalez-Longoria*, 813 F.3d at 234; *Vivas-Ceja*, 808 F.3d at 723; *Dimaya*, 803 F.3d at 1119.

For these reasons, we do not find these § 16(b) cases persuasive, and we decline to follow their reasoning here. Indeed, we conclude that to do so would not apply *Johnson II*, but would extend it in a way flatly inconsistent with that decision's own articulation of the limitations of its holding. *See* 135 S. Ct. at 2561. Having considered each of Hill's arguments that the risk-of-force clause is unconstitutionally vague, we are unpersuaded.

## CONCLUSION

For the foregoing reasons, and for those stated in the summary order that accompanies this decision, we **AFFIRM** the judgment of conviction.

---

suggesting that any distinction created by the presence of the words "in the course of committing the offense" in § 16(b) "would not save [that provision] from unconstitutionality").

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. 32(a)(7)(C), I certify that this petition is proportionally spaced, has a typeface of 14 points or more, does not exceed 15 pages, and contains approximately 4,099 words.


DATED: September 16, 2016          *s/ Matthew B. Larsen*
                                   MATTHEW B. LARSEN

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2016, I electronically filed the foregoing **APPELLANT'S PETITION FOR PANEL REHEARING AND/OR REHEARING *EN BANC*** with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


DATED: September 16, 2016          *s/ Yuanchung Lee*
                                   YUANCHUNG LEE